## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| **CITY OF TROY, MICHIGAN** | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by its undersigned attorneys, files this

Complaint and alleges:

### Introduction

1. The United States brings this civil action for declaratory and injunctive

relief against the City of Troy, Michigan ("the City" or "Troy"), under the

Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"),

42 U.S.C. §§ 2000cc-2000cc-5. This civil action is based on the City's treatment of

Adam Community Center ("Adam"), an Islamic nonprofit corporation, in its effort

to establish a place of worship in Troy.

2. In 2018, after a multi-year search, Adam found a property located at

3635 Rochester Road ("the Subject Property") in Troy's General Business zoning

district, where places of worship are permitted as of right. Most recently used as a

restaurant and banquet hall, the Subject Property has the size and capacity to house

1

Adam's religious activities. In its efforts to use the Subject Property, Adam applied for variances from setback and parking restrictions that the City applies to places of worship but not to similarly situated nonreligious places of assembly, including conference and banquet facilities, fraternal organizations and clubs, theaters, performing arts facilities, schools, funeral homes, and numerous others. The City denied Adam's variance requests.

3. Troy specifically violated RLUIPA by: (a) imposing an unjustified substantial burden on Adam's exercise of religion when it denied Adam's variance requests, 42 U.S.C. § 2000cc(a)(1); and (b) requiring places of worship to abide by more onerous setback and parking restrictions than nonreligious places of assembly, *id.* § 2000cc(b)(1).

### Jurisdiction, Venue, and Parties

4. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

5. Venue is proper under 28 U.S.C. § 1391(b) because the actions giving rise to this action occurred in the Eastern District of Michigan.

6. The United States has the authority to bring this action under 42 U.S.C. § 2000cc-2(f).

7. Defendant Troy, a municipality in Oakland County, Michigan, is governed by a seven-member City Council, including six elected Councilpersons

and a Mayor. Charter of the City of Troy, § 3.1. The Mayor appoints and the City Council approves a nine-member Planning Commission, which administers and enforces Troy's Zoning Ordinance. Zoning Ordinance § 3.10. The City Council appoints a seven-member Zoning Board of Appeals ("ZBA"), which considers applications for variances and interpretations of the Zoning Ordinance. *Id*. § 15.04(b).

8. Troy is a "government" as defined by RLUIPA, 42 U.S.C. § 2000cc-5(4)(A)(i).

9. Troy's official website lists 55 places of worship in the City, including at least one Jewish synagogue, one Hindu temple, and many Christian churches. The list does not include Adam or any other Islamic place of worship.

## Facts

### *Adam Community Center and its Search for a Property*

10. Adam Community Center, an organization of Muslim individuals who live and work in Troy, incorporated under Michigan laws in 2009. Adam is a "religious assembly or institution" under RLUIPA. 42 U.S.C. § 2000cc(2)(b)(l).

11. Since before its 2018 variance application, Adam has met in the basement of a commercial office building located at 4700 Rochester Road in Troy's Office zoning district.

12. Adam's use of 4700 Rochester Road limits its ability to conduct religious activities and carry out its core religious mission. The building lacks capacity to hold Adam's members, especially for better-attended Friday Jummah prayers; religious rituals for births, marriages, and funerals; and community engagement events. The basement's size and configuration impede Adam's ability to hold simultaneous events, limits class size and frequency to below demand, and deters youth from participating in religious practice.

13. Because there is no Islamic place of worship in Troy, Adam members disperse for religious services to at least five different Islamic places of worship across southeastern Michigan. Worshiping at diffuse locations undermines Adam's religious mission by hindering its members' ability to assemble for religious services, other religious activities, and various community-building activities, and thus their ability to grow and maintain a cohesive religious community.

14. Starting in 2009, Adam members began an extensive search for a permanent location to house Adam in Troy, including by spending hundreds of hours on property research, survey work, and meetings with multiple real estate agents.

15. In 2013 Adam thought that it finally found a permanent location for its community engagement events. In that year Adam sought and received express City approval to use a former restaurant as a community center. But soon after

receiving City approval, the City re-designated Adam's use as a "place of worship" subject to more onerous setback and parking restrictions. When presenting on this issue at a December 2013 meeting, the City's then-Director of Economic & Community Development, Mark Miller, remarked that "this really is a rare occurrence for this board [the ZBA]; I don't think anyone has ever seen anything like this before."

16. The City's 2013 re-designation blocked Adam from using the property without a variance, and the property owner ultimately sold the property to another buyer.

17. Adam continued its search for a property during the next five years. In the two years prior to the purchase of the Subject Property, Adam attempted to purchase at least five properties in Troy. For a variety of reasons, each attempt failed.

*Setback and Parking Restrictions on Places of Worship*

18. Troy's Zoning Ordinance defines "places of worship" as "site[s] used for or intended for the regular assembly of persons for the conducting of religious services and accessory uses therewith." Zoning Ordinance § 2.2.

19. Troy has twenty-two zoning districts that dictate permitted uses and dimensional restrictions for buildings within the City. *Id*. § 4.01. The Zoning Ordinance designates uses within each district as "permitted as of right,"

5

"requiring special approval," "accessory," and "not permitted." *Id*. § 4.21. It also prescribes minimum and maximum distances ("setbacks" or "yards") that buildings in each district must maintain from property lines, and it regulates parking within setback areas.

20. In 1980 Troy imposed "specific use standards" on places of worship, including that they have, at minimum, 50-foot front, rear, and side setbacks. *Id*. § 6.21(E). Troy also barred places of worship from having parking within setbacks adjacent to public streets or residential land. *Id*. § 6.21(F).

21. Prior to 2011, places of worship were only allowed in the City's residential districts and required special approval to locate in the residential districts. In 2011 Troy modified its Zoning Ordinance to also allow places of worship as by-right uses in the City's General Business, Community Business, Integrated Industrial and Business, Office, Office Mixed Use, Research Center, and Form-Based districts. The Zoning Ordinance continued to allow places of worship as specially approved uses in the City's Community Facilities and in its residential districts: five One-Family Residential (R-1A – R-1E) and the One-Family Attached Residential, Multiple-Family Residential, Urban Residential, and Manufactured Housing districts. Under the 2011 Zoning Ordinance, places of worship were not allowed in the Vehicular Parking, Planned Vehicle Sales, or Environmental Protection districts.

22. Under the 2011 Zoning Ordinance, places of worship locating in any district where they were a by-right or specially-approved use continued to be subject to the 50-foot setback and parking restrictions discussed in Paragraph 20, *supra*. As a result, the setback and parking restrictions imposed on places of worship in these districts were, and continue to be, more onerous than those imposed on nonreligious places of assemblies in these districts. *See* Paragraphs 62-74, *infra*.

*The Subject Property*

23. In 2018, Adam found the Subject Property, an existing building well suited to its needs. The Subject Property is an approximately 20,000-square-foot commercial building with a restaurant, banquet hall, and parking lot. It is much larger than the basement location where Adam currently meets. Without any changes to the building's exterior or existing parking and setbacks, it has sufficient capacity for all of Adam's members to worship as a single community and to participate in classes and activities related to their faith.

24. Adam intends to renovate the interior of the Subject Property for use as a community center and for religious worship. It secured a relationship with an imam, an Islamic religious leader, to guide regular religious services central to Islamic faith, including Friday Jummah prayers and religious rituals for weddings, births, and funerals. Adam plans to expand its religious and nonreligious

7

educational classes and workshops and offer recreational activities, counseling and health services, and community outreach programs at the Subject Property.

25. The Subject Property borders Rochester Road, a major thoroughfare, to the east (front), with an approximate 40-foot setback; another commercial property to the north with no setback; commercial and residential properties with a more than 118-foot setback on the south; and residential properties with an approximately 40-foot setback on the west. (All setback distances referenced in this paragraph can be measured using Troy's *Interactive Zoning Map*, available at: https://troymi.gov/departments/code_enforcement/zoningcode.php.) As shown in Picture 1, parking extends into the front, south side, and west setback areas.

*Picture 1: Satellite Image of the Subject Property at 3635 Rochester Road*



8

The building's wall on the north side has no windows or other openings. This north side of the building is adjacent to and borders a non-residential lot.

26. The Subject Property is located in Troy's General Business ("GB") district. According to the City, the Subject Property, as is, satisfies general setback restrictions for the GB district. The Subject Property has been used as a large restaurant and banquet hall without a dimensional variance. *See* Paragraph 32, *infra*. At the ZBA's June 19, 2018 meeting, the City's attorney represented that another commercial entity could use the Subject Property without a dimensional variance. Nonreligious assemblies including conference, meeting, and banquet facilities; fine and performing arts facilities; funeral homes; primary schools; and others are permitted in the GB district if they meet the general setback restrictions for the district.

27. Even though Adam intends no changes to the Subject Property's exterior dimensions or parking, and a nonreligious assembly could use the Subject Property without obtaining a dimensional variance, Troy requires Adam to obtain dimensional variances from setback and parking restrictions because Adam wants to use the Subject Property as a place of worship.

28. On April 3, 2018, Adam executed a preliminary agreement to purchase the Subject Property. The agreement allowed Adam to terminate if not satisfied "that the governing municipalities will allow the property to be permitted to

Purchaser's proposed use." On September 17, 2018, Adam members purchased the Subject Property to hold on Adam's behalf. On September 18, 2018, Adam acquired an option to lease the Subject Property.

29. Adam has a "property interest" in the Subject Property within the meaning of RLUIPA, 42 U.S.C. § 2000cc-5(5).

30. Adam's efforts to establish a place of worship at the Subject Property constitutes "religious exercise" within the meaning of RLUIPA, 42 U.S.C. § 2000cc-5(7).

31. Adam's effort to establish a place of worship on the Subject Property, which would involve the renovation of the interior of the building and the transfer of funds, purchase of materials, and use of interstate highways, and the City's actions described in this Complaint, which prevent the establishment of a place of worship, affect "commerce among the several States" within the meaning of RLUIPA, 42 U.S.C. § 2000cc(a)(2)(B).

*Variances*

32. The Zoning Ordinance places responsibility for issuing variances, defined as "modification[s] of the literal physical provisions of the Zoning Ordinance," with its ZBA, Zoning Ordinance § 2.02, where a "literal enforcement" of the Zoning Ordinance would involve "practical difficulties," *id*. § 15.04(E)(1). To grant a dimensional variance, such as the setback variances for which Adam

applied, the ZBA must first find the following based on substantial evidence provided by the applicant:

    a.  "Exceptional characteristics of the property" "make compliance with dimensional requirements substantially more difficult than would be the case for the great majority of properties in the same zoning district";

    b.  Those exceptional characteristics are related to the property seeking the variance;

    c.  Those exceptional characteristics are not "of a personal nature";

    d.  Those exceptional characteristics were not "created by the current or a previous owner"; and

    e.  The variance would not "harm[] or alter the essential character of the area," "unreasonably increase the congestion in public streets," "or unreasonably diminish or impair established property value within the surrounding area, or in any other respect impair [] public health, safety, comfort, morals or welfare." *Id*. § 15.04(E)(2).

33. The Zoning Ordinance additionally states: "The proposed variance will be the minimum necessary, and no variance shall be granted where a different solution not requiring a variance would be possible." *Id*. §15.04(E)(4). The Zoning Ordinance allows the ZBA to impose conditions when granting variances to ensure

"that public safety and welfare be secured and substantial justice done." *Id*. §

15.04(E)(1).

34. Troy's Zoning Ordinance is a "land use regulation" within the meaning

of RLUIPA, 42 U.S.C. § 2000cc-5(5).

35. For purposes of RLUIPA, the variance process is a system of regulations

in which the City makes an "individualized assessment" regarding the zoning

applicant's property. 42 U.S.C. § 2000cc(a)(2)(A)-(C).

*Adam's Variance Application*

36. In May 2018, Adam filed a ZBA application for the Subject Property

seeking dimensional variances to the 50-foot setbacks and parking restrictions in

the Zoning Ordinance for places of worship. The variances comprised

approximately 10-foot setback variances in the front and back because the Subject

Property already had 40-foot setbacks; a 50-foot setback variance on the north side

because that side had no setback; and variances from parking restrictions in the

front, in the back, and on the south side, which abutted public roads and a

residential area. No variance was needed to the setback on the south side because

the setback was 118 feet. The ZBA denied the application in all respects at a June

19, 2018 meeting.

37. Adam's variance application did not seek to modify the existing footprint or external characteristics of the building or parking lot, which Adam believes are well situated for its intended use of the Subject Property.

38. Adam estimates that strict compliance with the 50-foot setback restriction would render the building insufficient for its needs by significantly diminishing the usable building space by 60 percent. Adam estimates a renovation to achieve such compliance would be prohibitively expensive and cost more than the Subject Property's $2 million purchase price.

39. A variance would not have been necessary if Adam's proposed assembly use of the building was nonreligious. A theater, club, banquet hall, or other nonreligious place of assembly would be able to use the Subject Property by right without any variance. This informed Adam's belief that Troy would permit its religious use by granting Adam's variance application.

40. Adam worked with City representatives to prepare its ZBA application. Based on City feedback, Adam revised its application multiple times before submitting the final version to the City. Adam interpreted this exchange as indicative of a successful application.

41. According to Adam members, when discussing Adam's ZBA application prior to the meeting, the City told Adam that no available properties in Troy satisfied place of worship setback restrictions. Adam reasonably expected a

13

variance from those restrictions instead of the result that no place of worship could renovate or newly operate in a building in Troy.

42. In connection with its application, Adam secured support from two of three residential neighbors. This support bolstered Adam's reasonable expectation of success before Troy's ZBA.

43. In support of its application, Adam addressed each of the City's criteria for granting dimensional variances and specifically argued:

   a. The Subject Property is completely developed and the City sanctioned its current use. Compliance with dimensional requirements is substantially more difficult for Adam than other uses in the same zoning district because of the 50-foot setback restriction that only applies to places of worship;

   b. The characteristics that make compliance with dimensional restrictions difficult are the size and location of the existing building. These are related to the Subject Property;

   c. The size and location of the existing building are not of a personal nature. The City approved comparable uses at the Subject Property on at least two prior occasions;

   d. The characteristics that make compliance difficult were not created by Adam or the prior owner; and

e.  The proposed variances would not be harmful or adversely alter the character of the area since there would be no change to the existing building or parking lot or the Subject Property's use.

44. In addition to those reasons described in Paragraphs 37-43, *supra*, Adam had additional reasons to expect success: it was willing to accept conditions from the City; its plans did not change the Subject Property's footprint, *see* Paragraphs 27, 36, *supra*; its use was consistent with past uses at the Subject Property, *see* Paragraph 26, *supra*; the City regularly granted similar variances, *see* Paragraph 54, *infra*; and places of worship were allowed as of right in the GB district, *see* Paragraph 21, *supra,* and Chart 1, *infra*.

45. Troy's ZBA held a public hearing on Adam's application on June 19, 2018. During the variance proceedings before the ZBA, the City departed from procedural and substantive norms, including by instituting a three-minute rule on comments, which it acknowledged was a rarely imposed restriction; by focusing on Adam's proposed use of the Subject Property, *see* Paragraph 50, *infra*, despite receiving instruction that the proposed use of the property is not a proper consideration for a dimensional variance application such as Adam's; and by imposing requirements and standards on Adam beyond those contained in the Zoning Ordinance or applied to other nonreligious variance applicants.

46. Consistent with Adam's extensive search for a permanent location, statements during the June 19, 2018 meeting reflect how Adam has no feasible alternative location for its religious activities and lacks a reasonable opportunity to build or locate elsewhere within the City. ZBA Chairman Glenn Clark acknowledged that Troy is "practically all built out." He acknowledged that "if there was a parcel available that fit your needs, you wouldn't be here."

47. The City cannot demonstrate that the denial of Adam's variance requests advanced a compelling government interest. Nor can it demonstrate that there are no less restrictive means to accomplish any purported interests than by denying Adam's variance requests.

48. During the meeting ZBA members appeared to justify their decision by contrasting the Subject Property to existing places of worship in Troy. For example, ZBA Chairman Clark specifically noted that a Roman Catholic Church, St. Anastacia, was built "according to the law." He mentioned that two Christian churches he attended – Kensington Church and Woodside Bible – "built beautiful campuses that made sense and … fit with the community and they don't interfere with the neighbors vis-à-vis a setback." He also stated that all of Troy's existing places of worship "follow the zoning ordinance and [] have their 50-foot around minimum."

49. Notwithstanding ZBA members' assertions described in the preceding paragraph, many of the comparisons were based on incorrect facts. Of the 55 places of worship listed on Troy's website, at least 21 lack 50-foot setbacks and an additional 20 include parking in those setbacks that border residential zoning districts or public roads. Two churches mentioned by ZBA Chairman Clark – Woodside and St. Anastacia – have parking within 20 feet of residential zoning districts. Approximately one half mile from the Subject Property, two places of worship in Troy's GB district – First Evangelical Community Church and Life Christian Church – each feature setbacks under 50 feet. (All setback distances referenced in this paragraph can be measured using Troy's *Interactive Zoning Map*, available at:

https://troymi.gov/departments/code_enforcement/zoningcode.php.)

50. Other statements by ZBA members at the meeting undermine the legitimacy of any interest that the City may later offer as justification for their decision and exhibit how the ZBA did not use the least restrictive means when denying Adam's request. For example, ZBA Chairman Clark stated that he generally opposes variance requests unless all surrounding landowners support the variance. Troy's Zoning Ordinance contains no such standard. One ZBA member mentioned traffic concerns on a street one mile away and suggested that Adam had too many members for the Friday night traffic. However, the ZBA did not have or

request a traffic study related to Adam's application or otherwise inquire about Adam's anticipated traffic on Friday evenings. Another ZBA member speculated about harm that might befall Adam's children in the Subject Property's parking lot. But the Zoning Ordinance would allow an elementary school to operate at the Subject Property without any variance. Other ZBA members asserted that the space did not fit Adam's needs. Adam responded that the Subject Property was perfectly suited to its needs.

51. The City treated Adam on less favorable terms than similarly situated nonreligious places of assembly and institutions when it denied Adam's variance application.

52. Troy has stated that it would not require a nonreligious organization seeking to establish a place of assembly at the Subject Property to apply for a variance. At the June 19, 2018 ZBA Meeting, ZBA and Planning Commission Member Padma Kuppa raised this issue with the City's attorney. The City's attorney acknowledged that a commercial business could operate at the Subject Property without dimensional variances. The City's attorney also acknowledged that Adam required dimensional variances because it intended to establish a place of worship at the Subject Property.

53. The City treated Adam on less favorable terms than similarly situated nonreligious places of assembly and institutions by its characterization of Adam's

18

request. During the June 19, 2018 meeting ZBA Chairman Clark repeatedly characterized Adam's variance application as a request to "break the law" notwithstanding the fact that Troy's Zoning Ordinance specifically sets out procedures for its ZBA to evaluate and grant variance requests. Additionally, at a December 2018 ZBA meeting, in granting a similar setback variance to a restaurant, ZBA Chairman Clark described the application of the Zoning Ordinance to bar parking in a setback as a "zany," "man-made problem." He made no suggestion that granting a variance was akin to breaking the law.

54. The City treated Adam on less favorable terms than similarly situated nonreligious places of assembly and institutions because it granted variances to nonreligious places of assembly for setbacks bordering residential districts and public roads (including in GB and other non-residential districts). Since 2005, Troy's ZBA granted the vast majority of setback requests from nonreligious places of assembly: five restaurants, two office buildings (one with an autism center and another with a personal trainer that hosts group classes), one school, two museums, and one Boys and Girls Club. Numerous other nonreligious places of assembly in non-residential districts near the Subject Property are inconsistent with Troy's

general setback restrictions, including restrictions related to setbacks bordering residential districts.

55. The ZBA unanimously denied Adam's variance requests through a motion at the June 19, 2018 meeting. The motion supporting the denial noted that: (a) the variance did not fit the "statement of practical difficulty" or the "intent and purpose" of the lot; and (b) a 100 percent variance to the side setback "seems a bit aggressive." The ZBA did not mention in the motion that the front and back setback variances were each only ten feet, that the side needing a setback bordered a commercial property, or that Adam requested no physical changes to the Subject Property. The ZBA did not specifically address the Zoning Ordinance's standards for evaluating variances in its motion to deny.

56. At Troy's June 26, 2018 Planning Commission meeting, ZBA and Planning Commission Member Kuppa described the ZBA meeting as "very unusual" and said that Adam's variance was not approved because of "public safety and welfare" concerns. But as stated above, many nonreligious assembly uses, including elementary schools, could operate by right at the Subject Property without a variance; the ZBA never specifically articulated what it found unsafe or harmful to public welfare; and the ZBA did not consider conditions to alleviate concerns. Kuppa later stated that the non-use variances were "just too much." During the discussion, the City's Planning Director, Brent Savidant, commented on

20

the increasing amount of inquiries about using strip malls as places of worship, stating: "I think people are starting, maybe, to worship a little differently than they did 10 or 15 years ago, but our ordinance does not really contemplate that."

*The Denial's Impact on Adam*

57. Due to the denial of Adam's variance requests, Adam cannot establish a place of worship on the Subject Property.

58. The City's actions described in this Complaint have created considerable delay, expense, and uncertainty for Adam in its efforts to establish a place of worship in the City.

59. Adam conducted an extensive search of land in the City to meet its religious worship needs before deciding to purchase the Subject Property. A new search for an alternative property in the City that is suitable for its needs and meets the setback and parking restrictions for a place of worship would impose additional delay, expense, and uncertainty for Adam.

60. The City's actions described in this Complaint have caused Adam to suffer significant financial loss, including, but not limited to, attorneys' fees and professional fees.

61. In an effort to mitigate its financial losses, Adam members continue to operate the Subject Property as a restaurant and banquet hall while its private suit against the City is pending.

*Troy's Zoning Ordinance*

62. As illustrated in Chart 1, *infra*, and described in Paragraph 21, *supra*, Troy's Zoning Ordinance permits places of worship by right in its General Business ("GB"), Community Business ("CB"), Integrated Industrial and Business ("IB"), Office ("O"), Office Mixed Use ("OM"), and Research Center ("RC") districts. It permits places of worship with special approval in its Community Facilities ("CF") district and in its residential districts: the five One-Family Residential districts (R-1A – R-1E) and the One-Family Attached Residential ("RT"), Multiple-Family Residential ("MF"), Urban Residential ("UR"), and Manufactured Housing ("MHP") districts. Chart 1 shows how those districts that permit places of worship by right or with special approval treat other nonreligious assembly uses,[1] with "P" reflecting uses permitted by right, "S" reflecting uses permitted only with special approval, "A" reflecting accessory uses, and "N" reflecting uses not permitted.

---

[1] Chart 1 does not include Troy's three form-based districts, described in Paragraph 74, *infra*, or Troy's Vehicular Parking, Planned Vehicle Sales, or Environmental Protection districts, where places of worship are not permitted.

22

| Chart 1: Nonreligious Assembly Uses in Districts Where Places of Worship are Allowed as of Right and with Special Approval | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | CB | GB | IB | O | OM | RC | R-1A–1E | RT | MF | UR | MHP | CF |
| **Place of Worship** | P | P | P | P | P | P | S | S | S | S | S | S |
| **Commercial Recreation (Indoor)** | P | P | P | N | N | N | N | N | N | N | N | N |
| **Conference, Meeting, and Banquet Facilities** | S | P | P | N | P | S | N | N | N | N | N | S |
| **Dance, Music, and Art Studios** | P | P | P | N | A | N | N | N | N | N | N | N |
| **Day Care Centers and Preschools** | P | P | P | P | P | P | S | S | S | S | S | S |
| **Fine and Performing Arts Facilities** | P | P | P | N | S | N | N | N | N | N | N | P |
| **Health Fitness Centers, Athletic Clubs, Martial Arts Studios, and Other Similar Uses** | P | P | P | N | A | N | N | N | N | N | N | N |
| **Mortuary/Funeral Home** | P | P | P | N | N | N | N | N | N | N | N | N |
| **Post-Secondary Schools** | P | P | P | P | P | P | N | N | N | N | N | P |
| **Primary/Secondary Schools** | P | P | P | P | P | P | S | S | S | S | S | P |
| **Private Clubs, Fraternal Organizations, and Lodge Halls** | S | S | P | S | S | N | N | N | N | N | N | S |
| **Theatres and Places of Assembly** | P | P | P | N | S | S | N | N | N | N | N | N |

*Less Favorable Treatment of Places of Worship in the City's GB, CB, IB, O, OM, and RC Districts Compared to Nonreligious Assemblies and Institutions*

63. Troy's Zoning Ordinance treats places of worship less favorably than similarly situated nonreligious assemblies and institutions in the GB, CB, IB, O, OM, and RC districts. Troy's setback and parking restrictions imposed on places of worship are more restrictive than otherwise required for similarly situated nonreligious assemblies and institutions from Chart 1, *supra*, permitted as of right

in the GB, CB, IB, O, OM and RC districts.[2] Chart 2 shows how Troy's setback restrictions imposed on places of worship in the GB, CB, IB, O, OM, and RC districts are more restrictive than the general setback restrictions imposed upon most nonreligious assembly uses from Chart 1 in those same districts.

| Chart 2: Minimum Setback Restrictions in Troy's GB, CB, IB, O, OM, and RC Districts | | | | |
|---|---|---|---|---|
| **District** | **Front** | **Rear** | **Sides** | **Any Setback Adjacent to Single-Family Residential** |
| *Places of Worship* | 50' | 50' | 50' | 75' or 50'* |
| *CB* | 10' | 30' | 20'** | 75' |
| *GB* | 10' | 30' | 20'** | 75' |
| *IB* | 30' | 20' | 10' | 50' |
| *O* | 10' | 30' | 20' | 50' |
| *OM* | 10' | 30' | 20'*** | 50' |
| *RC* | 30' | 20' | 20' | 50' |
| *\* Setbacks from residential property are consistent with district-specific restrictions noted below.* *\*\* In the CB and GB districts, no setbacks are required where the property abuts a non-residential lot unless the property's related wall has windows; a minimum 10-foot setback is required where the property's wall has windows or openings.* *\*\*\* In the OM district, the sum total of both side setbacks must be at least 60 feet.* | | | | |

64. In addition to the setback restrictions described in Chart 2, *supra*, Troy's Zoning Ordinance imposes use-specific parking restrictions on places of worship that are less favorable than the general parking requirements for the GB, CB, IB, O, OM, and RC districts, detailed below in Paragraphs 65 to 70.

---

[2] Post-secondary schools are subject to minimum setback restrictions of 40-feet on the front, rear and sides, and an 80-foot setback when bordering residential properties. *Id*. § 6.22(B). All other uses from Chart 1 follow the general requirements in Chart 2.

65. The GB district "is intended to provide areas for more diversified retail and service uses, a City-wide or regional market area, and/or arterial exposure." Zoning Ordinance § 4.14(A). The GB district permits the following uses by right: theaters and places of assembly;[3] conference, meeting and banquet facilities; fine and performing art facilities; dance, music, and art studios; health fitness centers, athletic clubs, martial arts studios, and other similar uses; daycare centers and preschools; primary and secondary schools; and funeral homes. *Id.* §4.21; *see also* Chart 1, *supra*. These uses are subject to the GB district's general setback and parking restrictions; the Zoning Ordinance does not impose any use-specific setback or parking restrictions on these uses. *See, e.g.,* Chart 2, *supra*, and Paragraph 66, *infra*.

66. The GB district's general setback and parking restrictions include the following: properties must have, at minimum, 10-feet front setbacks, 30-feet rear setbacks, and 20-feet side setbacks, Zoning Ordinance § 4.14(C); *see also* Chart 2, *supra*, but no setbacks are required where the lot abuts a non-residential lot unless the property's related wall has windows, Zoning Ordinance § (D)(1)(b). A minimum 10-foot setback is required where the property's wall has windows or

---

[3] Troy's Zoning Ordinance defines "places of assembly" as "any building, structure, and/or grounds where groups of more than twenty (20) people meet or are assembled. Places of assembly shall include, but are not limited to auditoriums, lecture halls, stadiums, sports arenas, convention spaces, and other similar facilities." Zoning Ordinance § 2.2.

openings. *Id*. A 75-foot setback is required from single-family-zoned land. *Id.* §

4.14(D)(1)(a). Parking is permitted in setback areas with certain exceptions: a 10-

foot barrier must separate paved parking areas from residential areas, *id*. §

13.06(C)(3), no more than 50% of parking can be in the front yard unless specially

exempted, *id*. § 4.14(D)(4), and at least 10 feet of the front setback must contain

greenery if adjacent to a public street, *id*. § 13.02(D).

67. The CB district permits the following uses by right: theaters and places

of assembly; fine and performing art facilities; health fitness centers, athletic clubs,

martial arts studios, and other similar uses; dance, music, and art studios; daycare

centers and preschools; primary and secondary schools; and funeral homes. *Id.* §

4.21; *see also* Chart 1, *supra*. These uses are subject to the CB district's general

setback and parking restrictions, including that properties have, at minimum, 10-

feet front setbacks, 30-feet rear setbacks, and 20-feet side setbacks, *id*. § 4.13(C);

*see also* Chart 2, *supra*, but no setbacks are required where the lot abuts a non-

residential lot unless the property's related wall has windows, Zoning Ordinance §

4.13(D)(1)(b). A minimum 10-foot setback is required where the property's wall

has windows or openings. *Id*. A 75-foot setback is required from single-family-

zoned land. *Id*. § 4.13(D)(1)(a). Parking is permitted in setback areas with certain

exceptions: a 10-foot barrier must separate paved parking areas from residential

areas, *id*. § 13.06(C)(3), no more than 50% of parking can be in the front yard

unless specially exempted, *id*. § 4.13(D)(4), and at least 10 feet of the front setback must contain greenery if adjacent to a public street, *id*. § 13.02(D).

68. The IB district permits the following uses by right: theaters and places of assembly; conference, meeting, and banquet facilities; private clubs, fraternal organizations, and lodge halls; fine and performing art facilities; health fitness centers, athletic clubs, martial arts studios, and other similar uses; daycare centers and preschools; dance, music, and art studios; primary and secondary schools; and funeral homes. *Id.* §4.21; *see also* Chart 1, *supra*. These uses are subject to the IB district's general setback and parking restrictions, including that properties have, at minimum, 30-feet front setbacks, 20-feet rear setbacks, and 10-feet side setbacks. Zoning Ordinance § 4.15(C); *see also* Chart 2, *supra*. A 50-foot setback is required from single-family-zoned land. Zoning Ordinance § 4.15(D)(1). Parking is permitted in setback areas with certain exceptions: a 10-foot barrier must separate paved parking areas from residential areas, *id*. § 13.06(C)(3), parking is not permitted in the front yard unless specially exempted, *id.* § 4.15(D)(3)(a), and at least 10 feet of the front setback must contain greenery if adjacent to a public street, *id*. § 13.02(D).

69. The O and OM districts permit the following uses by right: daycare centers, preschools, and primary and secondary schools. *Id.* §4.21; *see also* Chart 1, *supra*. Conference, meeting, and banquet centers are additionally permitted by

right in the OM district. *Id.* These uses are subject to the O and OM districts'
general setback and parking restrictions, including that properties have, at
minimum, 10-feet front setbacks, 30-feet rear setbacks, and 20-feet side setbacks.
*Id.* §§ 4.16(C), 4.17(C); *see also* Chart 2, *supra*. A 50-foot setback is required from
single-family-zoned land. Zoning Ordinance §§ 4.16(D)(1), 4.17(D)(1). Parking is
permitted in setback areas with certain exceptions: a 10-foot barrier must separate
paved parking areas from residential areas, *id.* § 13.06(C)(3), no more than 50% of
parking may be in a front yard, *id.* §§ 4.16(D)(4), 4.17(D)(4), and at least 10 feet of
the front setback must contain greenery if adjacent to a public street, *id.* §
13.02(D).

70.   The RC district permits the following uses by right: daycare centers,
preschools, and primary and secondary schools. *Id.* §4.21; *see also* Chart 1, *supra*.
These uses are subject to the RC district's general setback and parking restrictions,
including that properties have, at minimum, 30-feet front setbacks, 20-feet rear
setbacks, and 20-feet side setbacks. Zoning Ordinance § 4.18(C); *see also* Chart 2,
*supra*. A 50-foot setback is required from single-family-zoned land. Zoning
Ordinance § 4.18(D)(1). Parking is permitted in setback areas with certain
exceptions: a 10-foot barrier must separate paved parking areas from residential
areas, *id.* § 13.06(C)(3), and parking is not permitted in the front yard or yards

abutting public streets, *id.* § 4.18(D)(2). At least 10 feet of the front setback must

contain greenery if adjacent to a public street, *id*. § 13.02(D).

71. By contrast, places of worship, which are permitted uses by right in the

GB, CB, IB, O, OM, and RC districts, *see* Chart 1, *supra*, must have, at a

minimum, 50-foot front, rear, and side setbacks, which is greater than the front,

rear and side setbacks for most other nonreligious uses in these districts, Zoning

Ordinance § 6.21(E); *see also* Chart 2, *supra*. Moreover, parking is not permitted

for places of worship within the required 50-foot setbacks that are adjacent to

public streets or residential-zoned land used for dwellings. Zoning Ordinance §

6.21(F). These setback and parking restrictions are more onerous than those

applied to each nonreligious use described in the preceding paragraphs.

*Less Favorable Treatment of Places of Worship in the City's Residential,*
*Community Facilities, and Form-Based Districts Compared to Nonreligious*
*Places of Assembly and Institutions*

72. Places of worship are treated less favorably than similarly situated

nonreligious assemblies and institutions in the City's residential districts (R-1A

through R-1E, RT, MF, UR, and MHP). The City's residential districts permit the

following uses with special approval: daycare centers, preschools, primary schools,

and secondary schools. *Id*. § 4.21; *see also* Chart 1, *supra*. These districts also

permit places of worship with special approval. *Id*. However, daycare centers,

preschools, primary schools, and secondary schools are not subject to the

prerequisite setback and parking restrictions imposed on places of worship. *Id.* §§ 4.06(C), 4.07(C), 4.08(C), 4.09(C), 4.10(C) & (D), 6.21(E).

73. Places of worship are treated less favorably than similarly situated nonreligious assemblies and institutions in the City's CF district. The CF district permits the following uses by right: primary and secondary schools, fine and performing art facilities, and post-secondary schools. *Id.* § 4.21. By contrast, places of worship must obtain special approval to operate in the CF district. *Id.*

74. Troy has three Form-Based districts, which follow separate use and dimensional criteria from the other districts that allow places of worship as of right or with special approval. Places of worship are treated less favorably than similarly situated nonreligious assemblies and institutions in the City's Form-Based districts. *Id.* §§5.03-5.06. All three Form-Based districts permit the following uses by right: places of worship; private primary and secondary schools; fitness, gymnastic, and exercise centers; theaters and places of assembly; and funeral homes, among other nonreligious assembly uses. *Id*. The Form-Based districts require these similarly situated nonreligious assemblies and institutions to abide by less onerous setback restrictions than the minimum 50-foot setback restrictions imposed on places of worship. *Id.* §§ 5.03-5.06, 6.21(E).

*RLUIPA and the City*

75. At all times relevant to the allegations in this Complaint, the City lacked sufficient procedures or practices to ensure compliance with RLUIPA, including, but not limited to, adequate RLUIPA training for City officials and staff involved in religious land use determinations and procedures to address complaints raising RLUIPA considerations. During the June 19, 2018 meeting, a ZBA member specifically inquired about RLUIPA. The City's Attorney advised the ZBA member not to be concerned with RLUIPA when considering Adam's variance requests.

## COUNT I: RLUIPA – Substantial Burden

76. The allegations above are incorporated by reference.

77. The City's actions described in this Complaint constitute the imposition or implementation of a land use regulation that imposes a substantial burden on Adam's religious exercise, which burden is not in furtherance of a compelling governmental interest and is not the least restrictive means of furthering such an interest, in violation of RLUIPA, 42 U.S.C. § 2000cc(a)(l).

## COUNT II: RLUIPA – Equal Terms

78. The allegations above are incorporated by reference.

79. The City's Zoning Ordinance and the City's actions described in this Complaint constitute the imposition or implementation of a land use regulation in a

manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution in violation of RLUIPA, 42 U.S.C. § 2000cc(b)(l).

## PRAYER FOR RELIEF

**WHEREFORE,** the United States prays that this Court enter an order that:

A. Declares that Troy's policies and practices, as alleged herein, violate RLUIPA;

B. Enjoins Troy, its officers, employees, agents, successors, and all other persons in concert or participation with it, from:

  i. Imposing a substantial burden on the religious exercise of Adam and its members that is not narrowly tailored to further a compelling governmental interest; and

  ii. Treating religious assemblies or institutions, including Adam and its members, on less than equal terms with nonreligious assemblies or institutions;

C. Enjoins Troy, its officers, employees, agents, successors and all other persons in concert or participation with it, from enforcing Zoning Ordinance § 6.21(E)-(F) against any religious assembly or institution in districts where nonreligious places of assembly or institutions are permitted as of right or by special approval, or from enforcing the provision in Zoning Ordinance §

4.21 that permits places of worship only as a specially approved use rather than a by-right use in the CF district;

D. Requires Troy, its officers, employees, agents, successors, and all other persons in concert or participation with it, to:

    i.   Take such actions as may be necessary to restore, as nearly as practicable, Adam and its members to the position they would have been in but for Troy's unlawful conduct, including, but not limited to, granting such approvals necessary to allow Adam to use the Subject Property as a place of worship; and

    ii.   Take such actions as may be necessary to prevent the recurrence of such unlawful conduct in the future, including, but not limited to:

        1. Ensuring that religious assemblies or institutions are not treated on less than equal terms with nonreligious assemblies or institutions;

        2. Providing RLUIPA training to its personnel;

        3. Establishing procedures to address complaints of RLUIPA violations; and

        4. Maintaining records and submitting reports relating to RLUIPA compliance; and

E.  Awards such additional relief as the interests of justice may require, together

with the United States' costs and disbursements in this action.

Respectfully submitted,

                                          WILLIAM P. BARR
                                          Attorney General

MATTHEW SCHNEIDER                         ERIC S. DREIBAND
United States Attorney                    Assistant Attorney General
Eastern District of Michigan              Civil Rights Division

                                          SAMEENA SHINA MAJEED
                                          Chief

*/s/ Shannon M. Ackenhausen*              */s/ Abigail B. Marshak*
SUSAN K. DECLERCQ                         TIMOTHY J. MORAN
(P60545)                                  Deputy Chief
Assistant United States Attorney          RYAN G. LEE
Chief, Civil Rights Unit                  RLUIPA Coordinator
SHANNON M. ACKENHAUSEN                    ABIGAIL B. MARSHAK
(P83190)                                  (NY 5350053)
Assistant United States Attorney          Trial Attorney
United States Attorney's Office           Housing and Civil Enforcement Section
Eastern District of Michigan              Civil Rights Division
211 W. Fort Street, Suite 2001            United States Department of Justice
Detroit, Michigan 48226                   4 Constitution Square / 150 M Street NE
Phone: (313) 226-9730                     Washington, DC 20530
Facsimile: (313) 226-3271                 Phone: (202) 514-1968
Susan.DeClercq@usdoj.gov                  Facsimile: (202) 514-1116
Shannon.Ackenhausen@usdoj.gov            Abigail.Marshak@usdoj.gov

Dated: September 19, 2019