UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 19-cv-12736 |
| | ) | Hon. Nancy G. Edmunds |
| v. | ) | Mag. Judge Anthony P. Patti |
| | ) | |
| | ) | |
| **CITY OF TROY, MICHIGAN** | ) | |
| | ) | |
| Defendant. | ) | |

### UNITED STATES' MOTION TO COMPEL DISCOVERY

Plaintiff, the United States, respectfully moves this Court for an Order under Rule 37 of the Federal Rules of Civil Procedure and Rule 37.2 of the Local Rules of the United States District Court for the Eastern District of Michigan, compelling Defendant City of Troy, Michigan ("Troy" or "the City") to fully respond to or supplement answers to multiple of the United States' discovery requests.

On April 9, 2020, and on May 1, 2020, the United States wrote to Troy under Fed. R. Civ. P. 37 and E. D. Mich. LR 7.1 and 37.1 outlining the deficiencies in Troy's discovery responses in an effort to resolve issues related to discovery without court intervention. In response, Troy wrote on May 1, 2020, that it "will not be supplementing our previous discovery responses." On March 26, 2020, the

United States made a final request for consent, as required by E. D. Mich. LR 7.1, but Troy did not provide consent.

Troy's incomplete responses to the Requests and Interrogatories fall short of its obligations under the Federal Rules of Civil Procedure, and its objections are unsubstantiated or lack merit. The United States therefore seeks relief from this Court. A brief consistent with E. D. Mich. LR 7.1(d), and copies of the actual discovery documents subject to the motion consistent with E. D. Mich. LR 37.2, support this motion.

Respectfully Submitted,

| | |
|---|---|
| MATTHEW SCHNEIDER<br>United States Attorney<br>Eastern District of Michigan | ERIC S. DREIBAND<br>Assistant Attorney General<br>Civil Rights Division |
| | SAMEENA SHINA MAJEED<br>Chief |
| */s/ Susan DeClercq*<br>SUSAN K. DECLERCQ<br>(P60545)<br>Assistant United States Attorney<br>Chief, Civil Rights Unit<br>SHANNON M. ACKENHAUSEN<br>(P83190)<br>Assistant United States Attorney<br>United States Attorney's Office<br>Eastern District of Michigan<br>211 W. Fort Street, Suite 2001<br>Detroit, Michigan 48226<br>Phone: (313) 226-9730 | */s/ Abigail Marshak*<br>TIMOTHY J. MORAN<br>Deputy Chief<br>ABIGAIL B. MARSHAK<br>(NY 5350053)<br>Trial Attorney<br>Housing and Civil Enforcement Section<br>Civil Rights Division<br>United States Department of Justice<br>4 Constitution Square / 150 M Street NE<br>Washington, DC 20530<br>Phone: (202) 514-1968<br>Facsimile: (202) 514-1116 |

Facsimile: (313) 226-3271                    Abigail.Marshak@usdoj.gov
Susan.DeClercq@usdoj.gov
Shannon.Ackenhausen@usdoj.gov

Dated: May 26, 2020

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 19-cv-12736 |
| | ) | Hon. Nancy G. Edmunds |
| v. | ) | Mag. Judge Anthony P. Patti |
| | ) | |
| | ) | |
| **CITY OF TROY, MICHIGAN** | ) | |
| | ) | |
| Defendant. | ) | |

## BRIEF IN SUPPORT OF UNITED STATES' MOTION TO COMPEL DISCOVERY

### Statement of the Issue Presented

Should the Court compel the City of Troy, Michigan to produce documents relevant and important to establishing whether Troy violated the Religious Land Use and Institutionalized Persons Act's substantial burden and equal terms provisions in response to the United States' properly issued discovery requests?

i

### Most Controlling Authority

Fed. R. Civ. P. 26
Fed. R. Civ. P. 34
Fed. R. Civ. P. 37

## I.      Introduction

On September 19, 2019, the United States filed suit against the City of Troy, Michigan, alleging that the City violated the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA" or "the Act"), 42 U.S.C. § 2000cc *et seq*, related to the City's treatment of Adam Community Center ("Adam") in its effort to establish an Islamic place of worship in Troy and in its treatment of religious assemblies throughout Troy. (Dkt. 1). Specifically, the United States alleges that Troy (1) imposed an unjustified substantial burden on Adam's exercise of religion when it denied Adam's variance requests, 42 U.S.C. § 2000cc(a)(1) ("substantial burden claim"); (2) violated RLUIPA's equal terms provision by treating Adam on less than equal terms as secular assembly places, *id*. § 2000cc(b)(1) ("as applied equal terms claim"); and (3) violated RLUIPA's equal terms provision by requiring religious assemblies to abide by more onerous setback and parking requirements than secular assemblies in any zoning district and by requiring religious assemblies to seek special use approval in one of its zoning districts, *id* ("facial equal terms claim"). The United States' lawsuit is a companion to, and was consolidated for scheduling purposes with, *Adam Community Center v. City of Troy, et al.*, Case No. 18-cv-13481 ("Companion Case").

## II.    Requests Subject to this Motion

On December 9, 2019, the United States issued its First Request for Production of Documents, Things, and ESI under Fed. R. Civ. P. 26 and 34 to the City of Troy. On February 24, 2020, the United States issued its Second Request for Production. On March 13, 2020, the United States issued its Third Request for Production. On March 9, 2020, and March 20, 2020, Troy sent its responses to the United States' First Request for Production, *see* Exhibit A; on March 25 and 26, 2020, Troy sent its response to the United States' Second Request for Production, *see* Exhibit B; and on April 13, 2020, Troy sent its response to the United States' Third Request for Production, *see* Exhibit C.

On April 9, 2020, and on May 1, 2020, the United States wrote to Troy under Fed. R. Civ. P. 37 and E. D. Mich. LR 7.1 and 37.1 outlining deficiencies in Troy's discovery responses in an effort to resolve issues related to discovery without court intervention ("Deficiency Letters"). *See* Exhibits D and E. In response, Troy wrote on May 1, 2020, that it will "not be supplementing our previous discovery responses." *See* Exhibit F.

## III.   Legal Analysis

Fed. R. Civ. P. 26(b)(1) dictates that parties may obtain discovery regarding any nonprivileged, relevant matter proportional to the needs of the case and irrespective of admissibility. Proper discovery answers are direct and complete or

4

include specific objections. *Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 209-10 (E.D. Mich. 2018); *see also Shapiro v. Sherr*, No. CV 18-11187, 2019 WL 3326194, at *1 (E.D. Mich. Apr. 17, 2019). Troy's obligation to produce documents in response to the United States' requests exists "without regard to [its] view of how that information might be used at trial." *Varga v. Rockwell Int'l Corp.*, 242 F.3d 693, 697 (6th Cir. 2001). And when "a party fails to produce documents ... as requested under Rule 34," Fed R. Civ. P. 37 permits "a party to move for an order compelling [] discovery." *See* Fed. R. Civ. P. 37(a)(1), (a)(3)(B)(iii)-(iv).

Here, many of Troy's discovery responses are incomplete. In addition, its objections, which are repeated throughout its responses, are so broad and generalized that they lack any meaningful detail, specificity, or merit, and result in the precise type of "boilerplate evasion[]" rejected by courts. *See, e.g., Siser N. Am., Inc.*, 325 F.R.D. at 203; *see also Michigan Auto. Ins. Placement Facility v. New Grace Rehab. Ctr., PPC*, No. 417CV11007TGBDRG, 2019 WL 355654, at *2-3 (E.D. Mich. Jan. 29, 2019) (citing cases).

## A. Troy Failed to Provide Documents Beyond Those in Troy's Immediate Possession

A party's obligation to respond to Fed. R. Civ. P. 34 production requests extends beyond that information in its immediate possession and includes "an affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control." *State Farm Mut. Auto. Ins. Co.*

*v. Pointe Physical Therapy, LLC.*, No. 14-11700, 2017 WL 11379855, at *3 (E.D.

Mich. Dec. 15, 2017), *order clarified sub nom. State Farm Mut. Auto. Ins. Co. v.*

*Pointe Physical Therapy, LLC*, No. 14-11700, 2018 WL 8996389 (E.D. Mich. Jan.

30, 2018) (*quoting Flagg v. City of Detroit*, 252 F.R.D. 346, 353 (E.D. Mich.

2008); *see also In re Bankers Tr. Co.*, 61 F.3d 465, 469 (6th Cir. 1995)

("documents are deemed to be within the 'possession, custody or control' for

purposes of Rule 34 if the party has ... the legal right to obtain the documents on

demand.") (internal citations omitted). If after a diligent search Troy maintains that

no responsive documents exist, it must support such claim with a sworn declaration

detailing the search. *See, e.g.*, *McMaster v. Kohl's Dep't Stores, Inc.*, No. 18-

13875, 2020 WL 755379, at *2 (E.D. Mich. Feb. 15, 2020) (citing cases); *Catrinar*

*v. Wynnestone Communities Corp.*, No. 14-11872, 2016 WL 1084687, at *3 (E.D.

Mich. Mar. 21, 2016).

As described in more detail below with respect to specific requests, Troy's

responses to the United States' document production requests appear only to

provide documents or information in the City's immediate possession, and do not

include any information from other people subject to the City's control, such as

individual members of Troy's Zoning Board of Appeals, Planning Commission,

and City Council, as required by Fed. R. Civ. P. 34(a)(1). For example, Request

No. 10 seeks all email correspondence relating to Adam. However, the City's

response does not include any communications solely between Troy

representatives, which casts doubt that Troy affirmatively sought any records

beyond those in its immediate possession. Accordingly, the United States requests

that the Court compel Troy to take reasonable measures to obtain responsive

documents from any source within its "possession, custody, or control," or attest

that such documents do not exist following such affirmative search.

### B. Troy Failed to Identify What Documents Were Withheld and On What Basis

Troy objected to document production Request Nos. 11-12, 17-19, 21-24,

28, and 31 without specifying whether it withheld any documents on the basis of

these objections. *See* Exhibits A-C. Under Fed. R. Civ. P. 34(b)(2)(C), production

request responses must state whether responsive material is withheld as a result of

an objection. *Michigan Auto. Ins. Placement Facility*, 2019 WL 355654, at *2-3.

The United States requests that the Court compel Troy to specify whether Troy

withheld any documents on the basis of its objections.

### C. Troy Failed to Specify Responsive Documents

In response to Request Nos. 1-11, 13, and 14, Troy stated that it "believes

these documents have already been provided when Defendant provided Plaintiff

with the documents it provided to the Plaintiff in the lawsuit filed by Adam

Community Center." *See* Exhibit A. It made a similar claim with respect to

Request No. 28, *see* Exhibit B, and in its May 1, 2020 letter, *see* Exhibit F.

7

Notwithstanding this equivocation, to the extent that Troy's position is that documents previously produced in the Companion Case are responsive, the Court should compel Troy to identify those specific documents either by Bates number or otherwise. A vague and general assertion that Troy "believes" some responsive document have been provided previously outside the discovery process does not excuse Troy from submitting a response in compliance with the federal rules.

### D. Troy Provided Insufficient Support to Establish Excessive Burden of Production

Troy responded to Request Nos. 11, 12, 17, 18, 19, 22, 23, 24, and 28 with the claim that "providing all the information requested is unduly burdensome in light of the issues in this case and the likely benefit of the requested discovery to Plaintiff." *See* Exhibits A and B. Similarly, in response to Request Nos. 30, 32, 33, and 34, Troy claimed without further elaboration that "Planning staff was asked to locate the information but does not have the resources to do so and it would involve adding staff to manually locate the information, presuming it even exists." *See* Exhibit C. Troy reiterated this statement in its May 1, 2020 letter and extended it to all of its deficient responses. *See* Exhibit F. Troy did not provide affidavits or other documents or information evidencing the alleged burden.

Troy's excessive burden objection falls short in two significant ways. First, Troy's objection lacks any detail or explanation as to why conducting such a

search would be burdensome.[1] *See, e.g., Union Commercial Servs. Ltd. v. FCA Int'l Operations LLC*, No. 16-CV-10925, 2018 WL 558760, at *3 (E.D. Mich. Jan. 25, 2018) ("The mere fact that responding to a discovery request would involve producing a significant number of documents or would involve inconvenience and expense is, standing alone, not a sufficient showing of burdensomeness to garner protection from the Court.") (internal citations omitted).

Second, Troy's objection lacks any supporting evidence substantiating its purported burden. *See Shapiro*, 2019 WL 3326194, at *1 (*citing In re Heparin Products Liab. Litig.*, 273 F.R.D. 399, 410-11 (N.D. Ohio 2011)); *see also Strategic Mktg. & Research Team, Inc. v. Auto Data Sols., Inc.*, No. 2:15-CV-12695, 2017 WL 1196361, at *4 (E.D. Mich. Mar. 31, 2017) (*quoting Nolan, L.L.C. v. TDC Int'l Corp.*, No. CIV.A. 06-CV-14907, 2007 WL 2983633, at *4 (E.D. Mich. Oct. 11, 2007)) ("An objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence."). Troy's vague and unsupported objection based on the burden of production should

---

[1] Troy's description of the difficulty amassing documents is additionally suspect. For example, Request No. 30 – one of the requests that Troy asserted it had difficulty responding to – seeks complaints about specific secular use categories. The United States separately requested, and Troy provided, complaints for places of worship in Request No. 26. Troy's ability to provide the requested documents for one use category undermines its assertion that it is too difficult to provide the same records for other categories, particularly where the produced documents appear to come from a database.

therefore be rejected. Additionally, as described in Section III.F, *infra*, and considering those factors established in Fed. R. Civ. P. 26(b)(1), the benefit of the United States' discovery outweighs the burden of its production. *See e.g., Union Commercial Servs. Ltd.*, 2018 WL 558760, at *4 (compelling production of documents against objection based on expense and time required for production in light of documents' importance to case).

### E. The United States is Presumptively Entitled to Responses to Requests for Which Troy Did Not Object

Failure to timely object to document requests constitutes waiver of any objection. *Caldwell v. 9173-7999 Quebec, Inc.*, No. 18-CV-12752, 2019 WL 6907349, at *1 (E.D. Mich. Dec. 19, 2019), *reconsideration denied*, No. 18-CV-12752, 2020 WL 428356 (E.D. Mich. Jan. 28, 2020) (citing cases). As described below, Troy failed to satisfy its obligation to produce documents responsive to Requests Nos. 10, 15, 16, 25, 27, and 29 without claiming any objections. The United States requests that the Court compel Troy to respond to Requests Nos. 10, 15, 16, 25, 27, and 29 consistent with Troy's obligation to provide records beyond those in its immediate possession, *see* Section III.A, *supra*.

### 1. <u>Request No. 10</u>

Request No. 10 seeks email correspondence related to Troy's consideration of Adam's variance. In response, Troy stated its belief that it provided all responsive documents through its production in the Companion Case. As described

in III.F.1, *infra*, the United States has reason to believe that Troy failed to fulfil its obligation to produce documents beyond those in its immediate possession. *See* III.A.

### 2. Request No. 15

Request No. 15 seeks "Global Information System data populating the Interactive Zoning Map available at" a specific URL. In response, Troy produced a single PDF of a zoning map. Troy did not produce the underlying GIS data populating its Interactive Zoning Map. Troy's response is therefore incomplete.

### 3. Request No. 16

Request No. 16 seeks production of "[a]ny land use regulations in effect in the City dating back to when Troy first implemented use-specific setback requirements for religious institutions." The Requests define "land use regulation" as "a zoning or landmarking law, including, but not limited to, the Troy Zoning Ordinance and Troy Master Plan, or the application of such a law, that limits or restricts the use or development of land (including a structure affixed to land)." In response, Troy provided annotated documents in six parts.[2] Troy described these documents as the contents of "a [Planning Department] file labelled PROPOSED ZOTA #15 'CHURCH DEVELOPMENT STANDARDS.'"

---

[2] File names for two parts suggest that they respond to Request No. 15; however, they appear to be mis-labeled based on incongruity between the Request (for GIS data) and the file contents, which bear "Chapter 39 – Zoning" on most pages.

Troy's response does not include all Zoning Ordinance, Master Plan, or other documents reflecting restrictions on the use or development of land during the requested period, including those that first reflect any change specific to Troy's treatment of religious institutions. Troy's response is therefore incomplete.

### 4. **Request No. 25**

Request No. 25 seeks all public documents related to a September 1987 legal challenge to the City's setback provision by a proposed church, which the City referenced in its October 12, 2018 letter to the United States. ("In September 1987, the City prevailed against a legal challenge to the residential zoning setback provisions for a proposed church on Hartland.") Troy did not produce any documents responsive to this Request and instead stated: "The City does not have a file related to the referenced 1987 legal challenge. A reference to the challenge is included in a document already provided to Plaintiff – TROY 000271." The United States believes this response was made without Troy fulfilling its obligation to produce documents beyond those in its immediate possession, and is therefore incomplete. *See* III.A. Nor has Troy provided the United States with information sufficient to find public records related to the lawsuit, including its name, its case number, the date it was initiated, and the court in which it was initiated.

5. **Request No. 27**

Request No. 27 seeks documents pertaining to the City's consideration under Zoning Ordinance Section 14.06 of any change of tenancy, ownership, or management of a nonconforming land, structure, or premises, from April 18, 2011 to the present, resulting in a change to specified use types. Troy did not produce any responsive documents and instead stated: "Defendant is not aware of any documents that are responsive to this request."

This response is clearly incomplete as, at the very least, it would have elicited documents about the non-conforming structure at issue in this lawsuit—the building located at 3635 Rochester Road, which used to be a retail store (DSW shoe warehouse) and is now a restaurant/banquet hall. Moreover, if Troy keeps *any* records related to changes under Zoning Ordinance Section 14.06, which is reasonable to presume that a municipality would, those records necessarily would include documents responsive to this Request as well. Thus, the United States requests that the Court compel Troy to supplement its response with any and all documents related to Zoning Ordinance Section 14.06, including documents that exhibit how Troy decides, implements, enforces, and keeps records related to Zoning Ordinance Section 14.06. If Troy lacks such records, the United States requests that the Court compel Troy to confirm that Troy does not record or keep records related to Zoning Ordinance Section 14.06.

13

6. **<u>Request No. 29</u>**

Request No. 29 seeks all documents pertaining to the Zoning Board of Appeals', Planning Commission's, or City Council's consideration of 10 addresses from 2005 to the present. Troy produced documents with file names reflecting all but two of the specified addresses: 125 E. Big Beaver Rd. and 1659 Rochester Rd. The United States requests that Troy be compelled to produce information on the remaining two addresses.

## F. The United States' Discovery Requests are Narrowly Tailored to Seek Information Relevant to its Claims

Troy used the following boilerplate language to object to Request Nos. 11, 12, 17, 18, 19, 22, 23, 24, and 28: "Defendant objects to this request pursuant to Federal Rule of Civil Procedure 26(b)(1), on the basis that most of the information requested is not relevant or calculated to lead to the discovery of admissible evidence." *See* Exhibits A and B. It repeated this refrain with additional detail for each objection in response to Request Nos. 30, 32, 33, and 34. *See* Exhibit C. These objections to relevancy, however, lack merit and should be rejected as based on an outdated version of the federal rules, *see Shapiro*, 2019 WL 3326194, at *1 (citing cases); *see also* Fed. R. Civ. P. 26, Notes of Advisory Committee ("The former provision for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence' is also deleted.").

14

RLUIPA equal terms claims require a determination of whether "Defendants treat similarly situated comparative uses more favorably than mosques." *Adam Cmty. Ctr. v. City of Troy*, 381 F. Supp. 3d 887, 903 (E.D. Mich. 2019). And RLUIPA prohibits municipalities from applying land use regulations "in a manner that imposes a substantial burden on" religious exercise unless the municipality demonstrates that the burden "(A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest," 42 U.S.C. § 2000cc(a)(1), which includes an assessment of any purported interest's legitimacy. *See, e.g., Grace Church of N. Cty. v. City of San Diego*, 555 F. Supp. 2d 1126, 1140-41 (S.D. Cal. 2008) (*citing Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 547 (1993)) ("One way to evaluate a claim of compelling interest is to consider whether in the past the governmental actor has consistently and vigorously protected that interest."). As detailed below, documents related to these inquiries are necessarily relevant to the United States' claims. *See* Section II, *supra*. The United States therefore requests that the Court compel Troy to respond to each request outlined below consistent with the United States' Deficiency Letters, s*ee* Exhibits D and E, and Troy's obligation to provide records beyond those in its immediate possession, *see* Section III.A, *supra*.

1. **Request Nos. 10-12**

Request Nos. 10,[3] 11, and 12 seek Troy's correspondence about Adam and Islam at the time Troy evaluated applications by Adam. *See* Exhibit A. The Requests specifically instruct Troy to use keyword search criteria or analytical tools to assist with identifying responsive correspondence consistent with the Parties' Second Amended Joint Stipulation Regarding Case Management and Discovery § V.D.1 (ECF No. 24). In its response to Request Nos. 10 and 11, Troy indicated that it "believe[d]" that all responsive documents were provided "with the documents it provided to the Plaintiff in the lawsuit filed by Adam Community Center." Troy did not produce any documents responsive to Request No. 12.

As mentioned earlier, the paucity of correspondence provided by Troy in the Companion Case, which do not include any communications solely between Troy representatives, casts doubt that Troy fulfilled its obligation to provide records beyond those in its immediate possession, *see* Section III.A, *supra*.

The requested correspondence is relevant to whether Troy imposed a substantial burden on Adam, treated Adam on less than equal terms than nonreligious assembly uses, or otherwise harbored animus against Muslim individuals. The requested correspondence goes directly to Troy's treatment of

---

[3] The United States includes Request No. 10 in this description despite Troy's lack of objection due to the similar, specific relief it seeks from the Court.

Adam, including the sincerity of Troy's reasons for denying Adam's variance application. Many documents sought through Request Nos. 10, 11, and 12, especially those exclusively between the Troy representatives who made decisions on behalf of Troy through its governing bodies (e.g., Zoning Board of Appeals, Planning Commission, City Council, etc.), are in Troy's sole possession and so the United States would have no other way to obtain them other than from Troy

## 2. **Request Nos. 17-19**

Request Nos. 17, 18, and 19 seek information about Troy's land use regulations pertaining to the United States' claims, including internal correspondence, memorandum, drafts, and reports, and other documents considered in implementing those regulations. *See* Exhibit A. Troy did not produce any documents for Request Nos. 17, 18, or 19, and instead simply referred the United States to the Master Plan on Troy's website, a document that plainly falls short as a response to the United States' requests.

The information requested in Request Nos. 17, 18, and 19 is relevant to explain how and why Troy imposes different land use regulations on religious assemblies as compared to secular assemblies. It is also relevant to the legitimacy of Troy's imposition of regulations on Adam as compared to its rationale for adopting the regulations in the first place, which factors into how and why Troy imposed a substantial burden on Adam and treated Adam on less than equal terms

than secular assembly uses. Many of documents sought through Request Nos. 17, 18, and 19 relate to internal documents in Troy's sole possession and so the United States would have no other way to obtain them other than from Troy.

### 3. Request Nos. 22-24

Request Nos. 22, 23, and 24 generally seek documents pertaining to specific applications made under provisions of Troy's Zoning Ordinance that relate to the United States' claims. *See* Exhibit A. Troy objected to Request Nos. 22, 23, and 24 without providing any responsive documents.

Information sought through Request Nos. 22, 23, and 24 is relevant as it is tailored towards identifying comparators, evaluating the City's rationale for its decisions related to the identified provisions, and determining procedural differences between Adam and others' experience with the City.

### 4. Request No. 28

Request No. 28 seeks all documents received by or created by the City pertaining to 3635 Rochester Road. *See* Exhibit B. In response, Troy objected using its boilerplate language, and stated: "Without waiving the objection, Defendant notes it has already provided Plaintiff with all documents related to Adam's request for a variance for the property at 3635 Rochester Road." *See id*.

This response is incomplete because in addition to documents related to Adam's variance request, Request No. 28 necessarily includes communications

between the City and all actual or prospective tenants of 3635 Rochester Road, as well as any applications (e.g., pertaining to nonconforming status, permits, variances, parking, use, occupancy, traffic, etc.) made to the City, as well as the City's responses.

Documents responsive to this Request are relevant to the United States' substantial burden and as applied equal terms claims. The property at 3635 Rochester Road is a nonconforming structure, and Adam sought a variance that required consideration of its physical properties. Documents exhibiting Troy's interactions with past applicants and tenants about 3635 Rochester Road directly bear on its variance decision for Adam. Many of these documents are likely in the City's sole possession.

### 5. **Request Nos. 30, 32-33**

Request Nos. 30, 32, and 33 seek documents related to specific secular assembly use categories and addresses. *See* Exhibit C. Troy objected to Request Nos. 30, 32, and 33 as overly broad and not relevant because "none of the establishments are similarly situated to places of worship." Troy did not produce documents responsive to these requests.

Documents responsive to Request No. 30 are relevant to evaluate the legitimacy of the City's reasons for treating religious assembly places on different terms than nonreligious assembly places. Documents responsive to Request No. 32

are relevant to evaluate whether and to what extent Troy treated Adam differently than secular assembly places, including by applicants who received exceptions through processes other than ZBA meetings. And documents responsive to Request No. 33 are relevant to evaluate Troy's treatment of religious assemblies as compared to secular assemblies, which is particularly important considering Troy's inconsistent representations with respect to whether a secular assembly place would have needed a variance to use Adam's property, which underlies the United States' as applied equal terms claim.

The United States tailored its requests to categories, and addresses of nonreligious assembly places within those categories, that it asserts are treated better than religious assembly places. Though Troy may dispute whether these categories and specific businesses are similarly situated to religious assembly places to support the United States' claim, it cannot withhold factual information sought through discovery about such places. Information related to this dispute is relevant to the United States' equal terms claims, and Troy's disagreement on this point, on which a decision ultimately resides in the Court, is not a basis to deny the United States access to documents. *See, e.g.*, *Strategic Mktg. & Research Team, Inc.*, 2017 WL 1196361, at *3 (agreeing that "If the Court were to allow a defendant to withhold discovery simply because it disagrees with the factual basis of a claim … it is doubtful any defendant would ever make a production of

20

documents.") (internal citations omitted); *see also Varga*, 242 F.3d at 697; *Shapiro*, 2019 WL 3326194, at *1.

### 6. __Request No. 31__

Request No. 31 seeks all documents related to Troy's Zoning Board of Appeals, Planning Commission, and City Council's consideration of Woodside Bible Church. *See* Exhibit C. In response, Troy referred the United States to documents from the June 2, 2003 City Council meeting available on its website and objected that the information sought is not relevant because "6600 Rochester Road is located in a Planned Unit Development was approved [sic] that was approved based on procedures completely different than the procedures involved with the approvals sought for the property which is the subject of this cause of action." Troy did not produce any documents in response to Request No. 31.

Documents related to Troy's consideration of Woodside Bible Church are relevant to the United States' substantial burden and as applied equal terms claims. And while Troy pointed out that some, but not all, documents related to its consideration of Woodside Bible Church are publicly available through its website, it did not produce any requested documents not in the public record, which are sought through Request Nos. 31(b) ("Documents from staff and non-public meetings"), 31(c) ("Staff reports and drafts of reports related to the consideration"), and 31(d) ("City emails discussing the consideration"). *See*

Exhibit C. Troy granted Woodside Bible Church permission to build without abiding by setback and parking restrictions specific to places of worship. The above-referenced City-created documents sought through Request No. 31 are relevant and important to evaluate the legitimacy of Troy's purported interests in denying Adam's variance application. *See, e.g., Grace Church of N. Cty.*, 555 F. Supp. 2d at 1140-41. Again, the fact that Troy may dispute whether Woodside Bible Church is comparable to Adam does not allow it to withhold requested documents.

### 7. <u>Request No. 34</u>

Request No. 34 seeks documents related to setback exceptions, parking exceptions, and nonconforming structure changes for addresses of specific religious assemblies within Troy. Those addresses are for religious assemblies not reflected in Troy – 000224, which includes religious places that existed in April 2000. As it did in response to Request Nos. 30, 32, and 33, Troy simply asserts that Request No. 34 is not relevant because "none of the establishments are similarly situated to places of worship."

Troy's objection is nonsensical because each listed address *is* a place of worship. Moreover, documents regarding Troy's treatment of religious assemblies seeking relief similar to that sought by Adam are relevant to evaluate the legitimacy of Troy's denial of Adam's variance application. The United States has

sought this information from Troy in earlier requests to which Troy did not produce responsive documents. *See, e.g.,* Request No. 23. Through Request No. 34, the United States attempted to narrow its earlier requests to those properties less likely to be nonconforming structures. Request No. 34 is additionally limited to those Zoning Ordinance provisions at issue in this case.

### G. Troy's Objection that the United States Issued its Discovery to Annoy, Oppress, and Harass Lacks Merit

In response to Request Nos. 30, 32, 33, and 34 Troy accused the United States of acting with "the purpose of annoying, oppressing and harassing Defendant" because it had already "produced numerous documents in response to previous discovery requests…." *See* Exhibit C. This is simply incorrect. Even if Troy had provided sufficient responses to earlier discovery requests, which the United States disputes, prior responses have no bearing on the United States' ability or right to seek additional discovery consistent with the Federal Rules of Civil Procedure. And to the extent any request seeks information previously sought in an earlier request, the United States did so to more narrowly request data and included a disclaimer to provide only information not already produced. *See* Request Nos. 32-34 ("If responsive material was already provided in an earlier response, please indicate the Bates numbers that pertain to each address."). Each of the United States' requests properly seeks information in Troy's possession,

custody, or control; were not already produced by Troy in response to another request; and directly bear on the United States' claims against Troy.

## IV.    Conclusion

Accordingly, the United States respectfully moves this Court for an Order compelling Troy to promptly and fully remedy the deficiencies in its responses to the United States' Requests for Production.

Respectfully Submitted,

**For Plaintiff the United States:**

MATTHEW SCHNEIDER
United States Attorney
Eastern District of Michigan

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief

*/s/ Susan DeClercq*
SUSAN K. DECLERCQ
(P60545)
Assistant United States Attorney
Chief, Civil Rights Unit
SHANNON M. ACKENHAUSEN
(P83190)
Assistant United States Attorney
United States Attorney's Office
Eastern District of Michigan
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Phone: (313) 226-9730
Facsimile: (313) 226-3271
Susan.DeClercq@usdoj.gov

*/s/ Abigail Marshak*
TIMOTHY J. MORAN
Deputy Chief
ABIGAIL B. MARSHAK
(NY 5350053)
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
United States Department of Justice
4 Constitution Square / 150 M Street NE
Washington, DC 20530
Phone: (202) 514-1968
Facsimile: (202) 514-1116
Abigail.Marshak@usdoj.gov

Shannon.Ackenhausen@usdoj.gov

Dated: May 26, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 26, 2020, I electronically filed the foregoing document, United States' Motion to Compel Discovery, with the Clerk of Court using the ECF system, which will send notification of such filing to counsel of record for all parties.

*/s/ Abigail B. Marshak*
ABIGAIL B. MARSHAK (NY 5350053)
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
United States Department of Justice
4 Constitution Square
150 M Street NE
Washington, DC 20530
Phone: (202) 514-1968
Facsimile: (202) 514-1116
Abigail.Marshak@usdoj.gov