UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADAM COMMUNITY CENTER,
                    Plaintiff,            Civil Action No. 18-13481
v                                         District Judge Nancy G. Edmunds

CITY OF TROY, *et al*,
                    Defendants.

And

UNITED STATES OF AMERICA
                    Plaintiff,            Civil Action No. 19-12736
v                                         District Judge Nancy G. Edmunds

CITY OF TROY,
                    Defendant.
_____/

## DEFENDANTS MOTION FOR SUMMARY JUDGMENT; BRIEF IN SUPPORT OF MOTION

## MOTION FOR SUMMARY JUDGMENT

Defendants City of Troy, Troy City Council, Troy Planning Commission, and Troy Zoning Board of Appeals (hereafter all Defendants are collectively referred to as Troy or City) moves pursuant to Fed R Civ P 56(a) for summary judgment in its favor in both of the above cases for the following reasons:

- Plaintiffs United States of America's (hereafter United States) and

    Adam Community Center's (hereafter Adam) RLUIPA claims brought

under 42 U.S.C. § 2000cc(a)(1) should be dismissed because there is no evidence Defendant imposed or implemented a land use regulation that imposed a substantial burden on Adam's exercise of religion.

- Plaintiffs United States and Adam's RLUIPA claims brought under 42 U.S.C. § 2000cc(b)(1) should be dismissed because there is no evidence Defendant imposed or implemented a land use regulation that treated a religious institution on less favorable terms than a similarly situated nonreligious institution.

- Plaintiff Adam's RLUIPA claims brought under 42 U.S.C. § 2000cc(b)(2) and 42 U.S.C. § 2000cc(b)(3) should be dismissed because there is no evidence Troy discriminated against Adam on the basis of religion or that Troy imposed a land use regulation that unreasonably limited religious assemblies, institutions, or structures.

- All of Plaintiff Adam's claims brought under 42 U.S.C. § 1983 should be dismissed on the basis there is no evidence of any underlying constitutional violations committed by Troy.

Counsel for Defendant had a conference with counsel for Adam on December 21, 2020 and a conference with counsel for the United States on

December 21, 2020, and explained the nature of this motion and its legal

basis and requested but did not obtain concurrence in the relief sought.

Dated: December 23, 2020                    s/Allan T. Motzny
                                            Lori Grigg Bluhm (P46908)
                                            Allan T. Motzny (P37580)
                                            500 W. Big Beaver Road
                                            Troy, MI 48084
                                            (248) 524-3320
                                            motznyat@troymi.gov


## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## STATEMENT OF ISSUES PRESENTED

The issues presented in this case are:

1) Whether Plaintiffs have sufficient evidence to prove Troy imposed

or implemented a land use regulation that imposed a substantial burden on

Adam's exercise of religion.

2) Whether Plaintiffs can establish that Troy imposed or implemented

a land use regulation that treated a religious institution on less favorable

terms than a similarly situated nonreligious institution.

3) Whether Plaintiffs can prove its allegations that Troy discriminated

against Adam on the basis of religion or imposed a land use regulation that

unreasonably limited religious assemblies, institutions, or structures.

4) Whether all of Plaintiff Adam's claims brought under 42 U.S.C. § 1983 should be dismissed on the basis there is no evidence of any underlying constitutional violations.

## STATEMENT OF MOST CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT

- The most appropriate authority for Issue 1 is *Livingston Christian Schools v Genoa Charter Township,* 858 F3d 996 (CA 6, 2017).

- The most controlling or appropriate authority for Issue 2 is *Tree of Life Christian Schools v City of Upper Arlington,* 905 F3d 357 (CA 6, 2018).

- The most controlling or appropriate authorities for Issue 3 are 42 U.S.C. § 2000cc(b)(2) and 42 U.S.C. § 2000cc(b)(3).

- The most controlling or appropriate authority for Issue 4 is *Napier v Madison County, KY,* 238 F3d 739, 743 (CA 6, 2001).

## INTRODUCTION

Plaintiffs Adam and the United States have filed complaints against Troy alleging violations of the Religious Land Use and Institutionalized Person Act, 42 USC §§ 2000cc – 2000cc-5 (RLUIPA). Adam's complaint also includes claims filed under 42 U.S.C. §1983 alleging various violations of the United States Constitution.  Both complaints seek injunctive and declaratory relief, while Adam also seeks money damages. In addition to the City, Adam's

complaint listed the Troy City Council, Planning Commission and Zoning Board of Appeals (ZBA) and some individual ZBA members as defendants. Adam's claims against the individual defendants and one of its counts based on state law have been dismissed.

Count I in both of Plaintiffs' complaints is based on RLUIPA's substantial burden provision - 42 U.S.C. § 2000cc(a)(1) – where Plaintiffs allege Troy imposed or implemented a land use regulation that substantially burdened Adam's religious exercise. Adam Compl, par 71, Apx p 18, USA Compl, par 77, Apx  p 19.  Count III of Adam's and Count II of the United States complaints allege violations of RLUIPA's equal terms provision - 42 U.S.C. § 2000cc(b)(1) – contending that Troy's zoning ordinance is a land use regulation that treats religious assemblies or institutions on less than equal terms with nonreligious assemblies  or institutions. Adam Compl, par 73, Apx p 19, USA Compl, par 79, Apx  p 69.  Counts II and IV of Adam's complaint allege Troy violated RLUIPA's Nondiscrimination and Exclusion and Limits provisions - 42 U.S.C. § 2000cc(b)(2) and (3).  Adam Compl par 72 and 74, Apx p 19.  Counts V – X of Adam's complaint allege a 42 U.S.C. Section 1983 claim and assert violations of the 1st, 5th, and 14th Amendments. Adam Compl par 115-156, Apx pp 27 -34.  The two cases were consolidated for discovery and pretrial purposes.  These cases both stem from Adam's request to

convert an existing building, located at 3635 Rochester Road in the City of Troy into a mosque, community center, library, gymnasium, and banquet hall. Under Troy's zoning ordinance, Chapter 39, Section 6.21, the existing building does not meet the setback and parking requirements for the intended uses, including a house of worship.  Adam then applied to Troy's ZBA, requesting several variances, one of which was for the entire 50-foot setback. After a public hearing, the ZBA unanimously denied Adam's requested variances, articulating that Adam had not satisfied the requisite burden of proof.

In these lawsuits, both Plaintiffs claim the ZBA's denial of the variances violate RLUIPA because it imposed an unjustified substantial burden on Adam's exercise of religion. Adam, Compl, par 71, Apx   p 18, USA Compl, par 3, Apx p 40.  They also claim Section 6.21 of Troy's zoning ordinance, imposing 50-foot setbacks for places of worship, violates RLUIPA because nonreligious places of assembly do not share the same setback and parking requirements. Adam Compl par 48, 68, 101, Apx pp 10,17,24,USA Compl, par 3, Apx p 40.  Both Plaintiffs also contend the City treated Adam on less favorable terms than similarly situated nonreligious places of assembly and institutions when it denied Adam's multiple variance requests. Adam Compl par 73, Apx p 19,  USA Compl,  par 54, Apx p 57.  Adam's remaining claims

under RLUIPA's nondiscrimination and exclusions and limits provisions and its constitutional claims are based on the same alleged facts as its other claims.

## STATEMENT OF FACTS

The City of Troy's zoning ordinance was adopted in accordance with the Michigan Zoning Enabling Act (MZEA), MCL 125.3102 *et seq.,* to promote and safeguard the public health and safety and the welfare of all members of the community.  A fuller explanation of the purpose of the zoning ordinance is set forth in Sections 1.02 and 1.03 of the current zoning ordinance. Apx pp75-76.[1] The zoning ordinance, as required, is based on the City's Master Plan. MCL 125.3203. The zoning ordinance and each amendment is the product of the Troy Planning Commission, and is based on input from planning experts and members of the public.  MCL 125.3211, MCL 125.3301, MCL 125.3303. Before recommending a zoning ordinance or any amendment to the City Council for adoption, the Planning Commission is required to have at least one public hearing, and must transmit a summary of all comments from the hearing to the Troy City Council prior to its action.   MCL 125.3307, MCL 125.3308.  As allowed by MCL 125.3401, the Troy City Council conducts an additional public hearing before enacting a zoning ordinance or any

---

[1] The current ordinance was adopted April 11, 2011.  Although there have been minor amendments since that date, such amendments are not applicable to any issues in this case.

7

amendment thereto.  A brief summary and discussion detailing the events leading to the adoption of Troy's current zoning ordinance as well as the reasoning for the provisions related to places of worship is set forth in the City's expert report.[2] Carlisle Rep, pp 1 – 4, Apx, pp 104-107.

As with most local communities, Troy has established numerous zoning districts.  For each district, the ordinance states whether a particular use is permitted as of right or as a special land use.  A land use is designated as a special land use in the zoning ordinance when the use may have negative impacts on surrounding property, and it provides additional protective measures, and allows proactive conditions to be imposed.   ICLE, *Michigan Zoning and Planning,* April 2009 Update, p 106.  Under Troy's zoning ordinance, places of worship are permitted either as of right or as a special use in all zoning districts except for EP Environmental Protection, PV Planned Vehicle Sales, and Parking.  A copy of Section 4.21 of the zoning ordinance designating the uses permitted in each district is set forth in Apx pp 81-84. Thus, places of worship are allowed in approximately 97% of the land area in the City of Troy.  Carlisle Rep, p 3, Apx p 106.

---

[2] The City's expert report indicates it was prepared by Richard Carlisle. Due to health issues, Richard Carlisle is unable to serve as the City's expert.  Instead, Benjamin Carlisle, who prepared the report along with Richard Carlisle (See Carlisle TR pp 51, 53 , Apx pp 118-119) will be the person who testifies as the City's expert at trial.

Article 6 of the zoning ordinance details specific use standards that are applicable to particular uses, which are designed to minimize negative impact(s) such uses may have on surrounding property.  Any of the specific use standards prevail over the general standards for a particular use.  Places of worship are subject to specific use standards. The specific use provisions applicable to a place of worship relate to parking and setbacks and are set forth in Section 6.21 of the zoning ordinance.  Apx  pp 86-87.  Section 6.21 provides that any structure must be at least 50 feet from the front, side, and rear property lines, and prohibits parking in these setbacks if they are adjacent to public streets or residentially zoned land.

As noted in paragraphs 6 and 7 of the affidavit of Brent Savidant, the City's Community Development Director, places of worship present unique potential negative impacts on a community, especially since places of worship tend to have scheduled services that involve a significant influx and exodus of people over a short period of time.   Apx pp 138-139. Additionally, places of worship tend to have other events that can generate a significant number of visitors (weddings, funerals, graduation parties, religious festivals, etc.) at different times of the day and night, even extending late into the evening.  The secondary impacts of these events have a negative impact on abutting properties, including but not limited to car alarms, crowd noise, headlight

glare, loud music. Unlike other types of uses, places of worship tend to have large volumes of traffic and need ample parking in a short period of time on a regular basis, which may result in traffic backups on local roads and public health, safety, and economic concerns that generally do not occur in other types of uses.   These factors were reiterated by Mr. Savidant during his deposition where he explained the parking and setback provisions for places of worship are justified based on the City's experience and knowledge of significant negative impacts in the City – which have not occurred with other places of assembly.  Savidant Tr, pp 15, 57-58, 60-61, 63, 65-66, 163-164, 173-174, 211, 213, Apx pp 147,149,150-158, 161,163.  Troy's City Manager Mark Miller also explained the rationale for imposing setbacks and parking restrictions on places of worship that differ from those imposed on other places of assembly and institutions.   Mr. Miller, a certified planner who has been with the City for 20 years, and previously served as the City Planning Director testified in his deposition that in Troy's experience places of worship have caused significant traffic and noise issues that detrimentally impacted neighboring residential properties. Miller Tr, pp 10, 20, 33-34, 92, 93, 122-123, Apx pp 166-173.  The City's planning consultant and expert witness gave additional reasons in his deposition and expert report for the different setback and parking regulations for places of worship, due to the unique nature of the

use.  Carlisle Tr, pp 111, 113-114, 140-141, 156, 165,167, 351-352, Apx  pp

120,122,123,124,125,126,128,129,132,133.  According to Mr. Carlisle, there

is a need to provide adequate spacing between parking areas that generate

noise, light, and exhaust fumes during concentrated peak periods of time, and

to give drivers adequate distance between a busy thoroughfare and the point

at which parking can be accessed.  Carlisle Rep, p 4, Apx p 107.  As noted in

Carlisle's report and reiterated by Mr. Savidant at his deposition, places of

worship, unlike other places of assembly and institutions, tend to involve an

extensive number of ancillary types of uses such as day cares, schools, social

halls, athletic facilities, shelters, etc.  Savidant Tr, p 63, Apx p153, Carlisle

Rep, p 4, Apx p 107. In fact, as noted in its application for a variance, Adam

had proposed to use the subject property for several ancillary uses, including

a library, gymnasium, recreation for youths, conference center, counseling

and a banquet hall.  Carlisle Rep, p 4, Apx p 107.

The 50-foot setback and parking restrictions for places of worship have

been in place for several years prior to the 2011 amendment to the zoning

ordinance. Carlisle Rep, pp 1-2, Apx pp 104,105, Savidant Tr, 37, Apx p 148.

As explained by Mr. Savidant at his deposition, those provisions had worked

well for the City so they were carried over when the City did its major revision

of the zoning ordinance in 2011.

The subject property in this case – 3635 Rochester Road – is located in Troy's GB General Business District.  Places of worship are permitted as of right in the GB district subject only to the previously discussed setback provisions of Section 6.21. In addition to the provisions specifically applicable to places of worship, Sections 4.14C and D set forth the general setback provisions for uses in a GB district.  Apx pp 77-80.  Buildings must have a minimum 10-foot front yard setback, a 30-foot rear yard setback, and a total of 40 feet in side yard setbacks.  However, any yard adjacent to residentially zoned property must be at least 75 feet from the property line.  As a result, the place of worship 50 foot set back provisions of Section 6.21 are actually less restrictive than the 75-foot general setbacks for other uses in the GB district.

Although Plaintiffs imply in the complaints that the City has for several years thwarted Adam's efforts to establish a place of worship, there is no factual support for this implication.  The first time Plaintiff made a formal request for approval of a "place of worship" in the City occurred when it applied for the variances for the subject property at 3635 Rochester Road.  A copy of the application that was signed on April 23, 2018 by Dr. MD. Nurul Amin is included in Apx pp  174-204.  At his deposition, excerpts of the transcript of which are set forth in Apx pp 206-230, Dr. Amin testified he is the president of Adam Community Center.  Amin Tr p 7, lines 10-11, Apx p 208.

According to Dr. Amin, in 2013 Adam wanted to purchase a different property at 4924 Rochester Road to be used as a "community center" and not as a place of worship. Amin Tr p 25, lines 11-18, Apx p 210. Based on these representations by Dr. Amin, the City granted approval. However, subsequent to the approval, the City was provided a great deal of contradictory information, which suggested that Adam was actually planning to use the building as a place of worship. This was significant because the building did not meet the requirements of Section 6.21. Accordingly, the City sent Dr. Amin a letter dated October 28, 2013 indicating the City would submit this matter to a public hearing before the ZBA, as allowed by the ordinance, and would defer to the ZBA's determination as to whether Plaintiff's proposed use was a "place of worship." Amin Tr p 29, lines 8-22, Apx p 211. A copy of that letter is included in Apx pp 231 -233. The ZBA has authority to interpret the zoning ordinance pursuant to MCL 125.3603 and Section 15.04 D of the ordinance. Apx pp 93-94.

The ZBA held a public hearing on January 21, 2014, where it reviewed relevant information and took comments from members of the public, including Dr. Amin and an attorney representing Adam. Amin Tr p 30, line 20 – p 31, line 15, Apx pp 212-213. At the conclusion of the hearing, the ZBA determined the proposed use of the property at 4924 Rochester Road was a

place of worship.  Amin Tr p 32, lines 4-7, Apx p 214.  A copy of the minutes

for the January 21, 2014 ZBA meeting is included in Apx pp 234-237.  Since

the building did not meet the requirements of Section 6.21, Adam would have

needed a variance to use it as a place of worship.  Although Dr. Amin claims

Adam applied for such a variance, the private property owner sold the

restaurant to another party and the ZBA never heard a request for a variance

for that property.   Amin Tr p 33, lines 17-25, Apx p 215.

According to Dr. Amin, Adam continued to search for properties that

could be used as a place of worship. Amin Tr p 34, lines 13-25, Apx p216. As

of at least 2013, Dr. Amin was aware of the zoning requirements for places of

worship. Amin Tr p 35, lines 18-21, Apx p 217.  In 2017, Adam attempted to

acquire a residential parcel on Long Lake Road that would have satisfied the

special use approval requirements for a place of worship if Adam also

acquired two adjacent residential parcels.  Amin Tr p 35, line 22 – p 37, line

12, Apx pp 217-219.  However, Dr. Amin reports that Adam was unable to

complete the necessary property assemblage, because the price to buy the

two adjacent parcels was too high. Amin Tr p 37, line 18 – p 38, line 9, Apx pp

219-220.  Dr. Amin also testified that Adam attempted to purchase property

from an existing place of worship located on Coolidge Highway that complied

with the zoning requirements. Amin Tr p 48, line 21 – p 49, line 14, Apx pp

221-222.  However, the property was sold to another church before Adam

could complete the transaction.  Amin Tr p 50, lines 14-21, Apx p 223.

Although Dr. Amin implies that there was some discriminatory motive that

resulted in the Coolidge property being sold to another church rather than

Adam, this was a private sale, and City of Troy representatives were not

involved with this private transaction. Amin Tr p 50, line 24 – p 51, line 18, Apx

pp 223-224.

Plaintiff's expert Alan Weinstein relies on his review of Dr. Amin's

deposition and his discussion with Adam member Mahmoud Syed to conclude

that Adam attempted to purchase at least five properties for a place of worship

in Troy.  Weinstein Rep, pp 10-11, Apx pp 248-249.  The first property listed in

Weinstein's report is 301 Square Lake Road, where Weinstein notes that the

setback provisions placed significant restraints on developing the property,

and Adam declined to purchase it.  Weinstein Rep, p 10, Apx p 248.

However, as stated in paragraph 9 of the affidavit of Brent Savidant, this

residentially zoned parcel could never be suited for a place of worship

because it was only large enough to accommodate a single-family home. Apx

pp 139-140.

Weinstein also submits that 6191 John R. Road was investigated, but

not viable for Adam to purchase because of wetlands on the property.

Weinstein Rep, p 10, Apx p 248.  However, as noted in paragraph 9 of Savidant's affidavit, Troy's setback and parking provisions did not preclude development of the parcel for a place of worship.  Apx pp 139-140.  Adam could have pursued a permit that would have allowed construction that impacted the wetlands.  MCL 324.30304, MCL 320.30306.

According to Weinstein, Adam did not pursue the purchase of property at 900 W. Maple because Adam's members thought it was too distant from the center of Troy.  Weinstein Rep, p 10, Apx  p 248.  In paragraph 9 of his affidavit, Savidant explains that members of the Planning Department had actually met with different organizations to discuss the use of this parcel for a place of worship and that the Planning Department even prepared a sketch demonstrating the parcel could be used as a place of worship and meet the setback and parking regulations in the zoning ordinance.  Apx pp 138-139. Thus, the City's setback and parking restrictions did not prevent Adam's acquisition of this viable parcel in the City of Troy.  Contrary to Weinstein's conclusions in his report, this is also true for the other City options allegedly investigated by Adam, as set forth above.  Weinstein Rep, pp 10 – 11, Apx pp 138-139.

On April 25, 2017, Dr. Amin sent an email to Brent Savidant with a list of five properties, inquiring whether they could be used as a place of worship.

Amin Tr p 51, line 23 – p 52, line 5, Apx pp 224-225. A copy of that email is set forth in Apx pp 276 - 278. Mr. Savidant suggested Adam hire a real estate broker instead, since the City's Planning Department did not have access to real estate listings, and the City was not able to vet the suitability of proposed parcels for Adam's or any other proposed purchaser's use of a parcel.

In April of 2018, Adam entered into a purchase agreement for the subject property at 3635 Rochester Road. Amin Tr p 76, line12 – p 77, line 15. Apx pp 226-227. A copy of the agreement is set forth in Apx pp 279- 286. The building had been previously used for a number of uses including a shoe store, market, and a restaurant. Savidant, Tr p 253, Apx p 163. However, the building and its use were non-conforming because it did not comply with the setback provisions of the zoning ordinance for those uses. See par 10 of Savidant affidavit, Apx pp 279-280. Under Sections 14.03 and 14.04 of the zoning ordinance, non-conforming structures and uses that existed prior to the applicable zoning provisions may be continued. Apx pp 88-90. However, since it is the ultimate zoning goal to eliminate non-conforming uses and structures so that the community's revised health, safety, and welfare regulations are realized, any new use that results in an increase in the non-conformity is required to comply with the zoning ordinance. Savidant Tr, pp 203-204, Apx pp 159-160, Par 10 of Savidant Affidavit, Apx p 141. Since

Adam's proposed new use would increase the non-conformity, there would

need to be compliance with Troy's then existing setback and parking zoning

provisions. Par 10, Savidant Affidavit, Apx p 142.  Dr. Amin acknowledged that

Plaintiff was aware the building did not meet the setback requirements of

Section 6.21 and that a variance from the ZBA was needed if Adam wanted to

use the existing building as a place of worship. Amin Tr p 77, lines 16 - 21,

Apx p 227.  Additionally, based on costs, Dr. Amin acknowledged that Adam

did not even consider demolishing the existing building to construct a new one

on the same property that complied with the setbacks.  Amin Tr p 82, line 10 –

p 83, line 6, Apx pp 228-229.

Adam applied for dimensional variances from the provisions of Section

6.21 of the zoning ordinance.  As previously noted, a copy of the application

that was submitted in April 2018 is included in the Appendix. Apx pp 174-204.

The public hearing on the variance requests was scheduled for the next

available ZBA meeting, which was June 19, 2018. Under Section 15.04 E, and

in accordance with MCL 125.3604(7), the ZBA has the discretion to grant

dimensional variances, but only where "*a literal enforcement of the provisions

of this ordinance would involve practical difficulties within the meaning of this

article.*" To demonstrate a practical difficulty, the applicant has the burden of

proof, and must present substantial evidence to satisfy ALL five of the criteria

18

listed in Section 15.04. E. 2.  These are the same criteria applied to all

dimensional variance requests, regardless of the proposed use of the

property.   Additionally, under Section 15.04. E. 4, *"no variance shall be*

*granted where a different solution not requiring a variance would be possible."*

At the ZBA hearing on June 19, 2018, excerpts of the transcript of which

is included in the appendix, Apx pp 287-371, the City of Troy Zoning and

Compliance Specialist Paul Evans explained that Adam was seeking

variances from the requirement that the front, side, and rear setbacks for the

building must be a minimum of 50 feet.  ZBA Tr p 43, lines 14-18, Apx p 289.

Mr. Evans also noted Adam was seeking a variance from the requirement that

no parking be allowed in the 50-foot setback, and the requirement that the

setback area be maintained as open landscaped space.  ZBA Tr p 43, lines

19-25, Apx p 289.  Using a survey submitted by Adam, Mr. Evans explained

that "it's *very clear from the property conditions that significant portions of the*

*building and parking areas are located within that 50-foot setback."*  ZBA Tr p

43, line 25 – p 44, line 3, Apx pp 289-290.  Mr. Evans also noted that *"in order*

*to proceed to use this facility as a place of worship, they're going to need a*

*variance from the board on these three matters."* ZBA Tr p 44, lines 8-10, Apx

p 290.

At the ZBA hearing, Dr. Amin addressed the Board and indicated Adam's attorney would represent them. ZBA p Tr 45, lines 18 - 25, Apx p 292. Thereafter, Attorney Amy Doukoure made a presentation and answered questions from Board members. ZBA Tr pp 46 – 56, Apx pp 293-303. Before opening the public hearing as required by MCL 125.3604(4) and Section 15.05. A. 2, the chair of the ZBA, Glenn Clark discussed limiting public comment to three minutes per person. ZBA Tr pp 57 line 11 –p 58, line 15, Apx pp 304-305. Imposing such limits at public meetings is a common practice and authorized by Michigan's Open Meetings Act, MCL 15.263(5) and the established rules of procedure adopted by Troy's ZBA. See Article III of the ZBA Rules of Procedure, Apx pp 374-375. This limitation is generally imposed when it is evident that there may be a substantial number of people wishing to address the Board on a particular matter, and it is undisputed that there were a great number of persons in attendance at this particular public hearing. The Board then passed a motion to impose a three-minute rule. ZBA Tr p 60, lines 1-14, Apx p 306.

There were several people who addressed the Board during the public hearing. ZBA Tr pp 63-118, Apx pp 307-362. When it became apparent there was nobody else who wished to speak, ZBA Chair Clark closed the public hearing and brought the matter back to the Board for discussion and decision.

ZBA Tr p 118, lines 3-6, Apx p 362.  Most of the discussion was headed by

ZBA Chair Clark, but other ZBA members had some questions and/or

comments. In response to an inquiry by ZBA member Padma Kuppa, Troy

Assistant City Attorney Allan Motzny advised the Board that since the

applicant was seeking a dimensional variance, the Board was to apply the

practical difficulty standard that is applied to all nonuse variances.  ZBA Tr

127, lines 3-17, Apx p 363.  ZBA member David Eisenbacher pointed out that

the applicant was not seeking a tiny variance and that it was a 100% variance

on one side.  ZBA Tr p 131, line 9 – p 132, line 7, Apx pp 365-366.  ZBA

member James McCauley agreed with David Eisenbacher and pointed out

some safety concerns if the Board granted the variance.  ZBA Tr p 132, line 9

– p 133, line 8, Apx pp 365-366.  In response to another question from Padma

Kuppa, Paul Evans noted the applicant could potentially construct a new

building on the property that would comply with the ordinance and eliminate

the need to seek a variance from the ZBA.  Tr p 136, lines 14 – 24, Apx p 366.

Padma Kuppa also inquired about the applicability of RLUIPA and was

advised by Troy Assistant City Attorney Allan Motzny that the Board should

apply the standards applied to any dimensional variance request.  ZBA Tr p

137, lines 2 – 17, Apx p 367.  Paul Evans then pointed out in response to

another question from Padma Kuppa that if the building continued to be used

for its existing commercial purpose as a restaurant with significant storage space, a variance would not be needed, but since the applicant was seeking a new use, it had to meet the dimensional requirements specific to places of worship. ZBA Tr p 140, line 17 – p 141, line 4, Apx pp 368-369. ZBA Member Orestis Kaltsounis commented on traffic concerns he had with the property. ZBA Tr p 141, line 23 – p 142, line 10, Apx pp 369-370. At the conclusion of the discussion, ZBA member Daniel Agauas made a motion to deny the variances on the basis the applicant had not established the requisite practical difficulty and, that the request did not meet the intent, and pointing out a 100% variance on one side was too aggressive. ZBA Tr p 142, line 21- p 143, line 1, Apx pp 370-371. The motion was seconded by James McCauley, and the denial was passed on a 6 to 0 vote. ZBA Tr p 143, line 4, Apx p 371, ZBA Tr p 143, lines 7 – 22, Apx p 371.

## **STANDARD OF REVIEW**

Summary judgment is proper under Fed. R. Civ. Pro. Rule 56 if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." There is no issue for trial unless there is sufficient evidence, favoring the nonmoving party, to allow a jury verdict in favor of that party. *Anderson v Liberty Lobby Inc.,* 477 US 242; 106 S Ct 2505, 2512; 91 L Ed 2d 202 (1986). The mere existence of scintilla of

evidence in support of the Plaintiff's position is insufficient; there must be evidence from which the jury could reasonably find for the Plaintiff.  *Id.*

## **ARGUMENT**

### I.   PLAINTIFFS HAVE NO EVIDENCE TO PROVE TROY IMPOSED OR IMPLEMENTED A LAND USE REGULATION THAT IMPOSED A SUBSTANTIAL BURDEN ON ADAM'S EXERCISE OF RELIGION

A claimant under RLUIPA bears the burden of proving his or her religious exercise was substantially burdened. 42 USC § 2000cc-2(b), *Holt v Hobbs,* 574 US 352, 360; 135 S Ct 853; 190 L Ed 2d 747 (2015).  Whether a municipality's actions imposed a substantial burden under RLUIPA is a question of law for the Court to decide.  *Livingston Christian Schools v Genoa Charter Township,* 858 F3d 996, 1001 (CA 6, 2017).   As noted by the Court in *Livingston Christian Schools,* "…n*ot just any imposition on religious exercise will constitute a violation of RLUIPA." Id,* 1003.  *"Instead, a burden must have some degree of severity to be considered 'substantial." Id.*  A substantial burden is "*more than an inconvenience." Id,* citing *Midrash Sephardi, Inc. v Town of Surfside,* 366 F3d 1214, 1227 (CA 11, 2004).  One factor a court may consider in determining whether a substantial burden exist is whether a religious institution has a feasible alternative location from which it can carry on its mission.  *Livingston Christian Schools,* 1004, citing *Westchester Day Sch v Vill of Mamaroneck,* 504 F3d 338, 352 (CA 2, 2007).  Additionally,

several circuits have held when a plaintiff has imposed a burden on itself, the government cannot be liable for a RLUIPA substantial burden violation. *Livingston Christian Schools,* 1004.  *"Allowing a plaintiff to make out a substantial-burden claim where the plaintiff has burdened itself or in fact has easy access to suitable property in a neighboring jurisdiction is beyond the protection or RLUIPA." Id,* 1011. In cases involving a denial of a zoning variance, in order to establish a RLUIPA violation "*Plaintiff must show that the denial of the variance request "coerces" individuals into acting contrary to their religious beliefs. Great Lakes Society v. Georgetown Charter Township,* 281 Mich App 396, 424; 761 NW2d 371 (2008), quoting from *Shepherd Montessori Center Milan v Ann Arbor Charter Township*, on remand, 280 Mich App 449; 761 NW2d 230 (2008).

In this case, it is clear that Adam has not suffered a substantial burden on its religious exercise.  Dr. Amin and the United States' expert Alan Weinstein have verified there are alternative locations in Troy that would have been suitable for a place of worship and in compliance with the zoning ordinance.  As indicated in the affidavit of Brent Savidant, the property on Coolidge could have been purchased by Adam and the building could have been immediately utilized a place of worship without variances and without building permits. Apx pp 139-140.  Adam's rejection of this

property was related to price. The property on Maple could have been developed as a place of worship in compliance with Troy's zoning ordinance without the need for a variance. Adam rejected this potential site because it was not conveniently located in the center of Troy.  Additionally, the other properties mentioned above could have also been used as a place of worship, with a wetland permit or proper assemblage and pursuit of a special use request.  There has been no evidence presented in this case that any City official or body took any action that was a substantial burden on Adam's exercise of its religion.

Additionally, Plaintiff's RLUIPA substantial burden allegations fail because Adam could still use the subject property for a place of worship without the need to acquire a variance if the existing building was modified. As explained by Paul Evans at the ZBA meeting, Adam could construct a new building on the property that would comply with the ordinance and eliminate the need to seek a variance from the ZBA.  ZBA Tr p 136, lines 14 – 24, Apx p 366.  This fact has been confirmed by Brent Savidant who prepared a plan for the subject property with a 6,400 square foot building that met all the setback and parking requirements for a place of worship. Par 11, Savidant Affidavit, Apx pp 141-143.  A building of such size would also meet Adam's needs according to Dr. Amin who testified that if Adam

established a mosque in Troy they would need a building at least 6,000 square feet in size.  Amin Tr 21, Apx p 209.  When asked why Adam did not consider demolishing the existing building, Dr. Amin indicated it was partly due to costs and economic reasons. Amin Tr 83, Apx p 226.

Thus, it appears the reason Adam has not established a mosque in Troy is because it does not want to pay the costs to acquire suitable property or make the subject parcel compliant; and because Adam is unwilling to acquire property unless it is conveniently located in the center of the City; and because it does not want to bother getting special use approval or acquiring a wetland permit.    Adam's alleged inability to establish a mosque in Troy is due to the fact that it would be inconvenient to do so.  Adam's inconvenience does not constitute a substantial burden on its ability to exercise its religion.  *Livingston Christian Schools,* 1003**.**

Plaintiff's self-imposed burden status also defeats Plaintiff's RLUIPA substantial burden allegations against the City defendants.  *Livingston Christian Schools,* 1004. Adam purchased the subject property knowing that the existing building did not meet the setback requirements for a place of worship. Amin Tr p 77, lines 16 - 21, Apx p 227.  *Andon, LLC v City of Newport News, Va,* 813 F3d 510 (CA 4, 2016) is a case very similar to the present case because it involved a congregation that entered into a

purchase agreement to lease property with an existing office building that was intended to be used for a place of worship.  However, the congregation needed a variance from the Board of Zoning Appeals (BZA) because the zoning ordinance required a 100-foot setback from residential property for places of worship and the existing building did not meet the setback requirement.  The Newport News BZA denied the variance and the congregation sued, claiming the variance denial was a RLUIPA violation. As in this case, Plaintiff also argued it could not find a suitable property in the township to serve as a place of worship.  However, in *Andon,* the Court described the alleged hardship as a self-imposed hardship, because they entered into a purchase agreement knowing the building did not comply with the setback provisions. The *Andon* Court held "A self-imposed hardship will not support a substantial burden claim under RLUIPA, because the hardship was not imposed by governmental action altering a legitimate pre-existing expectation that property could be obtained for a particular land use. *Id,* 515.  The Court noted that if it agreed with Plaintiff, such "*a holding would usurp the role of local governments in zoning matters when a religious group is seeking a variance, and impermissibly would favor religious uses over secular uses. Id,* 516.  Likewise, in the present case, Adam knew at the time it acquired an interest in the property

that the existing building could not be used as a place of worship in compliance with the zoning ordinance. Its difficulty in establishing a mosque is a self-imposed hardship.

As stated above, another factor that may be considered by the Court in determining whether a substantial burden exist is whether a religious institution has a feasible alternative location where it can carry on its mission. *Livingston Christian Schools,* 1004. "*When a religious institution has an available alternative outside of a desired jurisdiction, and where the distance from the desired location is reasonably close, the artificial boundaries of a particular jurisdiction become less important." Id,* 1011. Various circuits have held *"requiring a religious institution to use feasible alternative locations for religious exercise does not constitute a substantial burden." Marianist Province of United States v City of Kirkwood,* 944 F3d 996, 1001 (CA 8, 2019) citing *San Jose Christian Coll. V City of Morgan Hill,* 360 F3d 1024, 1035 (CA 9, 2004). Plaintiffs' complaints focus on the lack of any Muslim house of worship within the borders of the City of Troy. At his deposition, Dr. Amin confirmed there is an existing mosque within a five to fifteen-minute drive from most locations in Troy. Amin Tr 97, Apx p 230. The Islamic Association of Greater Detroit (IAGD) is located at 879 W. Auburn Road in Rochester Hills, Michigan. According to google maps,

the IAGD is located only 5.8 miles and an eleven-minute drive from the Troy City Hall – which is close to the center of the City. (Courts make judicial notice of maps showing the distance between locations. *Id 1008.*) For those who live in the northern part of Troy, the distance is much less. Since there is a mosque within a short distance from most residences in Troy, the lack of a mosque within the boundaries of the City of Troy does not constitute a substantial burden on the ability to exercise the Muslim faith.

One of the most significant reasons that Plaintiffs' substantial burden claims must be dismissed is that Plaintiff has failed to provide any evidence that the denial of the variances requested by Adam coerced individual members of Adam to act contrary to their religious beliefs. *Great Lakes Society,* 424.  Accordingly, Count I of Plaintiff's complaint should be dismissed.

Plaintiff may argue that "any" inconvenience experienced by a religious institution as a result of a land use regulation constitutes a substantial burden under RLUIPA.  If that is true, then RLUIPA is unconstitutional. The First Amendment provides in part *"Congress shall make no law respecting an establishment of religion…"* US Const Am 1. The intent of the Establishment Clause is to afford protection against

sponsorship, financial support, and active involvement of the sovereign in religious activity.  *Lemon v Kurtzman,* 403 US 602, 612; 91 S Ct 2105; 29 L Ed 2d 745 (1971).

> *"In proscribing all laws 'respecting an establishment of religion' the Constitution prohibits, at the very least legislation that constitutes an endorsement of one or another set of religious beliefs or of religion generally.  It is part of our settled jurisprudence that 'the Establishment Clause prohibits government from abandoning secular purposes in order to put an imprimatur on one religion, or on religion as such, or to favor adherents of any sect or religious organization.'"  Texas Mobility Inc v Bullock,* 489 US 1, 8-9; 109 S Ct 890; 103 L Ed 2d 1 (1989).

In *Tree of Life,* the Court noted as follows with regard to RLUIPA:

> *"Did Congress intend for the statute to require municipalities to extend preferential treatment to religious entities? We think not. Such a requirement would be inconsistent with any definition of the term 'equal' and it would likely run afoul of the First Amendment Establishment Clause."*

If a nonreligious entity desires to develop land for a particular purpose, they are required to comply with applicable zoning regulations. Thus, a nonreligious entity must pay the costs of acquiring property and constructing a building that complies with the applicable setback and parking provisions.  Likewise, if special approval or a wetland permit is necessary to use the property, a nonreligious entity must pursue those actions as well.  If doing so requires some expense, the nonreligious entity

must either pay the expense or choose not to pursue development of the property. Religious institutions are held to the same standards, and this is not changed by RLUIPA. It would be unconstitutional preferential treatment to allow a religious entity to knowingly purchase property that fails to comply with the zoning ordinance presumably at a significant cost savings, and then turn around and claim a substantial burden and use the property in violation of the zoning ordinance and in violation of the rights of all the neighboring property owners in the community. Such a requirement is inconsistent with the Establishment Clause because it amounts to a governmental endorsement of religion.

Since inconvenience does not constitute a substantial burden RLUIPA claim, both the claims of Adam and the United States must be dismissed because Adam's inability to have a mosque in Troy was due to its own actions and its own decisions that were based on convenience.

## II. TROY HAS NOT IMPOSED OR IMPLEMENTED A LAND USE REGULATION THAT TREATED A RELIGIOUS INSTITUTION ON LESS FAVORABLE TERMS THAN A SIMILARLY SITUATED NONRELIGIOUS INSTITUTION.

To prevail on an equal terms claim under RLUIPA, the plaintiff must show the governmental entity imposed or implemented a land use regulation on a religious institution that treats the religious institution *"on less than equal terms with a nonreligious … institution."* 42 USC § 2000cc(b)(1). The plaintiff

must demonstrate the governmental entity has treated a religious institution less favorably than a "*similarly situated*" secular institution. *Tree of Life Christian Schools,* 368-370. To determine what comparators are similarly situated, the comparison must "*be conducted with regard to the legitimate zoning criteria set forth in the municipal ordinance in question." Id,* 369. The plaintiff *"…bears the burden of making out a prima facie case, and only if the precondition is satisfied does the burden of persuasion shift to the government." Id.* 370. Plaintiffs have set forth two allegations that defendants have treated similarly situated nonreligious institutions on less favorable terms than it has treated Adam. First, Plaintiffs claim Troy violated RLUIPA because it granted variances to similarly situated nonreligious institutions but denied Adam's requests for variances. See par 95 of Adam complaint and par 54 of the United States complaint, Apx pp 21,57. Second, Plaintiffs claim that Troy's zoning ordinance distinguishes houses of worship from theatres, places of assembly, conference, meeting, and banquet facilities, fine and performing art facilities, dance, music, and art studios, daycare centers, preschools, primary and secondary schools and funeral homes, which they claim are similarly situated to places of worship but subject to different setback and parking requirements. These claims are flawed in several respects.

Plaintiffs' first RLUIPA equal terms allegation fails, since Plaintiffs have not established that defendants treated Adam any differently than any other applicant seeking dimensional zoning variance requests.  Pursuant to Section 15.04.E.2 of the zoning ordinance, Apx pp 94-95, there are five criteria that an applicant must establish with substantial evidence before the ZBA can grant dimensional variance(s).  These criteria must be met by all applicants seeking a variance, regardless of whether the applicant is a religious or nonreligious institution. Carlisle Rep, p 5, Apx p 108, Carlisle Tr, p 355, Apx p 134. Since nonreligious and religious institutions seeking variance(s) are treated equally, there is no basis for a RLUIPA equal terms claim based on the denial of the variances.

Plaintiff's expert Alan Weinstein implies the ZBA has treated nonreligious institutions more favorably than it treated Adam and asserts some of those other institutions were similarly situated. Weinstein Rep p 29, Apx p 267.  Plaintiffs have not established that there were any other non-religious applicants who received favorable treatment, or that they are similarly situated.  Just like Plaintiff Adam, all non-religious applicants were required to establish the five criteria before being granted a variance. Adam's variance requests were denied because Adam failed to meet the criteria set forth in the ordinance.   Variance requests are decided on a case

by case basis, Carlisle Tr, pp 346, 47, Apx pp 130-131, Clark Tr, pp 43, 47, Apx pp 379-380, so the fact that one applicant for a variance satisfied the criteria based on its particular circumstances does not mean another applicant with different circumstances should also be granted a variance.   As Mr. Carlisle pointed out at his deposition, most variances should not be approved. Carlisle Tr, p 355, Apx p 135.  This is especially true when the variances being requested are substantial.  The expert for the United States admits variances requested by Adam were quite substantial.  Weinstein Rep p 29, Apx p 267. Adam, unlike the allegedly comparable variance applicants referenced in Weinstein's report, sought several variances.  Clark Tr, p 163, Apx p 381. One of the requests was highly unusual in that they were seeking a variance from the entire 50-foot setback. Clark Tr, p 163, Apx p 381.  Plaintiffs have not established that any other institution seeking variances similar in number and magnitude of those sought by Adam had their requests granted by Troy's ZBA.

Plaintiffs also imply the ZBA should have granted Adam's requested variances, since Adam allegedly met the variance criteria. However, there is no evidence to show the ZBA improperly carried out its duties to carefully consider the material produced to determine if there was satisfaction of each of the five criteria. If Adam felt otherwise, its remedy was to appeal the

decision to the Circuit Court. MCL 125.3606. A mere disagreement with a ZBA decision is not a basis for a RLUIPA equal term claim, and Plaintiffs have not produced a viable claim.

Plaintiffs' second basis for an alleged equal term RLUIPA violation argues that Troy's zoning ordinance imposes more onerous setback and parking restrictions on places of worship than it does on similarly situated nonreligious institutions. However, none of the non-religious institutions identified in Plaintiffs' complaints are appropriate comparators for an equal term RLUIPA analysis. As set forth in *Tree of Life Christian Schools,* comparators must be similarly situated with regard to legitimate criteria set forth in the zoning ordinance. *Tree of Life Christian Schools,* 369. In that case, the City identified the generation of income tax revenue as a goal of zoning, which the Court agreed was a legitimate zoning criterion. *Id.*, 372-373. The Court determined that the plaintiff's proposed Christian school was not similarly situated to other revenue generating uses that were treated differently under the ordinance, and therefore found no violation of the equal terms provision of RLUIPA. *Id.,* 376.

In this case, the legitimate criteria in the zoning ordinance that justifies different setbacks and parking regulations for places of worship are included

in Section 1.03 of Troy's zoning ordinance that sets forth the purposes of the ordinance.  Apx. p 75-76.  The overall purpose of the zoning ordinance is to "*promote and safeguard the public health, safety and welfare" and "implement the Master Plan."* Some of the individual purposes the zoning ordinance seeks to achieve include protecting *"the character and stability of residential neighborhoods,"* providing "*transitions between land uses to reduce potential negative impacts"* and to "*lessen and avoid congestion on highways and streets, and provide safe and convenient access for property*." Troy's 2011 zoning amendments, which included provisions specifically related to places of worship, were adopted with the foregoing purposes in mind.  They *"were designed to accommodate places of worship in both residential and non-residential areas while still protecting neighboring residential areas."*  Carlisle Rep, p 3, Apx p 106.  The setbacks applicable to places of worship advance the goals of Troy's zoning ordinance by *"providing adequate spacing between parking areas that generate noise, light, and exhaust fumes for concentrated peak periods of time."* Carlisle Rep p 4, Apx p 107.  Additionally, the parking regulations applicable to places of worship promotes public health, safety and welfare because unlike many other places of assembly, places of worship *"typically have scheduled times of worship when members arrive and leave during conceptual periods of time."* Carlisle Rep, p 4, Apx p 107.  Thus,

"*prohibiting parking in the front yard setback is designed to give drivers adequate distance between a busy thoroughfare and the point at which parking can be accessed."* Carlisle Rep, p 4, Apx p 107. Another reason strict setback regulation for places of worship are justified, based on the legitimate criteria of the zoning ordinance, is that places of worship, unlike other institutions and places of assembly, tend to have an "*an extensive number of uses other than worship that the building or buildings serve."* Carlisle Rep, p 4, Apx p 107. As noted in the Carlisle report, Adam admitted in its application for a variance that the subject property would be used for multiple purposes in addition to serving as a place of worship. Carlisle Rep, p 4, Apx p107.

Plaintiffs, relying on the Weinstein report, will likely contend there is no justification for having parking and setback regulations for places of worship that differ from the parking and setback regulations applicable to theatres, places of assembly, conference, meeting, and banquet facilities, fine and performing art facilities, dance, music, and art studios, daycare centers, preschools, primary and secondary schools and funeral homes. However, Weinstein's claims are based on generalities and not on evidence specific to the City of Troy. Based on Troy's own experience with places of worship, it is evident they are not similarly situated to the other institutions and places of assembly described by Weinstein.

As explained by the Court in *Tree of Life Christian Schools,* Congress failed to provide any guidepost as to what is meant by the term "*equal*" as that term is used in RLUIPA's equal terms provision. *Tree of Life Christian Schools,* 367. This lack of specification reveals the intent of RLUIPA was to give local units of government some discretion in determining what constitutes equal treatment based on the particular circumstances of the community. Such an interpretation is consistent with established precedent that regulation of land use is a *"quintessential state and local power." Rappanos v United States,* 547 US 715, 738; 126 S Ct. 2208; 165 L Ed 2d 159 (2006). The power of local government to zone and control land uses is broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life. *Schenck v City of Hudson,* 114 F3d 590, 593-594. A local legislative body need not even select the best or the least restrictive method of attaining its goals so long as the means selected are rationally related to those goals. *Id,.* 594. The determination of whether a local zoning regulation is justified is based on the particular circumstances of the locality. As explained in the landmark decision of *Village of Euclid v Ambler Realty,* 227 US 365, 388; 47 S Ct 114; 71 L Ed 303 (1926):

> *"Thus the question whether the power exists to forbid the erection of a building of a particular kind or for a particular use, like the question whether a particular thing is a nuisance, is to be determined, not by an*

> abstract consideration of the building or of the thing considered apart, but by considering it in connection with the circumstances of the locality."

Since the justification for a particular zoning provision varies with circumstances and conditions, a regulation that would be valid in a big city might be clearly invalid as applied to a rural community. *Id.,* 387. The principle that the provisions of a zoning ordinance required in one community based on its circumstances may not be suitable for another community was also espoused by the City's planning expert Benjamin Carlisle at his deposition. Carlisle Tr p 351, Apx p 132.

In this case, based on the City of Troy's experience with the significant negative impacts caused by places of worship, as described in the testimony and affidavit of the City's Planning Director Brent Savidant, and the testimony of City Manager and former Planning Director Mark Miller, it is evident that places of worship in Troy are not similarly situated to any of the places of assembly or institutions the Plaintiffs claim are treated more favorably.

In addition to the negative impacts caused by places of worship in Troy, places of worship are not similarly situated to the institutions described in the complaints of the Plaintiffs because there are so many of them in the City. During his deposition, Benjamin Carlisle explained Troy has over 60 places of worship and only one or two of the other types on institutions mentioned by

Plaintiffs.  Carlisle Tr p 111, Apx p120.  This fact also justifies different parking and setback requirements because it is much easier to draft ordinance provisions for specific types of places of assembly when only a few exist in the City. Carlisle Tr p 111, Apx p 120.  However, since Troy has numerous places of worship, and since Troy's experience with places of worship involve circumstances where thousands of members come and go within a short period of time causing traffic and congestion, the setback provisions are justified.  Carlisle Tr p 140, Apx p 124.

Based on the number of places of worship in Troy, and the negative impacts caused by places of worship that have not been associated with other types of institutions, the parking provisions of Section 6.21 are also justified. Precluding parking within the require 50-foot setback results in less congested parking areas, which is safer for both traffic and pedestrian movement. Carlisle Tr pp 140 -141, 165, Apx pp 124-126.  As explained at Benjamin Carlisle's deposition, another difference between places of worship and other places of assembly is that customers of other places of assembly are likely to just drive away when a parking lot is full.  Carlisle Tr p 167, Apx p 129. However, a member of a place of worship is more likely to try to park near a place of worship to attend a service even if the parking lot is full. Carlisle Tr p

167, Apx p 129.  The obvious result is overflow parking either on busy streets or in residential neighborhoods.

Mr. Weinstein suggests that Troy should impose smaller setbacks for smaller places of worship.  Weinstein Rep, pp 14-15, Apx pp 252-253. However, this solution would not be practical. If the City based its setbacks and parking regulations on the number of members that attend a place or worship, less restrictive provisions would only be appropriate for a new place of worship while the number of members remained low.  However, if the number of attendees begins to increase, the less restrictive provisions would no longer be appropriate and the City would have to contend with the negative impacts caused by the increased traffic and congestion.  If a particular place of worship believes the current setback and parking provisions are too onerous based on its particular circumstances, it may then seek a variance. See Carlisle Tr p 157, Apx p 127.  However, as previously noted, an applicant for a variance must satisfy the standards set forth in the ordinance.

Since places of worship in Troy are not similarly situated to the other places of assembly and institutions that Adam and the United States contend are appropriate comparators, both Plaintiffs equal terms RLUIPA claims must be dismissed.

## III.   PLAINTIFF ADAM'S RLUIPA CLAIMS BROUGHT UNDER 42 U.S.C. § 2000CC(B)(2) AND 42 U.S.C. § 2000CC(B)(3) SHOULD

**BE DISMISSED BECAUSE THERE IS NO EVIDENCE TROY DISCRIMINATED AGAINST ADAM ON THE BASIS OF RELIGION OR THAT TROY IMPOSED A LAND USE REGULATION THAT UNREASONABLY LIMITED RELIGIOUS ASSEMBLIES, INSTITUTIONS, OR STRUCTURES.**

In Count II of Adam's complaint, it contends Troy's actions constitute a violation of RLUIPA's nondiscrimination provision. However, they have offered no evidence to support this conclusion other than mere speculation that the City's zoning provisions and the denial of Adam's variance was due to animosity toward the Islamic religion. There is little case law analyzing what is needed to prevail on a RLUIPA nondiscrimination claim. However, at least one case provides that in order to establish such a claim, there must be evidence of a discriminatory intent. *Chabad Lubavitch v Litchfield County,* 768 F3d 183, 198 (CA 2, 2014). In this case, there is no evidence that Troy's zoning ordinance and/or its denial of Adam's variance request were based on discriminatory intent. Adam's mere speculation is not sufficient to overcome a motion for summary judgment. *Arendale v City of Memphis,* 519 F3d 587, 605 (CA 6, 2008).

In Count IV of its complaint, Adam avers the City violated the exclusions and limits provision of RLUIPA. Similar to its claim related to discrimination, Adam has offered no evidence to support this claim. Moreover, since Troy's zoning ordinance permits places of worship in all zoning districts except for

the EP Environmental Protection, PV Planned Vehicle Sales, and Parking

districts, and thereby allows places of worship either a permitted or special

land use in approximately 97% of the land area in the City of Troy, Adam

cannot legitimately argue Troy unreasonably limits religious institutions.

Since there is no evidence to prove Adam's claims, Counts II and IV of

its complaint should be dismissed.

## IV.   ALL OF PLAINTIFF ADAM'S CLAIMS BROUGHT UNDER 42 U.S.C. § 1983 SHOULD BE DISMISSED ON THE BASIS THERE IS NO EVIDENCE OF ANY UNDERLYING CONSTITUTIONAL VIOLATIONS.

In a case brought under 42 U.S.C § 1983, the action must fail if the

Plaintiff cannot show an underlying constitutional violation.  *Napier v Madison*

*County,* 238 F 3d 739, 743 (CA 6, 2001).  In this case, Adam has not

presented even a scintilla of evidence showing Troy engaged in conduct that

violated Plaintiff's constitutional rights.  In Count V, Adam alleges a violation of

the Free Exercise Clause of the First Amendment.  However, that clause does

not relieve an individual from the obligation to comply with neutral laws of

general applicability.  *Great Lakes Society,* 389, citing *Employment Div., Dep't*

*of Human Resources of Oregon v Smith,* 494 US 872, 878-879; 110 S Ct

1595; 108 L Ed 2d 876 (1990).  In this case, to obtain a variance, Plaintiff was

required to meet the standards set forth in Section 15.04. E. 2.  These

provisions are neutral on their face and there is no proof they were

implemented by the ZBA in such a way as to infringe upon religious practices. *Church of the Lukumi Babalu Aye, Inc. v City of Hialeah,* 508 US 520, 533; 113 S Ct 2217; 124 L Ed 2d 472 (1993).

In Count VI, Adam alleges a violation of the Establishment Clause of the First Amendment. Pursuant to *Lemon v Kurtzman,* 612-13, a government practice violates the Establishment Clause if it 1) lacks a legitimate secular purpose; 2) has the primary effect of advancing or inhibiting religion; or 3) fosters an excessive entanglement with religion. A ZBA decision on a variance serves a legitimate public purpose by insuring there is a proper basis for allowing a building to deviate from the land use regulations designed to protect the health, safety and welfare of the community. Additionally, as noted in a previous section of this brief, the zoning ordinance provisions are applied equally to all entities – religious and nonreligious alike. Accordingly, the ZBA decision to deny Plaintiff's variances does not violate the Establishment clause.

Adam has also failed to produce evidence Troy violated its First Amendment Right of Free Speech as alleged in Count VII of the complaint. There is no proof Troy placed any restrictions affecting Plaintiff's ability to engage in constitutionally protected speech. Likewise, there is no proof Troy prevented Adam or its members from assembling in violation of the First

Amendment as alleged in Count VIII.  Accordingly, Count VII and VIII of the complaint should also be dismissed.

In Count IX of the complaint, Adam alleges a violation of the Constitutional Right of Equal Protection claiming the decision to deny the variance was based on religious reasons.  As noted above, however, the decision was based on public health and safety reasons and Adam's failure to meet its burden to establish the criteria set forth in the zoning ordinance.  The decision had nothing to do with Adam's religion.

In Count X, Adam alleges a violation of its right to Substantive Due Process on the basis the ZBA acted arbitrarily and failed to provide a legitimate basis for the denial of the variance.  Once again, as previously discussed, the comments of the individual ZBA members at the meeting show they properly made their decision based on the failure to meet the practical difficulty standards set forth in the zoning ordinance.  There is no evidence to the contrary.

Since Adam has no evidence to support the allegations that Troy violated its Constitutional rights, all of its Section 1983 claims should be dismissed.

## **RELIEF SOUGHT**

For the reasons set forth above, all the claims of Adam and the United States should be dismissed as a matter of law.  An additional reason for dismissal of all of Adam's claims against the Troy City Council, the Troy Planning Commission, and the Troy ZBA is there is no evidence establishing a basis as to why those bodies are separately liable for any alleged conduct. Thus, it is Troy's request that summary judgment be granted it its favor in both cases and that each and every count of the complaint filed by Adam and both counts of the complaint filed by the United States be dismissed against all remaining Defendants.

Dated: December 23, 2020               s/Allan T. Motzny
                                       Lori Grigg Bluhm (P46908)
                                       Allan T. Motzny (P37580)
                                       500 W. Big Beaver Road
                                       Troy, MI 48084
                                       (248) 524-3320
                                       motznyat@troymi.gov

## Certificate of Service

I hereby certify that on December 23, 2020, I electronically filed Defendants Motion for Summary Judgment and the Brief in Support of Motion with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record using the ECF system.

                                       s/Allan T. Motzny
                                       Lori Grigg Bluhm (P46908)
                                       Allan T. Motzny (P37580)
                                       Attorneys for Defendants
                                       500 W. Big Beaver Road
                                       Troy, MI 48084
                                       (248) 524-3320
Dated: December 23, 2020                motznyat@troymi.gov