## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 19-cv-12736 |
| | ) | |
| v. | ) | Hon. Nancy G. Edmunds |
| | ) | Mag. Judge Anthony P. Patti |
| | ) | |
| **CITY OF TROY, MICHIGAN**, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF
## UNITED STATES OF AMERICA

The United States, through its attorneys, requests that the Court grant

summary judgment in its favor under Federal Rule of Civil Procedure 56 and find

that the City of Troy, Michigan ("Troy"), violated the Religious Land Use and

Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc-2000cc-5,

on claims made in Count I (Substantial Burden) and Count II (Equal Terms) of the

United States' Complaint. ECF No. 1, PageID.31-32.

In Count II, the United States alleges that Troy's Zoning Ordinance facially

violates RLUIPA's Equal Terms provision, 42 U.S.C. § 2000cc(b)(l).[1] *See* ECF No.

---

[1] The United States' Complaint alleges violations of RLUIPA's Equal Terms
provisions under two legal theories, "as-applied" and "facial" violations. *See
generally,* Compl. ECF No. 1; *see, e.g.,* United States' Mot. to Compel Disc., ECF

1, PageID.31-32, ¶ 79. Specifically, Troy imposes stricter setback and parking standards on places of worship than it imposes on similarly-situated nonreligious assemblies and institutions, including conference, meeting, and banquet facilities; mortuary and funeral homes; fine and performing art facilities; primary and secondary schools; restaurants that regularly host large events; and theaters and places of assembly, such as community centers. Additionally, Troy requires places of worship to obtain special use approval to operate in its Communities Facilities zoning district, but permits comparable nonreligious assemblies and institutions, such as primary and secondary schools as well as fine and performing art facilities, to operate as of right (without special use approval) in that district. Troy does not dispute that its Zoning Ordinance regulates religious assemblies differently, and more strictly, than several nonreligious assemblies and institutions. Troy has not, and cannot, point to any legitimate zoning criteria to justify its unequal treatment of religious assemblies, such as Adam Community Center ("Adam").

In Count I, the United States alleges that Troy's implementation of this facially discriminatory ordinance violated RLUIPA by substantially burdening Adam's religious exercise, 42 U.S.C. § 2000cc(a)(l). *See* ECF No. 1, PageID.31, ¶ 77. Specifically, the undisputed facts demonstrate that Troy imposed the Zoning

---

No. 29, PageID.186. Through this motion, the United States moves for summary judgment on the "facial" Equal Terms violation only; it does not move for summary judgment on the "as-applied" Equal Terms violation.

Ordinance's unequal terms when Adam sought to operate an Islamic center in an existing building that was previously used by many nonreligious assemblies. Though Adam proposed no changes to the building's footprint, setbacks, or parking, and though its proposed use would have no greater impact on traffic, noise, or safety, because Adam would change the kind of assembly – from nonreligious to religious – it was subject to Troy's stricter setback and parking standards applied to places of worship. Adam sought relief from these unequal terms through a variance application, specifically citing RLUIPA. However, the Zoning Board of Appeals was instructed not to concern itself with RLUIPA, and in denying Adam's variance application, it did just that. As a result of this denial, Adam still lacks an adequate location to conduct core religious activities, and it has suffered substantial delay, uncertainty, and expense. The undisputed facts show that Troy has not put forth any compelling interest to justify the variance denial and failed to consider any less restrictive alternatives.

Thus, the United States is entitled to judgment as a matter of law on both Counts. In support of its motion, the United States relies on the accompanying brief, attached exhibits, and documents on file with the Court.

Pursuant to Local Rule 7.1(a), Plaintiff's counsel communicated to opposing counsel the nature of this motion and its legal basis, and sought concurrence in the relief, but such concurrence was denied.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney
Eastern District of Michigan

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief

/s/ Shannon M. Ackenhausen
SUSAN K. DECLERCQ
(P60545)
Assistant United States Attorney
Chief, Civil Rights Unit
SHANNON M. ACKENHAUSEN
(P83190)
Assistant United States Attorney
United States Attorney's Office
Eastern District of Michigan
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Phone: (313) 226-9730
Facsimile: (313) 226-3271
Susan.DeClercq@usdoj.gov
Shannon.Ackenhausen@usdoj.gov

/s/ Abigail B. Marshak
TIMOTHY J. MORAN
Deputy Chief
ABIGAIL B. MARSHAK
(NY 5350053)
KATHERINE A. RAIMONDO
(DC 985157)
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
United States Department of Justice
4 Constitution Square / 150 M Street NE
Washington, DC 20530
Phone: (202) 514-1968
Facsimile: (202) 514-1116
Abigail.Marshak@usdoj.gov
Katherine.Raimondo@usdoj.gov

Attorneys for the United States

Dated: December 23, 2020

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 19-cv-12736 |
| | ) | |
| v. | ) | Hon. Nancy G. Edmunds |
| | ) | Mag. Judge Anthony P. Patti |
| | ) | |
| **CITY OF TROY, MICHIGAN**, | ) | |
| | ) | |
| Defendant. | ) | |

## BRIEF IN SUPPORT OF PLAINTIFF UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

### ISSUES PRESENTED

(1) Did the City of Troy impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution, in violation of RLUIPA, 42 U.S.C. § 2000cc(b)(l)?

      The United States' Answer: Yes.

(2) Did the City of Troy impose or implement a land use regulation that substantially burdened Adam Community Center's religious exercise without demonstrating that such burden was in furtherance of a compelling governmental interest and is not the least restrictive means of furthering such an interest, in violation of RLUIPA, 42 U.S.C. § 2000cc(a)(l)?

      The United States' Answer: Yes.

## MOST CONTROLLING AUTHORITY

Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc-2000cc-5

*Tree of Life Christian Schs. v. City of Upper Arlington*, 905 F.3d 357 (6th Cir. 2018), *cert. denied*, 139 S.Ct. 2011 (2019)

*Livingston Christian Schs. v. Genoa Charter Twp.*, 858 F.3d 996 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 1696 (2018)

# **TABLE OF CONTENTS**

I.     STATEMENT OF MATERIAL FACTS ...................................................... 1

  A.   Troy's ZO Imposes Stricter Setback and Parking Standards On Places of
       Worship Than On Nonreligious Assembly Uses .......................................... 1

  B.   Troy Treats Places Of Worship Less Favorably Than Nonreligious
       Assemblies and Institutions in Its Community Facilities District ................ 4

  C.   Troy's Purported Reasons for Imposing More Restrictive Standards on
       Places of Worship Do Not Justify Differential Treatment ........................... 4

  D.   Troy Denied Adam's Request for Relief from the Unequal Terms of its ZO 7

       i.    Troy Required Adam to Seek a Variance to Use the Property as a Place of
             Worship ...................................................................................................... 8

       ii.   Adam Applied for a Variance and Reasonably Expected Approval ........... 9

       iii.  The ZBA Denied Adam's Application In Spite of the Evidence and Without
             Specific Findings ...................................................................................... 10

       iv.   Troy Did Not Consider Alternatives Less Restrictive than a Denial .......... 11

  E.   Troy's Denial Substantially Burdened Adam's Religious Exercise ............. 13

II.    LAW AND ANALYSIS ................................................................................ 15

  A.   Troy's ZO Facially Violates RLUIPA's Equal Terms Provision ................. 15

       i.    Troy Imposes Stricter Standards on Places of Worship than on
             Nonreligious Assembly Uses in All Zoning Districts ............................... 17

       ii.   No Legitimate Zoning Criteria Justifies This Unequal Treat ................... 17

       iii.  Troy's Requirement that Places of Worship Seek Special Use Approval in
             its CF District Facially Violates RLUIPA ................................................ 20

       iv.   Troy Cannot Rebut the United States' Prima Facie Showings ................. 21

  B.   Troy Substantially Burdened Adam's Religious Exercise When It Denied
       Adam's Application for Relief from its Discriminatory ZO ....................... 22

       i.    Adam Has No Feasible Alternative Location to Conduct Core Religious
             Functions and Worship as a Community ................................................. 22

       ii.   Adam Has Suffered Substantial Delay, Expense, and Uncertainty as a
             Result of the Variance Denial .................................................................. 24

       iii.  Adam's Hardship Was Not Self-Imposed ................................................. 25

       iv.   Troy's Denial of Adam's Variance Application Was Not the Least
             Restrictive Means of Furthering a Compelling Governmental Interest ..... 26

       a.    Troy Has Not Asserted a Compelling Interest ........................................... 26

       b.    The Denial of Adam's Variance Application Was Not the Least Restrictive
             Means to Advance Troy's Interests ........................................................... 29

III.   CONCLUSION ......................................................................................... 30

# TABLE OF AUTHORITIES

## Cases:

*Adam Cmty. Ctr. v. City of Troy*, 381 F. Supp. 3d 887
(E.D. Mich. 2019) …………………………………….……...…15, 16, 22

*Albanian Associated Fund v. Twp. of Wayne*, No. 06-CV-3217,
2007 WL 2904194 (D.N.J. Oct. 1, 2007) …………………..……………… 23

*Bethel World Outreach Ministries v. Montgomery Cnty. Council*,
706 F.3d 548 (4th Cir. 2013)……………………………….…….…24, 25

*Burwell v. Hobby Lobby Stores, Inc*., 573 U.S. 682 (2014) …………………….…..29

*Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*,
651 F.3d 1163 (9th Cir. 2011) ……………………...…..….…15, 16, 20, 21

*DiLaura v. Twp. of Ann Arbor*, 112 F. App'x 445 (6th Cir. 2004)………………..23

*Dorman v. Charter Twp. of Clinton*, No. 15-CV-12552,
2019 WL 3322352, (E.D. Mich. July 24, 2019) ……………....16, 17, 18, 21

*Espinoza v. Montana Dept. of Revenue*, 140 S. Ct. 2246 (2020) ……………...…28

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
546 U.S. 418 (2006)………………………………………………...…………… 26

*Grace Church of N. Cnty. V. City of San Diego*, 555 F. Supp. 2d 1126
(S.D. Cal. 2008)……………..…………………………………………..24, 28

*Hunt Valley Baptist Church, Inc. v. Baltimore Cnty*.,
No. 17-CV-804, 2020 WL 618662, (D. Md. Feb. 10, 2020)…………..19, 20

*Lighthouse Cmty. Church of God v. City of Southfield*,
No. 05-CV-40220, 2007 WL 30280, (E.D. Mich. Jan. 3, 2007)…..23, 25, 29

*Livingston Christian Schls v. Genoa Charter Twp*., 858 F.3d 996
(6th Cir. 2017) cert. denied, 138 S. Ct. 1696 (2018) …………..…16, 22, 23, 26

*New Life Ministries v. Charter Twp. of Mt. Morris*, No. 05-CV-74339,
2006 WL 2583254 (E.D. Mich. Sept. 7, 2006) ……….…………..….……..18

*Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty.*,
450 F.3d 1295 (11th Cir. 2006) …………………………….…….….…..16

*River of Life Kingdom Ministries v. Vill. of Hazel Crest*, 611 F.3d 367
(7th Cir. 2010)…………………………………………………………...18

*Rockville Cath. Diocese of Rockville Centre, N.Y. v. Inc. Vill. of Old Westbury*,
128 F. Supp. 3d 566 (E.D.N.Y. 2015)……………….…..…………………25

*Roman Cath. Archdiocese of Kansas City v. City of Mission Woods*,
337 F. Supp. 3d 1122 (D. Kan. 2018)………………….…..………………27

*Soc'y of Am. Bosnians & Herzegovinians v. City of Des Plaines*,
No. 13-CV-6594, 2017 WL 748528 (N.D. Ill. Feb. 26, 2017) ….....…..24, 29

*Tree of Life Christian Schs. v. City of Upper Arlington*, 823 F.3d 365
(6th Cir. 2016)…………………………………………………….….…..20

*Tree of Life Christian Schs. v. City of Upper Arlington*, 905 F.3d 357
(6th Cir. 2018) cert. denied 139 S.Ct. 2011 (2019) ………………..16, 20, 21

*Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338
(2d Cir. 2007)…………………..……………………………………25, 26, 27, 29

*Wisconsin v. Yoder*, 406 U.S. 205 (1972)……………………………………26

**Federal Rules:**
Fed. R. Civ. P. 56(a) ……………………..…………………….………………………15

**Other Statutes:**
42 U.S.C. §§ 2000cc…………………………………………………..1, 2, 15, 17, 22

Troy, Michigan, Zoning Ordinance
https://cms6.revize.com/revize/troymi/Departments/Planning/FULL%20TROY%20ORDINANCE%2011-30-18.1.pdf (accessed December 22, 2020). (Revised
through November 29, 2018).………………………………………..……*passim*

## I.   STATEMENT OF MATERIAL FACTS

1. Troy, Michigan is a "government" under RLUIPA. *See* 42 U.S.C. § 2000cc-5(4)(A)(i); Answer, ECF No. 8, PageID.47, ¶¶ 7-8. Troy's Zoning Ordinance ("ZO"), a "land use regulation," 42 U.S.C. § 2000cc-5(5), defines 22 districts with permitted uses and building restrictions. *Id.* PageID.49, 52, ¶¶ 19, 34; ZO § 4.01.

### A. Troy's ZO Imposes Stricter Setback and Parking Standards On Places of Worship Than On Nonreligious Assembly Uses

2. The ZO sets forth uses permitted "as of right," with "special approval," as an "accessory," or "not permitted" in each district. ZO § 4.21. It also prescribes setbacks, which are required distances between buildings and property lines ("setback standards"), and regulates parking in these setbacks ("parking standards"). ECF No. 8, PageID.49, ¶ 19. The ZO provides general setback and parking standards for any use permitted as of right in each district. *See, e.g.*, ZO §§ 4.14 C, D.4.

3. However, the ZO imposes different standards on certain uses ("use-specific standards") that supersede general standards wherever that use is located. Exhibit A - Savidant Tr. 170:21; ZO Art. 6. Troy imposes use-specific setback and parking standards on all "places of worship," ZO § 6.21, "site[s] used for or intended for the regular assembly of persons for the conducting of religious services and accessory uses therewith," ZO § 2.02, that meet cultural and educational needs. Exhibit A - Savidant Tr. 135:11-17. They can operate in 19 districts – nine as of right and ten with special approval. ZO § 4.21, Tables 5.03A-1, 5.04C-1, 5.05C-1, 5.06C-1.

4. In six districts that allow places of worship as of right (including the General Business "GB" district where the disputed property is located), Troy imposes a general setback greater than or equal to 50' *only* where a property abuts single-family residences. ECF No. 8, PageID.57-58, ¶¶ 65-70; *see* Table 1, *infra*. In setbacks bordering residentially zoned or used land, the ZO only prohibits parking within 10' of the residential boundary. *Id*. These setback and parking standards apply to nonreligious assemblies and institutions allowed by right in these districts, like conference, meeting, and banquet facilities; mortuary/funeral homes; fine and performing art facilities; primary and secondary schools;[1] restaurants; and theaters and places of assembly. *Id*. They do not apply to places of worship, which are expressly subject to different standards. ZO §§ 6.21(E)-(F).

5. For all places of worship, in these and other districts,[2] the ZO imposes stricter setback and parking standards than those imposed on comparable nonreligious uses. Exhibit D - Evans Tr. 61:4-24. Specifically, ZO §§ 6.21(E)-(F)

---

[1] Troy's ZO imposes no use-specific setback and parking standards on primary/secondary schools. *Compare* ZO § 6.23 with §§ 6.21(E)-(F). Troy asserts that such schools are regulated by the State of Michigan, but its expert explained that Troy regulates zoning for *private* schools. Exhibit B - Carlisle Tr. 91:15-22.

[2] Troy also permits places of worship as of right in three "form-based" districts, which base their standards on a building's type or "form." ZO §§ 5.03-5.06. But the ZO holds places of worship to stricter setback and parking standards than nonreligious uses also permitted as of right, including those the ZO states are similar to places of worship in "function, character, and intensity," *id*. § 5.03(A), like funeral homes and primary/secondary schools (private), and theaters and places of assembly. *Id.*; *See* Exhibit C - Ingram Decl. ¶ 4; Exhibit C-1 - Form-Based District Chart.

2

require 50' setbacks on *every* side of a place of worship, regardless of neighboring uses, and entirely prohibit parking in any setback adjacent to a public street or residential property (collectively "POW standards"). ECF No. 8, PageID.49-50, ¶ 20. Table 1 compares POW standards with general setback and parking standards applicable to the nonreligious assemblies discussed in Statement of Material Facts ("SOF") ¶ 4, *supra*.

| Table 1: Regulation of Places of Worship and Nonreligious Uses in Six Districts Where Places of Worship Are Allowed as of Right | | | | | | |
|---|---|---|---|---|---|---|
| District | Minimum Setback Requirements and Parking Restrictions | | | | | Select Nonreligious Assembly/ Institutions Permitted by Right |
| | Front | Rear | Sides | Adjacent to Residential | Parking Restrictions in Setback Areas | |
| Community Business (CB) | 10' | 30' | 20'** | 75' | ≤ 50% of front; not within 10' of residential or public street | (1) fine and performing art facilities; (2) mortuary/funeral homes; (3) primary and secondary schools; (4) restaurants; (5) theaters and places of assembly |
| General Business (GB) | 10' | 30' | 20'** | 75' | ≤ 50% of front; not within 10' of residential or public street | (1) conference, meeting, and banquet facilities; (2) fine and performing art facilities; (3) mortuary/funeral homes; (4) primary and secondary schools; (5) restaurants; (6) theaters and places of assembly |
| Integrated Industrial & Business (IB) | 30' | 20' | 10' | 50' | not in front; not within 10' of residential or public street | (1) conference, meeting, and banquet facilities; (2) fine and performing art facilities; (3) mortuary/funeral homes; (4) primary and secondary schools; (5) restaurants; (6) theaters and places of assembly |
| Office (O) | 10' | 30' | 20' | 50' | ≤ 50% of front; not within 10' of residential or public street | (1) primary and secondary schools |
| Office Mixed Use (OM) | 10' | 30' | 20'* | 50' | ≤ 50% of front; not within 10' of residential or public street | (1) conference, meeting, and banquet facilities; (2) fine and performing art facilities |
| Research Center (RC) | 30' | 20' | 20' | 50' | not in front or by public street; not within 10' of residential | (1) primary and secondary schools |
| Places of Worship (POW) | 50' | 50' | 50' | 50' | not within 50' of residential or public street (includes front) | N/A |

*In the OM district, the sum total of both side setbacks must be at least 60 feet.
** No setbacks are required where the lot abuts a non-residential lot unless the property's related wall has windows; a minimum 10' setback is required where the property's wall has windows or openings.

6. Troy admits that POW standards are "more strict" and "more restrictive" than standards applied to these nonreligious uses. Exhibit A - Savidant Tr. 181:12-

182:6; Exhibit D - Evans Tr. 61:4-24; Exhibit E - Savidant Email, DOJ190; Exhibit F - Carlisle Rep. ¶ 16.

### B. Troy Treats Places Of Worship Less Favorably Than Nonreligious Assemblies and Institutions in Its Community Facilities District

7. Troy allows nonreligious assemblies and institutions, such as fine and performing arts facilities; primary and secondary schools; and public owned/operated office and service facilities, to operate by right in its Community Facilities ("CF") district,[3] but requires places of worship to apply for special use approval. ZO § 4.21; Exhibit C - Ingram Decl. ¶ 5; Exhibit C-2 - Use Chart.

### C. Troy's Purported Reasons for Imposing More Restrictive Standards on Places of Worship Do Not Justify Differential Treatment

8. When Troy first imposed the POW standards, places of worship were exclusively located within residential districts and required special approval to operate. ECF No. 8, PageID.49-50, ¶¶ 20-21; Exhibit A - Savidant Tr. 147:1-10. But in 2011, Troy changed its ZO to allow places of worship to operate "as of right" in the non-residential districts discussed above. ECF No. 8, PageID.50, ¶ 21.

9. Troy, however, did not change the POW standards in 2011. *Id.* ¶ 22. Instead, it carried them over to all districts without "a lot of thought," because they "seemed to be functioning very well." Exhibit A - Savidant Tr. 53:1-54:3.

---

[3] The CF district is intended to "provide areas for those public, quasi-public, or private institutional and service uses necessary to serve the cultural, educational, and physical needs of the community." ZO § 4.11(A).

10. Troy's ZO and Master Plan do not specifically articulate why setback or parking standards are imposed, or why Troy imposes stricter setback and parking standards on places of worship than comparable uses. Exhibit A - Savidant Tr. 127:13-128:12; Exhibit B - Carlisle Tr. 165:9-17; Exhibit G - Weinstein Rep. 21-22.

11. However, Troy and both parties' experts agree that setback and parking standards generally address concerns related to traffic on adjacent streets, people's safety accessing buildings, and secondary impacts on nearby properties (i.e., noise, light, and odors). Exhibit A - Savidant Tr. 167:6-22; Exhibit F - Carlisle Rep. ¶¶ 14-15; Exhibit G - Weinstein Rep. 21-23. These concerns are driven by the flow of people into a building and whether there are "concentrated periods of time that people enter and exit." Exhibit B - Carlisle Tr. 133:23-134:21, 279:20-280:3; Exhibit H - Def.'s Interrog. Resp. 8.

12. In response to this litigation, Troy asserts that it imposes stricter POW standards because, in its experience with "large places of worship" or "mega-churches," they involve many "uses other than worship" and therefore have greater "secondary impacts" than other uses. Exhibit A - Savidant Tr. 213:5-12; Exhibit F - Carlisle Rep. ¶¶ 14-16; Exhibit B - Carlisle Tr. 139:23-140:22.[4]

---

[4] Troy's regulation of accessory uses is the same for places of worship and nonreligious assembly uses, including whether they can have simultaneous events. *See* ZO §§ 4.21 ("Accessory buildings and uses"), 7.03; *see also* ZO, generally.

13. Places of worship operate similarly to conference, meeting, and banquet facilities; mortuary/funeral homes; fine and performing art facilities; primary and secondary schools; restaurants that regularly host large events; and theaters and places of assembly and, therefore, implicate zoning concerns related to setback and parking standards in the same way. Exhibit G - Weinstein Rep. 22-25; Exhibit I - Weinstein Reb. 5-9. At least one of these uses is allowed by right in each district that allows places of worship as of right. Exhibit C - Ingram Decl. ¶ 5; Exhibit C-2 - Use Chart. Yet these nonreligious assemblies and institutions have less restrictive setback and parking standards.[5] SOF Table 1, *supra*.

14. Troy's expert does not compare places of worship to any specific use. Exhibit B - Carlisle Tr. 266:17-270:21. And Troy admits that many nonreligious assembly uses, including each use referenced by the United States' expert,[6] could have events with the same relevant features as places of worship, such as: fixed start and end times; no set capacity limitations;[7] cars being parked onsite; and daily

---

[5] The same is true in residential districts that permit places of worship by special use, where uses like primary/secondary schools are not required to meet any use-specific setback and parking standards. *See* ZO § 6.23.

[6] Troy also admits that the following uses could feature events with the same characteristics as places of worship: "commercial recreation" (indoor, outdoor), "dance, music, and art studios," "health fitness centers, athletic clubs, martial arts studios, and other similar uses," and "private clubs, fraternal organizations, and lodge halls." Exhibit A - Savidant Tr. 209:11-215:10.

[7] Occupancy is based on site development for all uses (e.g., building size and parking capacity). Exhibit A - Savidant Tr. 210:6-17; Exhibit B - Carlisle Tr. 271:20-272:3.

convenings at various times.[8] Exhibit A - Savidant Tr. 209:11-215:10. Where these characteristics are equal, Troy's expert admits that there is no justification to impose different setback and parking standards on comparable places of worship. Exhibit B - Carlisle Tr. 229:5-17, 275:19-276:1, 278:6-15, 282:16-283:8, 286:2-287:14.

### D. Troy Denied Adam's Request for Relief from the Unequal Terms of its ZO

15. Adam is a "religious assembly or institution" under RLUIPA. Exhibit J - Def.'s RFA Resp. 3. Adam has searched for a permanent Troy location since it formed in 2009 to serve Troy's Muslim community, and it currently consists of about 200 families. Exhibit K - Amin Decl. ¶¶ 3-4; Exhibit L - Amin Tr. 22:19-25. Adam members believe that performing Islam's five required daily prayers in fellowship at a mosque enhances spiritual benefits and, in some instances, is required. Exhibit M - Ahmed Decl. ¶¶ 6-7; Exhibit N - Syed Decl. ¶¶ 5-6. Therefore, members require proximity to a mosque *in Troy* for their religious practice. *Id.*

16. Adam has an option to lease 3635 Rochester Road ("the Property"). Exhibit O - Option. Adam members purchased the Property in 2018 for Adam to establish a place of worship. Exhibit K - Amin Decl. ¶ 7; Exhibit N - Syed Decl. ¶ 26.

---

[8] Nonreligious establishments in Troy, for example Price Funeral Home, Somerset Inn, Troy Historic Village, Petruzzello's, and San Marino Club, share many of these features. Exhibit A - Savidant Tr. 67:11-69:25; Exhibit D - Evans Tr. 168:15-176:14.

### i. Troy Required Adam to Seek a Variance to Use the Property as a Place of Worship

17. The Property is in the GB district, which allows places of worship as of right, but it does not meet POW standards. ECF No. 8, PageID.50, ¶¶ 21, 25-27.

18. Built in 1984, the Property still has its original footprint and exterior. Exhibit A - Savidant Tr. 251:6-12. It borders Rochester Road with a ~40' front setback (east); a commercial property with no side setback (north); commercial and residential properties with a more than 118' side setback (south); and residential properties with a ~40' rear setback (west). ECF No. 8, PageID.50, ¶ 25.

19. Although these setbacks do not meet the GB district's general setback and parking standards,[9] ZO § 4.14, Troy has allowed, and sometimes specifically approved, the Property as a fruit market, haunted house, antiques and collectibles vendor, shoe store, and most recently, a restaurant with space for banquets, without a zoning variance. Exhibit A - Savidant Tr. 251:6-257:21; Exhibit N - Syed Decl. ¶¶ 24, 28. In fact, Troy has stated that any nonreligious use permitted as of right could operate from the Property without a variance if it: (1) had sufficient parking; (2) did not change the parking or physical structure; and (3) was not subject to use-specific standards. Exhibit D - Evans Tr. 151:1-155:4. For example, Adam could operate a

---

[9] To meet general GB setback and parking standards the Property, as is, would need a ~35' variance from the rear setback (west), and variances to allow parking within 10' of two neighboring homes. *Compare* SOF Table 1 *with* SOF ¶ 18, *supra*.

nonreligious "place of assembly" there, like a community center, without a variance. Exhibit A - Savidant Tr. 257:22-25. Though Adam proposed no changes to the capacity, parking, or structure, Exhibit J - Def.'s RFA Resp. 14; Exhibit P - ZBA Appl., DOJ312, it needed a variance to use the Property for worship because of POW standards, ECF No. 8, PageID.51, ¶ 27; SOF ¶ 17, *supra*.

20. To comply with ZO §§ 6.21(E)-(F), Adam would need to reduce the building's footprint by ~60%, a cost-prohibitive change that would make the Property too small for Adam's needs. Exhibit P - ZBA Appl., DOJ304-06; Exhibit K - Amin Decl. ¶ 8; Exhibit Q - ZBA Hr'g Tr. 47; Exhibit G - Weinstein Rep. 19.

21. Troy's Zoning Board of Appeals ("ZBA") may grant a "non-use" (or "dimensional") variance where a "literal enforcement" of a ZO provision involves "practical difficulties." ZO § 15.04(E)(1). Troy's variance process is an "individualized assessment" under RLUIPA. Exhibit J - Def.'s RFA Resp. 5.

### ii. Adam Applied for a Variance and Reasonably Expected Approval

22. Because of the POW standards, which require 50' setbacks on all sides, Adam applied for dimensional setback variances of ~10' on both the front and rear sides, and 50' on the north side (it did not need a variance on the south side). ECF No. 8, PageID.52, ¶ 36. Because the Property's parking lot extends into the 50' setback areas that abut public roads and a residential area, Adam also applied for a variance from the POW parking standards in the front, back, and south side. *Id.*

9

23. Troy reviews each variance application to "make sure that it is complete enough" for the ZBA. Exhibit D - Evans Tr. 62:13-16. Adam revised its application based on this review. Exhibit J - Def.'s RFA Resp. 12. Troy never told Adam that its application would be denied. Exhibit N - Syed Decl. ¶ 27.

24. The ZBA held a public hearing on Adam's application on June 19, 2018. ECF No. 8, PageID.54, ¶ 45. Adam expected approval and explained why it believed it satisfied each variance criterion. Exhibit P - ZBA Appl., DOJ304-05; Exhibit Q - ZBA Hr'g Tr. 47-52; Exhibit N - Syed Decl. ¶ 27. The building's exterior and parking area would not change, SOF ¶ 19, *supra*; Troy permits places of worship as of right in that district, ZO § 4.21; and nearby commercial buildings have similar relevant configurations (*i.e.*, smaller setbacks and denser parking configurations than imposed on places of worship), Exhibit C - Ingram Decl. ¶ 6; Exhibit C-3 - Rochester Rd. Map. Adam told Troy that it would maintain the same building occupancy that Troy approved in 2012, SOF ¶ 19, *supra*, and it secured the support of a neighboring property owner, Exhibit S - Ruelle Email. Adam told the ZBA that it should consider RLUIPA when making its decision. Exhibit Q - ZBA Hr'g Tr. 98-99.

### iii. The ZBA Denied Adam's Application In Spite of the Evidence and Without Specific Findings

25. During the hearing, ZBA members raised concerns about traffic and parking safety, and one neighbor referenced noise. Exhibit Q - ZBA Hr'g Tr. 55, 82-83, 132-33. When asked, Adam stated that it would not serve alcohol or increase

10

noise, but members did not ask about traffic or parking. *Id.* 128, generally. Still, Adam and others explained that peak use times would not coincide with heavy traffic and Adam would not increase or fully use existing parking. *Id.* 49-50, 63, 65, 74, 80, 85, 94-95, 97, 99, 106-07.

26. ZBA member Padma Kuppa asked if the Property could "be used as a commercial entity without" a variance. Exhibit Q - ZBA Hr'g Tr. 140. A Troy official replied: "Yes," noting: "it currently is being used as a commercial entity without [a variance]…. The dimensional variances that we are seeking tonight are specific to places of worship throughout the city." *Id*. 140-41. Kuppa asked what role RLUIPA played in the ZBA's decision. *Id.* 137. Troy's Assistant City Attorney replied: "you should not be concerned with [RLUIPA]." *Id*.

27. The ZBA unanimously denied Adam's variance because the request "does not fit the intent and purpose of th[e] lot" and because it would be a "100 percent" side setback variance. *Id*. 142; ECF No. 8, PageID.55, ¶ 55.

### iv.    Troy Did Not Consider Alternatives Less Restrictive than a Denial

28. Troy's ZBA can impose conditions on a variance to ensure "that public safety and welfare be secured and substantial justice done." ECF No. 8, PageID.52, ¶ 33; ZO § 15.04(E)(1). Conditions can include a traffic study or landscaping; the ZBA can also postpone a decision to review additional information. Exhibit D - Evans Tr. 237:23-238:4, 240:3-5, 242:19-22; Exhibit A - Savidant Tr. 236:9-16.

29. The ZBA has imposed conditions with approval in the past, including on a place of worship, when variance criteria would not otherwise be met. Exhibit D - Evans Tr. 240:25-242:18; Exhibit G - Weinstein Rep. 33-35. At Adam's hearing, the ZBA did not discuss conditions to alleviated their stated concerns or request any additional information before denying Adam's application. *See, generally*, Exhibit Q - ZBA Hr'g Tr.; *see also* Exhibit G - Weinstein Rep. 32-34.

30. Troy granted variances from setback and parking standards to nonreligious uses at least 35 times, including 13 with significant relief. Exhibit G - Weinstein Rep. 26-27, 29. In 2012, Troy reduced a 75' setback from a residential property to 10' for an office building, and in 2018, it allowed parking for a restaurant in three front setbacks where the ZO only allowed parking in the side or rear. *Id.* Troy relaxed POW standards for other places of worship through variances that reduced (1) a setback abutting a residence from 50' to 26'3" and (2) front, side, and rear setbacks by 22.' *Id.* 26 n. 66. As a Planned Unit Development, Troy approved parking within 50' of residences abutting Woodside Bible Church. *Id.* 31; Exhibit J - Def.'s RFA Resp. 36. At least 35 places of worship do not adhere to current POW standards. Exhibit C - Ingram Decl. ¶ 7; Exhibit C-4 - POW Chart; Exhibit T - Def.'s Resp. to Interrog. 20.

### E. Troy's Denial Substantially Burdened Adam's Religious Exercise

31. Because Adam cannot use the Property as a place of worship, it still meets in the basement of a small office building at 4700 Rochester Road that does not comply with Troy's POW standards. Exhibit K - Amin Decl. ¶¶ 4-5,10.

32. The space is too small to meet Adam's needs and limits its ability to serve and grow its membership. Exhibit N - Syed Decl. ¶¶ 10-18. Adam's religious beliefs require that women and men worship in separate areas, but the basement does not provide sufficient separation. Exhibit M - Ahmed Decl. ¶ 14; Exhibit R - Qudrat Ali Decl. ¶¶ 4-5. Nor does it allow adequate space for Islamic rituals related to birth, marriage, and death or holidays like Ramadan and Eid. Exhibit N - Syed Decl. ¶¶ 10, 13-14. The washrooms are also insufficient for wudu, a ritual washing before prayer. *Id.* ¶ 11; Exhibit M - Ahmed Decl. ¶ 14; Exhibit R - Qudrat Ali Decl. ¶ 6.

33. The basement limits Adam's religious education programs and members' ability to invite others to religious and interfaith events, both of which enhance members' religious experiences. Exhibit M - Ahmed Decl. ¶¶ 9-12, 15; Exhibit N - Syed Decl. ¶¶ 16-17. Members with physical limitations cannot easily access the basement, hindering their participation. Exhibit N - Syed Decl. ¶ 15. Adam cannot renovate the basement to provide additional space. Exhibit K - Amin Decl. ¶ 5.

34. The Property eliminates these problems and meets Adam's religious needs. Exhibit N - Syed Decl. ¶ 24; Exhibit Q - ZBA Hr'g Tr. 129-31. But because

Adam cannot use the Property for worship,[10] members experience disunity and uncertainty. Exhibit N - Syed Decl. ¶ 18; Exhibit R - Qudrat Ali Decl. ¶¶ 3, 8. The inability to congregate as one community, particularly for large services, detracts from their religious experience. *Id.*

35. Adam previously considered at least six other properties that were ultimately unsuitable or it could not acquire. Exhibit A - Savidant Tr. 243:16-22; Exhibit N - Syed Decl. ¶¶ 19-23. For example, in 2018, Adam's offer to purchase 4050 Coolidge Highway was rejected. Exhibit N - Syed Decl. ¶ 23; Exhibit U - 4050 Offer and Rejection.[11] In 2013, Adam pursued 4924 Rochester Road, but Troy designated Adam's use as a place of worship and Adam lost the property to another purchaser while its variance application was pending. Exhibit N - Syed Decl. ¶ 20. Troy's POW standards hindered Adam's property search. *Id.* ¶ 19; Exhibit G - Weinstein Rep. 18; Exhibit A - Savidant Tr. 112:13-20.

36. Troy is "built-out" – almost 100 percent developed. Exhibit B - Carlisle Tr. 102:20-21. While Troy has approximately 60 places of worship, *id.* 275:12, it lacks a permanent location for Islamic worship, Exhibit N - Syed Decl. ¶ 6.

---

[10] During this case and prior to COVID-19, to try and mitigate damages, Adam members ran the Property as a restaurant hosting banquet events, including one with more than 200 attendees. Exhibit N - Syed Decl. ¶ 28.

[11] Troy pointed both to this property, and property at the "SW Corner of Maple and Minnesota," as purported alternative locations for Adam. Exhibit H - Def.'s Interrog. Resp. 10. But the property on Maple is located in a residential district where Adam would need special use approval. Exhibit C - Ingram Decl. ¶ 8, ZO § 4.21.

## II.   LAW AND ANALYSIS

Summary judgment is proper when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). This Court previously outlined the summary judgment standard in *Adam Cmty. Ctr. v. City of Troy*, 381 F. Supp. 3d 887, 895 (E.D. Mich. 2019). Here, the evidence is so one-sided that the United States must prevail as a matter of law on its claims.

### A.   Troy's ZO Facially Violates RLUIPA's Equal Terms Provision

Troy's ZO singles out places of worship and explicitly treats them differently and on less than equal terms than nonreligious assemblies. An "ordinance … [that] expressly treats religious organizations on a less than equal basis" without being "reasonably well adapted to accepted zoning criteria" facially violates 42 U.S.C. § 2000cc(b)(1). *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1175 (9th Cir. 2011). Troy's ZO facially violates RLUIPA's Equal Terms provision by treating places of worship worse than nonreligious assemblies through: (1) setback and parking standards and (2) a special use approval requirement in the CF district. As a result, religious assemblies such as Adam must seek relief, such as a variance, from Troy's ZO when comparable nonreligious uses would not.

In the Sixth Circuit, the prima facie case for an Equal Terms violation requires: (1) a religious assembly; (2) subject to a land use regulation; (3) that treats the religious assembly on less than equal terms than; (4) a nonreligious assembly or

institution. *Tree of Life Christian Schs. v. City of Upper Arlington*, 905 F.3d 357, 367 (6th Cir. 2018), *cert. denied*, 139 S.Ct. 2011 (2019) ("*Tree of Life III*") (*citing Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty.*, 450 F.3d 1295, 1307-08 (11th Cir. 2006)).[12] Once established, Troy has the burden to disprove that case by a preponderance of the evidence. *Id.* at 370-71. "Places of worship," such as Adam, are indisputably (1) religious assemblies, (2) subject to a land use regulation: Troy's ZO. *See, e.g.* SOF ¶¶ 1-5.[13] The third and fourth elements are analyzed via comparators, that is, the nonreligious assemblies and institutions that are treated more favorably. *Tree of Life III,* 905 F.3d at 367.

An Equal Terms comparator must be "similarly situated" with regard to "the legitimate zoning criteria set forth in" Troy's ZO, but it need not be similarly situated in "all relevant respects." *Id.* at 368-69; *Dorman v. Charter Twp. of Clinton*, No. 15-

---

[12] *Tree of Life III* involved a facially-neutral zoning ordinance, resulting in an "as applied" Equal Terms claim. The Sixth Circuit has not addressed a facial claim, but it positively cited other courts that apply a standard more favorable to plaintiffs in the facial context. *See, e.g.,* 905 F.3d at 370 (adopting the approach of the Third, Seventh, and Ninth Circuits). For example, in the Ninth Circuit, "The burden is not on the church to show a similarly situated secular assembly, but on the city to show that the treatment received by the church should not be deemed unequal, where it appears to be unequal on the face of the ordinance." *Centro Familiar*, 651 F.3d at 1173. Though the United States supports application of the Ninth Circuit facial test, Troy's ZO violates RLUIPA even under the standard set forth in *Tree of Life III*.

[13] Adam's option to lease the Property establishes its property interest. SOF ¶ 16; 42 U.S.C. § 2000cc-5; *Livingston Christian Schs. v. Genoa Charter Twp.*, 858 F.3d 996, 1001 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 1696 (2018) ("*Livingston*"); *see also Adam*, 381 F. Supp. 3d at 904.

CV-12552, 2019 WL 3322352, at *3-4 (E.D. Mich. July 24, 2019) (evaluating comparators under the "stated purpose" of the regulation at issue). Here, the undisputed facts show that no legitimate criteria justify Troy treating places of worship worse than similarly-situated comparators.

### i. Troy Imposes Stricter Standards on Places of Worship than on Nonreligious Assembly Uses in All Zoning Districts

By its express terms, Troy's ZO treats places of worship differently than other uses. ZO § 6.21 singles out places of worship, and ZO §§ 6.21(E)-(F) impose setback and parking standards that Troy has acknowledged are stricter than those imposed on nonreligious assembly uses. SOF ¶¶ 3-6. For example, in the GB district, a nonreligious community center (or banquet hall, funeral home, restaurant/wedding venue, theater, etc.) could operate by right from a building meeting general setback standards – 10' to the front, 30' to the rear, and 20' on each side – without a variance. But because ZO § 6.21 imposes a 50' setback standard on places of worship, a religious entity would need variances for all sides. If that building abutted a single-family home with a 75' setback, the community center could have parking as close as 10' from the property line. But a religious entity would need a variance to have parking within 50' of the property line. This disparate treatment violates RLUIPA.

### ii. No Legitimate Zoning Criteria Justifies This Unequal Treatment

Neither Troy's ZO, nor its Master Plan, provides clear reasons for specific, or even general, setback and parking standards for any use, or for imposing less onerous

standards on nonreligious assemblies. SOF ¶¶ 9-10. Because Troy's ZO makes an express distinction between places of worship and nonreligious assemblies, and contains no legitimate zoning criteria justifying this unequal treatment, the United States is entitled to judgment. *See Dorman*, 2019 WL 3322352, at *3-4.

Nonetheless, even if the Court considers the justifications now set forth by Troy for this unequal treatment (i.e., impacts on traffic, safety, and residential neighbors), they do not hold. Such impacts are generally evaluated by considering the extent to which groups of people attend events with fixed start and end times. SOF ¶ 11; *see, e.g.*, *River of Life Kingdom Ministries v. Vill. of Hazel Crest*, 611 F.3d 367, 373 (7th Cir. 2010) (with respect to traffic, "a church is more like a movie theater, which also generates groups of people coming and going at the same time"). The undisputed facts show that places of worship are similarly situated to many nonreligious assembly uses with respect to these impacts. SOF ¶¶ 13-14; *see, e.g., New Life Ministries v. Charter Twp. of Mt. Morris*, No. 05-CV-74339, 2006 WL 2583254, at *5 (E.D. Mich. Sept. 7, 2006) (finding private clubs, civic and fraternal organizations, lodge halls, theaters, assembly halls, and public and private educational facilities and institutions "gather and meet with similar frequency" as religious assemblies).

In every district where Troy allows places of worship to operate, it permits at least one nonreligious assembly use with similar impacts on traffic, safety, and

neighbors to operate under less restrictive setback and parking standards. SOF ¶ 13. These comparators include conference, meeting, and banquet facilities; mortuary/funeral homes; fine and performing art facilities; primary and secondary schools; restaurants that regularly host large events; and theaters and places of assembly. A nonreligious "place of assembly," as defined by Troy's ZO, could have:

> the same number … of members; … schedule for and attendance at events; … building design; and … tax impact as Adam. Instead of coming together for regular religious prayer, members could come together for some regular secular purpose … and thus be similarly situated to Adam under any legitimate zoning criteria.

Exhibit G - Weinstein Rep. 24. The same is true for banquet facilities, funeral homes, theaters, restaurants that host events, and schools. SOF ¶¶ 13-14; Exhibit I - Weinstein Reb. 5-7. Troy admits that nonreligious uses in each district could host events and operate in the same manner and scale as places of worship. SOF ¶ 14. When assessing a facial Equal Terms violation, the relevant question is whether comparators *could* exist, not whether they do. *See Hunt Valley Baptist Church, Inc. v. Baltimore Cnty.*, No. 17-CV-804, 2020 WL 618662, at *13 (D. Md. Feb. 10, 2020). Troy also agreed that several existing establishments do operate in the same manner as places of worship. SOF ¶ 14 n. 8. Thus, Troy's imposition of more restrictive setback and parking standards on places of worship is a clear facial violation of RLUIPA.

19

Troy's purported concerns regarding accessory uses and large places of worship miss the mark by presenting inappropriate "apples-to-oranges" comparisons. *See Tree of Life III*, 905 F.3d at 375 (positively citing "apples-to-apples comparison[s]" created by, for example, controlling for a use's size instead of presenting data in "absolute terms"); *see also Centro Familiar*, 651 F.3d at 1172 ("[A]nalysis should focus on what 'equal' means in the context.… [A] ten-member book club is equal to a ten-member church for purposes of parking burdens on a street, but unequal to a 1000-member church."); *Hunt Valley*, 2020 WL 618662, at *12 (facial Equal Terms violation where there was little justification for "an onerous process for churches, but not for similarly sized and constructed public schools"). A "mega-church" is no different than a "mega"-place of assembly, -banquet hall, -theater, or other use that regularly holds large events with fixed start and end times, even if one does not exist in Troy. *See Tree of Life Christian Schs. v. City of Upper Arlington*, 823 F.3d 365, 371 n. 5 (6th Cir. 2016) ("*Tree of Life II*") ("[U]nequal treatment violates RLUIPA even if no practical comparator has arisen.").

### iii. Troy's Requirement that Places of Worship Seek Special Use Approval in its CF District Facially Violates RLUIPA

Troy's CF district provides "institutional and service uses necessary to serve the cultural, educational, and physical needs of the community." SOF ¶ 7 n. 3. Troy admits that places of worship serve those needs. SOF ¶ 3. However, Troy requires places of worship to obtain special use approval to operate in CF while allowing

primary and secondary schools, fine and performing art facilities, and publicly-owned office and service facilities to operate as of right. SOF ¶ 7. This treatment facially violates RLUIPA. *See, e.g., Centro Familiar*, 651 F.3d at 1175 (finding a facial violation where religious assemblies were required to obtain a conditional use permit, but similar nonreligious assemblies were not); *Dorman*, 2019 WL 3322352, at *3 (granting summary judgment where a zoning provision permitted parks and schools, *inter alia*, by right while requiring places of worship to obtain special use approval).

### iv. Troy Cannot Rebut the United States' Prima Facie Showings

Troy cannot present evidence to justify stricter POW standards or the CF's special use requirement for places of worship. To overcome this prima facie case, Troy must rebut each comparator with specificity. *Tree of Life III*, 905 F.3d at 373 ("[A] municipality … concerned about traffic congestion and noise pollution must project how each particular land use will impact those conditions."). Troy has failed to present evidence to support more favorable treatment of any specific nonreligious use. SOF ¶¶ 10, 14. It admitted that relevant characteristics could be equal for places of worship and nonreligious comparators, and that where those characteristics were equal, it lacked justification to impose different setback and parking standards. SOF ¶ 14. Thus, the United States is entitled to summary judgment on its Equal Terms claim.

## B.    Troy Substantially Burdened Adam's Religious Exercise When It Denied Adam's Application for Relief from its Discriminatory ZO

RLUIPA prohibits Troy from applying land use regulations "in a manner that imposes a substantial burden on" religious exercise unless it demonstrates that the burden "is the least restrictive means of furthering [a] compelling governmental interest." *See* 42 U.S.C. § 2000cc(a)(1).[14]

Adam's variance application sought relief from Troy's facially-discriminatory ZO. Troy's denial substantially burdened Adam's religious exercise[15] under the considerations set forth in *Livingston*, including whether the religious institution (1) has a feasible alternative location to carry out its mission; (2) will suffer substantial, delay, uncertainty, and expense due to the imposition of the regulation; and (3) has imposed the burden on itself. 858 F.3d at 1004. However, as this Court recognized, the inquiry is "fact intensive" with no "uniform test." *Adam*, 381 F. Supp. 3d at 902.

### i.    Adam Has No Feasible Alternative Location to Conduct Core Religious Functions and Worship as a Community

Adam cannot conduct core religious activities at its current location. SOF ¶¶ 31-33. The ability to congregate for worship is a central religious activity. *See*

---

[14] RLUIPA's Substantial Burden provision applies because Troy's variance process "arises from the … government's … procedures for making individualized assessments of a property's permitted uses." 42 U.S.C. § 2000cc(a)(2); SOF ¶ 21.
[15] RLUIPA defines "religious exercise" to include "[t]he use, building, or conversion of real property for the purpose of religious exercise ... of the person or entity that uses or intends to use the property for that purpose." 42 U.S.C. § 2000cc–5(7). Adam sought a variance to use the Property for religious exercise. SOF ¶¶ 15-16.

22

*Lighthouse Cmty. Church of God v. City of Southfield*, No. 05-CV-40220, 2007 WL 30280, at *9 (E.D. Mich. Jan. 3, 2007)("*Lighthouse*"). This is particularly true for Adam members who believe that congregational prayer at a mosque has great religious significance. SOF ¶ 15. The basement's small size cannot accommodate Adam's membership and prevents it from, *inter alia*, holding religious services for weddings, births, and funerals; adequately separating men's and women's prayer; and meeting demand for religious classes.[16] SOF ¶¶ 32-33; *see, e.g., Livingston*, 858 F.3d at 1006 (citing cases finding spaces inadequate where people were turned away and plaintiffs could not expand to provide more religious classes); *Albanian Associated Fund v. Twp. of Wayne*, No. 06-CV-3217, 2007 WL 2904194, at *10 (D.N.J. Oct. 1, 2007) (burden not insubstantial where plaintiffs utilized an "inadequate facility [where] female members of the Mosque are unable to attend prayer sessions [and] cannot perform [] ritual washing before prayers" due to space).

No alternative location exists for Adam's religious exercise in Troy.[17] SOF ¶¶ 31-36. The variance denial "effectively barred" Adam from using 3635 Rochester Road as a place of worship. *See DiLaura v. Twp. of Ann Arbor*, 112 F. App'x 445, 446 (6th Cir. 2004). Although Adam searched for years, Troy is a built-out

---

[16] Nor does the building meet POW standards for use as a mosque. SOF ¶ 31.

[17] Unlike in *Livingston*, where the religious institution sought to serve the County as a whole but wanted to locate only within Genoa Township, Adam specifically seeks to serve community members in Troy. 858 F.3d at 1011; SOF ¶ 15.

community, and Adam could not find a property that met its needs without requiring zoning relief or approval. SOF ¶¶ 17, 31, 35-36. *Cf. Soc'y of Am. Bosnians & Herzegovinians v. City of Des Plaines*, No. 13-CV-6594, 2017 WL 748528, at *6-7 (N.D. Ill. Feb. 26, 2017) (finding evidence of substantial burden where the only other location not requiring a zoning amendment was too large); *Grace Church of N. Cnty. v. City of San Diego*, 555 F. Supp. 2d 1126, 1136 (S.D. Cal. 2008) (granting summary judgment based on burden of obtaining a subsequent conditional use permit).

It is unreasonable for Adam members to have to worship outside of Troy. Proximity is significant to Islamic practice, which prescribes five daily prayers; mosques outside of Troy are too far for multiple, daily visits. SOF ¶ 15. Moreover, Adam specifically seeks to serve Muslims in Troy. *Id.* The lack of a suitable location in Troy where all members can worship together has negatively impacted, and substantially burdened, members' religious exercise. SOF ¶¶ 32-34; *see Bethel World Outreach Ministries v. Montgomery Cnty. Council*, 706 F.3d 548, 558 (4th Cir. 2013) (finding substantial burden supported by testimony that "lack of adequate facilities creates a sense of disunity because the congregation is divided").

### ii. Adam Has Suffered Substantial Delay, Expense, and Uncertainty as a Result of the Variance Denial

A religious institution may suffer a substantial burden under RLUIPA where there will be substantial delay, expense, and uncertainty, even if an alternate location

exists. *See, e.g.*, *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 352 (2d Cir. 2007) (considering "whether there are quick, reliable, and financially feasible alternatives [plaintiff] may utilize to meet its religious needs"). Like the *Lighthouse* plaintiff, Adam would suffer substantial delay, uncertainty, and expense if it had to sell the Property and search for another. *See Lighthouse*, 2007 WL 30280, at *8-9. Renovating the Property or building a new structure to comply with Troy's POW standards is cost-prohibitive and would reduce the Property's usable space by ~60%, rendering it inadequate for Adam's needs. SOF ¶ 20; *Rockville Cath. Diocese of Rockville Centre, N.Y. v. Inc. Vill. of Old Westbury*, 128 F. Supp. 3d 566, 586 (E.D.N.Y. 2015) (finding plaintiff established a prima facie substantial burden case where, *inter alia*, the village's required setbacks would allow use of less than 44% of the space and other restrictions would impose ongoing costs). More than two years have elapsed since Troy's denial, during which Adam has suffered uncertainty due to its lack of suitable worship space in Troy. SOF ¶ 34.

### iii.   Adam's Hardship Was Not Self-Imposed

Adam's burden was not self-imposed; it reasonably expected Troy to approve its variance application. *See, e.g. Bethel*, 706 F.3d at 558 (finding reasonable expectation by church even though it needed approvals and noting "modern zoning practices are such that [approvals] are rarely *guaranteed*"). Adam raised RLUIPA's protections with Troy, which Troy explicitly disregarded. SOF ¶¶ 24-26. Adam

reasonably viewed its proposed use as similar to the many nonreligious uses Troy permitted to operate at the Property with no variance. SOF ¶¶ 19, 24. Though the Property does not meet general GB district setback and parking standards, nearby properties along Rochester Road have similar setback and parking configurations. SOF ¶ 24. And Troy approved its use as a restaurant with a banquet room under the same general GB standards. SOF ¶ 19. Unlike the cases cited in *Livingston,* Troy never indicated that it would deny Adam's application. SOF ¶ 23; *see* 858 F.3d at 1004.

### iv.   Troy's Denial of Adam's Variance Application Was Not the Least Restrictive Means of Furthering a Compelling Governmental Interest

Troy has not articulated an interest sufficient to justify substantially burdening Adam's religious exercise, and it did not consider less restrictive means before barring Adam's use of the Property as a place of worship.

### a.  Troy Has Not Asserted a Compelling Interest

A "compelling governmental interest" means an interest of the "highest order" that directly affects health and safety. *See, e.g.*, *Wisconsin v. Yoder*, 406 U.S. 205, 221, 230 (1972) (holding that a compelling governmental interest includes abating "substantial threat[s] to public safety, peace or order"). Troy must establish its interest "*in the particular case at hand*, not … in general." *Westchester*, 504 F.3d at 353 (emphasis added). As the Supreme Court explained in *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006), courts must look

26

"beyond broadly formulated interests justifying the general applicability of government mandates and scrutinize[] the asserted harm of granting specific exemptions to particular religious claimants." *Id.* at 431.

Troy's purported interests fall far short of the highest order. The ZBA's suggestion that Adam's use did not "fit … the lot" is uncompelling and untrue; the Property had been used for a variety of purposes and Adam planned no changes to the building's exterior and parking. SOF ¶¶ 19, 22, 24, 27.

While traffic, safety, or noise could be legitimate zoning criteria, here, they are not substantiated or compelling. *See Westchester*, 504 F.3d at 346, 353 (no compelling interest where stated concerns about traffic, parking, and intensity were unsubstantiated); *Roman Cath. Archdiocese of Kansas City v. City of Mission Woods*, 337 F. Supp. 3d 1122, 1140 (D. Kan. 2018) (no compelling interest where plaintiff addressed alleviating supposed parking concern and discredited noise-related assumptions). The ZBA's traffic and parking safety discussion and a neighbor's complaint related to noise were based on speculation and were directly rebutted by undisputed facts presented at the hearing. SOF ¶ 25. Troy also admitted that (1) other nonreligious uses that it would allow at the Property without a variance, like places of assembly, could have the same impacts on traffic and noise as places of worship; and (2) its underlying concerns related to places of worship stem from mega-churches, not smaller communities like Adam. SOF ¶¶ 12, 14, 19.

The Property's history and Troy's land use practices also undermine any claim that Troy's interest is compelling. *See Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2261 (2020) (asserted compelling interest is "fatally underinclusive" when the "proffered objectives are not pursued with respect to analogous nonreligious conduct") (internal quotation marks and citation omitted); *Grace Church*, 555 F. Supp. 2d at 1140-41 ("One way to evaluate a claim of compelling interest is to consider whether in the past the [City] has consistently and vigorously protected that interest."). Despite the varied nature of the Property's prior nonreligious uses, Troy has not required a variance for any other use, and Troy has admitted that a nonreligious use could operate from the Property if: (1) it had sufficient parking; (2) it made no changes to the parking or physical structure; and (3) no use-specific restrictions applied. SOF ¶ 19. In fact, the Property has hosted nonreligious gatherings of more than 200 people during the pendency of this case. SOF ¶ 34 n. 10. Adam did not seek to change the building's parking, structure, or capacity; it sought only permission to worship in the existing structure. SOF ¶¶ 16, 19, 24. Essentially, Adam members could gather at the Property for almost any purpose except worship.

In addition, nearby assembly uses, like funeral homes and restaurants, lack the setbacks Troy required of Adam. SOF ¶ 24. Whether by variance or other reasons, Troy has frequently allowed other places of worship and nonreligious assemblies to

deviate from setback and parking standards. SOF ¶ 30. These facts belie any purported compelling interest in applying the POW standards to Adam's use of the Property. *See Soc'y of Am. Bosnians*, 2017 WL 748528, at *8 (finding evidence that a city granted similar zoning requests weighs against any asserted compelling interest).

### b. The Denial of Adam's Variance Application Was Not the Least Restrictive Means to Advance Troy's Interests

Even if Troy had compelling concerns about public safety or welfare, it could have conditioned its approval or postponed its decision pending additional information. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728 (2014) (government must meet "exceptionally demanding" standard showing "it lacks other means of achieving its desired goal."); *Lighthouse*, 2007 WL 30280, at *9 ("outright prohibition" of church was "an excessive means to accomplish the City's stated traffic interest" given lack of evidence demonstrating harm to local traffic). A variance approval with conditions, permitted by ZO § 15.04(E)(1), is a less restrictive outcome than a denial. *See, e.g.*, *Westchester*, 504 F.3d at 353. Troy has conditioned variance approvals in the past, including for places of worship, yet the ZBA did not consider conditions in Adam's case. SOF ¶¶ 28-29. If Troy needed additional information about potential traffic, noise, exhaust fumes, or any other secondary impact on neighboring properties, it could have postponed its decision

and requested additional information from Adam.[18] *Id*. In sum, the undisputed facts show that Troy had less restrictive means available short of a denial that substantially burdened Adam's religious exercise.

## III.   CONCLUSION

For the reasons stated, summary judgment should be granted in favor of the United States. The United States requests that, if summary judgment is granted, it be provided an opportunity to be heard on appropriate relief.

Respectfully submitted,

*/s/ Shannon M. Ackenhausen*
SHANNON M. ACKENHAUSEN
(P83190)
Assistant United States Attorney
United States Attorney's Office
Eastern District of Michigan

*/s/ Abigail B. Marshak*
ABIGAIL B. MARSHAK
(NY 5350053)
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
United States Department of Justice

*Attorneys for the United States*

Dated: December 23, 2020

---

[18] Examples of conditions to address Troy's concerns here, many of which were acknowledged as possible conditions by Troy officials in depositions, include requiring a traffic study, adding screening trees or fencing, and hiring staff to supervise children in the parking area and/or direct traffic. SOF ¶¶ 28-29.

**<u>CERTIFICATION OF SERVICE</u>**

I hereby certify that on December 23, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record:

*/s/ Fatima Elzhenni*
Legal Assistant
United States Attorney's Office
for the Eastern District of Michigan
