UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 19-cv-12736 |
| | ) | Hon. Nancy G. Edmunds |
| v. | ) | Mag. Judge Anthony P. Patti |
| | ) | |
| | ) | |
| **CITY OF TROY, MICHIGAN**, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, the United States, through its attorneys, requests that the Court deny Defendant's Amended Motion for Summary Judgment, ECF No. 46. As set forth in the accompanying brief, the United States has provided more than sufficient evidence demonstrating that Defendant City of Troy, Michigan ("Troy"), violated both the Equal Terms and Substantial Burden provisions of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc-2000cc-5.

Troy admits that its Zoning Ordinance, on its face, applies "more restrictive" setback and parking standards to places of worship than nonreligious assembly uses. ECF No. 46, PageID.2124; *see also* ECF No. 45, PageID.1279-1280. The evidence

shows that these nonreligious uses are similarly situated with respect to legitimate zoning criteria, resulting in a facial violation of RLUIPA's Equal Terms provision. Troy applied its facially discriminatory ordinance to Adam Community Center, which required Adam to seek a variance to use property at 3635 Rochester Road as a place of worship. The United States has presented evidence that Troy denied Adam's variance application while granting similar applications by comparable nonreligious assemblies, precluding summary judgment on the United States' as-applied Equal Terms claim. The United States has also demonstrated that Troy's denial of Adam's variance application imposed a substantial burden on Adam's religious exercise, in violation of RLUIPA's Substantial Burden provision. Troy is not entitled to judgment as a matter of law on any of the United States' claims.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney
Eastern District of Michigan

JOHN B. DAUKAS
Acting Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief

*/s/ Shannon M. Ackenhausen*
SUSAN K. DECLERCQ
(P60545)
Assistant United States Attorney
Chief, Civil Rights Unit
SHANNON M. ACKENHAUSEN
(P83190)

*/s/ Katherine A. Raimondo*
TIMOTHY J. MORAN
Deputy Chief
ABIGAIL B. MARSHAK
(NY 5350053)
KATHERINE A. RAIMONDO
(DC 985157)

Assistant United States Attorney
United States Attorney's Office
Eastern District of Michigan
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Phone: (313) 226-9730
Facsimile: (313) 226-3271
Susan.DeClercq@usdoj.gov
Shannon.Ackenhausen@usdoj.gov

Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
United States Department of Justice
4 Constitution Square / 150 M Street NE
Washington, DC 20530
Phone: (202) 514-1968
Facsimile: (202) 514-1116
Abigail.Marshak@usdoj.gov
Katherine.Raimondo@usdoj.gov

*Attorneys for the United States*

Dated: January 19, 2021

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 19-cv-12736 |
| | ) | Hon. Nancy G. Edmunds |
| v. | ) | Mag. Judge Anthony P. Patti |
| | ) | |
| | ) | |
| **CITY OF TROY, MICHIGAN**, | ) | |
| | ) | |
| Defendant. | ) | |

## BRIEF IN SUPPORT OF UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT

### ISSUES PRESENTED

(1) Has the United States put forth evidence that the City of Troy imposed or implemented a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution, in violation of RLUIPA, 42 U.S.C. § 2000cc(b)(l)?

     The United States' Answer: Yes.

(2) Has the United States put forth evidence that the City of Troy imposed or implemented a land use regulation in a manner that treated Adam Community Center on less than equal terms with a nonreligious assembly or institution, in violation of RLUIPA, 42 U.S.C. § 2000cc(b)(l)?

     The United States' Answer: Yes.

(3) Has the United States put forth evidence that the City of Troy imposed or implemented a land use regulation that substantially burdened Adam Community Center's religious exercise in violation of RLUIPA, 42 U.S.C. § 2000cc(a)(l)?

     The United States' Answer: Yes.

## <u>MOST CONTROLLING AUTHORITY</u>

Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc-2000cc-5

*Tree of Life Christian Schs. v. City of Upper Arlington*, 905 F.3d 357 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 2011 (2019) ("*Tree of Life III*")

*Livingston Christian Schs. v. Genoa Charter Twp.*, 858 F.3d 996 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 1696 (2018)

# **TABLE OF CONTENTS**

I.    The Evidence Shows that Sections 6.21 (E) and (F) of Troy's ZO Facially Violate RLUIPA's Equal Terms Provision ........................................................... 1

  A.   The United States Has Presented Evidence of Similarly-Situated Nonreligious Comparators .......................................................................... 2

    1.   Places of Worship Are Not Uniquely Situated With Respect to Traffic, Parking Patterns, or the Production of Noise, Light, and Exhaust Fumes .. 4

    2.   The Potential for Places of Worship to Have Accessory Uses Does Not Distinguish Places of Worship from Comparators ................................... 6

  B.   Troy Is Not Justified in Treating Places of Worship Differently Because of Supposed Troy-Specific Concerns ............................................................ 8

    1.   Troy Cannot Rely on Its Asserted Local Considerations to Deny Equal Treatment to Places of Worship.............................................................. 8

    2.   Evidence From Troy's Own Experience Shows that Places of Worship Do Not Have Unique Negative Secondary Impacts........................................10

    3.   The Size and Number of Places of Worship In Troy Does Not Justify Their Unequal Treatment...............................................................................11

II.   There Are Genuine Issues of Material Fact as to Whether the Denial of Adam's Variance Violated RLUIPA's Equal Terms Provision ............................13

  A.   Troy's Denial of a Variance Is Not Insulated From a RLUIPA Claim Merely Because It Is Facially Neutral .................................................................13

  B.   The United States Presented Unrebutted Evidence that Troy Has Treated Similarly Situated Nonreligious Applicants for Variances More Favorably than Adam ...........................................................................................15

III.  The United States Has Put Forth Evidence Demonstrating that Troy Imposed a Substantial Burden on Adam's Religious Exercise When It Denied Adam's Variance Application ..........................................................................................17

  A.   Troy Applies an Incomplete and Inaccurate Legal Standard ......................17

  B.   The United States Has Presented Facts Establishing a Substantial Burden on Adam's Religious Exercise .....................................................................19

    1.   Adam's Burden Was Not Self-Imposed....................................................20

    2.   Adam Has No Feasible Alternative Location...........................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Adam Cmty. Ctr. v. City of Troy*, 381 F. Supp. 3d 887
      (E.D. Mich. 2019)…………………………..………………..……….14, 18

*Andon, LLC v. City of Newport News*, 813 F.3d 510
      (4th Cir. 2016)…………………………………………………………...20

*Bethel World Outreach Ministries v. Montgomery Cnty. Council*,
      706 F.3d 548, (4th Cir. 2013).….…………………….…………..18, 20, 28

*Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)………………………………27

*Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*,
      651 F.3d 1163 (9th Cir. 2011)…………………………………………...11

*Christian Fellowship Ctrs. of N.Y., Inc. v. Vill. of Canton*,
      377 F. Supp. 3d 146, 164 (N.D.N.Y. 2019)………………………….....5

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)…9

*Digrugilliers v. Indianapolis*,
      506 F.3d 612 (7th Cir. 2007) …………………………………..………2, 3

*Grace Church of N. Cnty. v. City of San Diego*, 555 F. Supp. 2d 1126,
      (S.D. Cal. 2008)………………………………………………………...22, 26

*Great Lakes Society v. Georgetown Charter Twp.*, 281 Mich. App. 396 (2008)…18

*Hunt Valley Baptist Church, Inc. v. Baltimore Cty.*, Civ. Case No.
      SAG-17-0804, 2020 WL 618662, (D. Md. Feb. 10, 2020)…………..….5, 13

*International Church of Foursquare Gospel v. City of San Leandro*,
      673 F.3d 1059, (9th Cir. 2011)………….……………………..…...22

*Irshad Learning Ctr. v. Cnty. of DuPage*, 937 F. Supp. 2d 910,
    (N.D. Ill. 2013)…………………………………………………………..…26

*Lighthouse Community Church of God v. City of Southfield*,
    No. 05-CV-40220, 2007 WL 30280 (E.D. Mich. Jan. 3, 2007)…………....27

*Livingston Christian Schools v. Genoa Charter Township*,
    858 F.3d 996 (6th Cir. 2017)…..………………….....17, 18, 19, 20, 21, 22, 27

*Marianist Province of United States v. City of Kirkwood*, 944 F.3d 996
    (8th Cir. 2019)……………………………………………………………...21

*Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1238-40
    (11th Cir. 2004)……………..…………………………………………...9, 29

*New Berlin*, 396 F.3d ……..………………………………………………... 28

*New Life Ministries v. Charter Twp. of Mt. Morris*, No. 05-CV-74339,
    2006 WL 2583254, (E.D. Mich. Sept. 7, 2006)……………………………..3

*Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cty.*,
    450 F.3d 1295 (11th Cir. 2006)……………..…………………..………….14

*Redemption Cmty. Church v. City of Laurel*, 333 F. Supp. 3d 521
    (D. Md. 2018)……………………………………………………………..3

*Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S.Ct. (2020)…………....……9

*Roman Catholic Diocese of Rockville Centre, N.Y. v. Inc. Vill. of Old Westbury*,
    128 F. Supp. 3d 566 (E.D.N.Y. 2015)………………..…………………26

*River of Life Kingdom Ministries v. Vill. of Hazel Crest*, 611 F.3d 367, 371
    (7th Cir. 2010)…………………………………………………………….9

*Saints Constantine & Helen Greek Orthodox Church v. City of New Berlin*,
    396 F.3d 895,  (7th Cir. 2005)…………………………………………...28

*Soc'y Of Am. Bosnians & Herzegovinians v. City of Des Plaines*,
No. 13-CV-6594, 2017 WL 748528, (N.D. Ill. Feb. 26, 2017)……………22

*Thai Meditation Ass'n of Ala., Inc. v. City of Mobile*,
980 F.3d 821, (11th Cir. 2020)……………………………………………….19

*3d Christian Schs. v. City of Upper Arlington*,
823 F.3d 365, 371 n.5 (6th Cir. 2016)………………………….………….10

*Tree of Life Christian Schs. v. City of Upper Arlington*, 905 F.3d 357
(6th Cir. 2018), *cert. denied*, 139 S. Ct. 2011 (2019)…….....…..2, 9, 11, 12, 14

*Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338
(2d Cir. 2007)…………………………………...…………………17, 26

**Federal Rules:**

Fed R. Civ. P. 56……………………………………………………………1

**Other Statutes**:

42 U.S.C. § 2000cc ………………………………………………………….17

146 Cong. Rec. 16698 (2000) (Joint Statement of Sens. Hatch and Kennedy) ……1

Troy, Michigan, Zoning Ordinance
https://cms6.revize.com/revize/troymi/Departments/Planning/FULL%20TROY%20ORDINANCE%2011-30-18.1.pdf (accessed December 22, 2020. (Revised through November 29, 2018………….……………………...……………*passim*

## INTRODUCTION

Congress enacted RLUIPA to prohibit discriminatory zoning practices against religious assemblies. *See* 146 Cong. Rec. 16698 (2000) (Joint Statement of Sens. Hatch and Kennedy) ("Churches in general, and new, small, or unfamiliar churches in particular, are frequently discriminated against on the face of zoning codes and also in the highly individualized and discretionary processes of land use regulation."). This lawsuit is the paradigmatic case of what RLUIPA was enacted to prevent. Troy enacted, enforced, and seeks to defend a Zoning Ordinance ("ZO") that facially violates RLUIPA and imposed a substantial burden on a religious organization. Its motion for summary judgment should be denied.

## ARGUMENT

### I.   The Evidence Shows that Sections 6.21 (E) and (F) of Troy's ZO Facially Violate RLUIPA's Equal Terms Provision

Troy is not entitled to summary judgment on the United States' facial Equal Terms claim because its ZO undisputedly treats places of worship worse than nonreligious comparators. In its Motion, Troy acknowledges that its setback and parking standards[1] specific to places of worship in ZO §§ 6.21(E)-(F) are "more

---

[1] "Setback and parking standards" refers to the ZO's mandate of certain required distances between buildings and property lines and the regulation of parking within those setback areas. *See* ECF No. 45, PageID.1277 ¶ 2.

restrictive" than those imposed on nonreligious assemblies,[2] but argues that places of worship operate in a manner that is so problematic that they must be uniquely and more restrictively regulated. *See* ECF No. 46, PageID.2119-2124. Because Troy has embraced its unequal treatment of places of worship, all that is left for this Court to weigh is the appropriateness of nonreligious comparators with respect to legitimate zoning criteria. *See Tree of Life III*, 905 F.3d at 367, 371. Evidence that even one comparator has been or would be better treated defeats Troy's motion.

### A. The United States Has Presented Evidence of Similarly-Situated Nonreligious Comparators

The United States has put forward six nonreligious use categories that are better-treated under Troy's ZO than places of worship – (1) conference, meeting, and banquet facilities; (2) mortuary/funeral homes; (3) fine and performing art facilities; (4) primary and secondary schools; (5) restaurants; and (6) theaters and places of assembly – and demonstrated that they are similarly situated with respect to the legitimate zoning criteria that Troy has advanced in this litigation. ECF No. 45, PageID.1280-1283, 1293-1296. These are precisely the types of comparators that other courts have deemed appropriate. *See, e.g.*, *Digrugilliers v. Indianapolis*, 506

---

[2] Troy notes that *one* general setback requirement in the GB district can exceed the equivalent setback for places of worship on a side abutting single family residences. ECF No. 46, PageID.2101. However, the general GB setback standards on all other building sides, and the regulation of parking within all setbacks, are less restrictive than equivalent requirements for places of worship. *See* ECF No. 45, PageID.1279.

F.3d 612, 614-15 (7th Cir. 2007) (comparators included auditoriums, assembly halls, community centers, funeral homes, technical schools, junior colleges, and civic clubs); *Redemption Cmty. Church v. City of Laurel*, 333 F. Supp. 3d 521, 533 (D. Md. 2018) (comparators included cinemas, theaters, and schools); *New Life Ministries v. Charter Twp. of Mt. Morris*, No. 05-CV-74339, 2006 WL 2583254, at *5 (E.D. Mich. Sept. 7, 2006) (comparators included theaters, assembly halls, and educational facilities).[3] Troy permits at least one of these comparators to operate with less restrictive setback and parking standards in each zoning district that allows places of worship.[4] *See* ECF No. 45, PageID.1279, Table 1.

In defense of its differential treatment, Troy claims places of worship have "unique" negative impacts in terms of traffic congestion, people's safety accessing buildings and parking areas, and secondary impacts on nearby properties (i.e., noise, light, and odors), as compared to similar nonreligious uses.[5] ECF No. 46,

---

[3] *See also* 146 Cong. Rec. 16698 (Joint Statement) ("Zoning codes frequently exclude churches in places where they permit theaters, meeting halls, and other places where large groups of people assemble for secular purposes.").

[4] The United States separately alleges that requiring places of worship, but not comparable nonreligious uses, to obtain special use approval in Troy's CF district facially violates RLUIPA. *See* ECF No. 1, PageID.30-32; ECF No. 45, PageID.1296-1297. Troy's Motion does not address this unequal treatment, and the United States' facial Equal Terms claim should survive summary judgment for this reason alone.

[5] Although Troy also vaguely references "economic concerns" in the factual section of its brief, it does not further address these concerns in the argument section or explain how they are legally relevant to this Equal Terms claim. ECF No. 46, PageID.2099. Troy has not raised revenue generation as a relevant zoning criteria,

PageID.2099, 2120-2121. As demonstrated below, however, the record makes clear that these justifications have no factual support. On the contrary, Troy has acknowledged that comparators could have similar, relevant impacts to comparably-sized places of worship. *See* ECF No. 45-2, PageID.1328, Savidant Tr. 70:14-72:1.

> **1. Places of Worship Are Not Uniquely Situated With Respect to Traffic, Parking Patterns, or the Production of Noise, Light, and Exhaust Fumes**

Troy claims that "unlike many other places of assembly," places of worship typically have concentrated periods of times when members arrive and leave, arguing that this justifies stricter setback and parking restrictions to protect against traffic and safety concerns and the secondary impacts of noise, light and exhaust fumes. ECF No. 46, PageID.2120-2121. However, Troy's own ZO groups places of worship with primary/secondary schools and funeral homes due to their similar "function, character, and intensity." *See* ZO § 5.03(A)(1), Table 5.03-A-1. And Troy and its expert concede that many nonreligious comparators – such as banquet facilities, theaters, and funeral homes – may host events with fixed start and end times, have cars parked onsite, and are used daily, just like places of worship. *See* ECF No. 45-2, PageID.1363-1364, Savidant Tr. 210:18-215:10; ECF No. 45-3,

---

nor could it, given the lack of connection between revenue generation and setback and parking standards and Troy's allowance of places of worship by right in all commercial districts. If Troy is referencing impacts on neighboring residential property values, the undisputed facts do not support more restrictive setback and parking standards. *See* Exhibit A - Gerendasy Rep.

PageID.1520-1521, Carlisle Tr. 276:2-281:11. For a facial Equal Terms violation, it is enough to demonstrate that comparators *could* operate similarly. *See Hunt Valley Baptist Church, Inc. v. Baltimore Cty.*, Civ. Case No. SAG-17-0804, 2020 WL 618662, at *13 (D. Md. Feb. 10, 2020). Yet, Troy officials also admit that existing nonreligious assemblies in Troy *do* operate similarly to places of worship in these ways, specifically a funeral home located three buildings north of the subject property at 3635 Rochester Road (the "Property"), the San Marino Club, Troy Historic Village, and Petruzzello's restaurant. *See* ECF No. 45-7, PageID.1600 (showing AJ Desmond & Sons Funeral Home, formerly Price Funeral Home); ECF No. 45-2, PageID.1327, Savidant Tr. 67:11-70:21; ECF No. 45-9, PageID.1645-1647, Evans Tr. 168:15-177:19.

Troy argues that prohibiting parking within a front setback for a place of worship promotes the safety of pedestrians moving to and from their cars, but fails to explain why patrons of nonreligious assemblies do not require the same safety protections. *See, e.g. Christian Fellowship Ctrs. of N.Y., Inc. v. Vill. of Canton*, 377 F. Supp. 3d 146, 164 (N.D.N.Y. 2019) ("Paternalism is a dubious justification for discriminatory burdens."). Similarly, Troy contends that places of worship have heightened noise, light, and odor (exhaust fume) impacts, but common sense belies that cars frequenting places of worship are louder, have brighter headlights, or exude more noxious fumes than those driven to nonreligious events.

5

Troy's purported concern about "overflow parking," based on its claim that "customers of other places of assembly are likely to just drive away when a parking lot is full" while "a member of a place of worship is more likely to attend a service even if the parking lot is full," similarly has no support in the record or in logic. *See* ECF No. 46, PageID.2124. It implies, for example, that wedding reception guests at a banquet hall would abandon their efforts if they encountered a full parking lot, but that guests attending religious wedding ceremonies persist. And Troy's ZO otherwise regulates parking, which from a planning and zoning perspective "is a function of occupancy of a building." ZO §13.06; ECF No. 45-3, PageID.1498, Carlisle Tr. 189:15-16.

### 2. The Potential for Places of Worship to Have Accessory Uses Does Not Distinguish Places of Worship from Comparators

As another excuse for differentiation, Troy argues that places of worship house a multitude of accessory or ancillary uses. ECF No. 46, PageID.2100-2101, 2121. However, Troy permits nonreligious comparators to have the same accessory uses that purportedly drive its concerns about places of worship. ZO §§ 4.21, 7.03. Moreover, Troy's expert agreed that ancillary uses are only relevant to setback and parking standards as it relates to the flow of people in and out of buildings, ECF No. 45-3, PageID.1521, Carlisle Tr. 279:17-280:3, and the undisputed facts show that the ancillary uses of religious and nonreligious assemblies operate similarly and affect the movement of people in and out of a building in the same way. For example,

nothing prevents nonreligious entities in Troy from holding multiple events in a day. *See* ECF No. 45-2, PageID.1363, Savidant Tr. 211:1-213:19; ECF No. 45-9, PageID.1647, Evans Tr. 177:3-19. A funeral home could hold multiple memorial services in a day, and a private school could hold classes, before or after school programs, sporting events, or other extracurricular activities. *See generally* ECF No. 45-14, PageID.1768-1769.

Troy's previous treatment of Adam Community Center ("Adam") is illustrative on this point. When Adam sought approval to use 4924 Rochester Road as a community center,[6] it articulated nine uses, including social/cultural gatherings; rooms for youth programs, reading, and exercise; and a bookshop. *See* Exhibit B - Amin Email. Adam submitted a site plan identifying where in the building these activities would take place. Exhibit C - 4924 Rochester Rd. Site Plan. Troy approved this proposal, including all of the ancillary uses, but then re-designated the use as a place of worship, requiring Adam to seek variances to the setback and parking standards, only when it learned prayer would also occur in the building. *See* Exhibit D - Miller Email ("The proposed floor plan is consistent with a community center as the principal or main use of this site. The Zoning Ordinance permits accessory uses and are defined as 'A use which is supplemental and subordinate to the main

---

[6] Troy considers a community center to be a "place of assembly," which is one of the comparators put forward by the United States. *See* ECF No. 45-2, PageID.1332, Savidant Tr. 89:2-5; ECF No. 45-3, PageID.1475-1476, Carlisle Tr. 97:21-98:6.

use and used for purposes clearly incidental to those of the main use.'"); Exhibit E – Troy Memo to ZBA; ECF No. 45-19, PageID.1854, Syed Decl. ¶ 20. Thus, Troy would have allowed a nonreligious community center with nine uses to operate with less restrictive setback and parking standard than a place of worship. Where the only difference is whether a use is religious or not, that is a quintessential RLUIPA violation.

### B. Troy Is Not Justified in Treating Places of Worship Differently Because of Supposed Troy-Specific Concerns

In addition to making general assertions about the operation of religious versus nonreligious assemblies, Troy argues that "evidence specific to the City of Troy" justifies its unequal treatment. ECF No. 46, PageID.2121-2122. However, in addition to the evidence discussed above about specific establishments in Troy, other unrebutted evidence shows that places of worship have no unique detrimental impacts in Troy, and Troy's other arguments do not comport with applicable law.

#### 1. Troy Cannot Rely on Its Asserted Local Considerations to Deny Equal Treatment to Places of Worship

As an initial matter, Troy incorrectly asserts that "local units of government are afforded discretion in determining what constitutes equal treatment, based on the particular circumstances of the community." ECF No. 46, PageID.2122. While municipalities have considerable discretion in zoning and planning matters, it is this Court's role to weigh the evidence and determine the equality of treatment,

considering the legitimacy of proffered zoning criteria and the appropriateness of comparators. *See Tree of Life III*, 905 F.3d at 371; *River of Life Kingdom Ministries v. Vill. of Hazel Crest*, 611 F.3d 367, 371 (7th Cir. 2010) ("'Purpose' is subjective and manipulable, so asking about 'regulatory purpose' might result in giving local officials a free hand in answering the question 'equal with respect to what?' 'Regulatory criteria' are objective—and it is federal judges who will apply the criteria to resolve the issue.").

No court has endorsed the type of deference advocated by Troy. RLUIPA's Equal Terms provision is a codification of preexisting Free Exercise caselaw, including the Supreme Court's holding in *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993), that the Free Exercise Clause forbids a legislature from deciding that "the governmental interests it seeks to advance are worthy of being pursued only against conduct with a religious motivation." 508 U.S. at 542-43; *see, e.g.*, *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1238-40 (11th Cir. 2004); *see also Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 66 (2020) (per curiam) (finding regulations that "single out houses of worship for especially harsh treatment" violate the "'minimum requirement of neutrality' to religion" (quoting *Lukumi*, 508 U.S. at 533)). While Troy may have flexibility in determining which zoning criteria drive its regulations, they must be legitimate and applied equally to both religious and nonreligious assemblies. *See*

*Tree of Life Christian Schs. v. City of Upper Arlington*, 823 F.3d 365, 371 n.5 (6th Cir. 2016) ("*Tree of Life II*") ("A government's small size or general anti-development regulations or political culture cannot protect it from valid RLUIPA claims on motions for summary judgment.").

### 2. Evidence From Troy's Own Experience Shows that Places of Worship Do Not Have Unique Negative Secondary Impacts

To the extent that considerations based on Troy's alleged experience are relevant, they show no basis for regulating places of worship differently from nonreligious assembly uses. For example, if, as Troy argues, places of worship have unique negative secondary impacts, one would expect those impacts to be reflected in the property values of homes next to places of worship that do not meet Troy's setback and parking standards. ECF No. 45-14, PageID.1765. However, an expert analysis of Troy's property values found that the "adjacency of homes to places of worship with setbacks inconsistent with Troy's current Zoning Ordinance requirements has *no impact* on home value." Exhibit A - Gerendasy Rep. at 3 (emphasis added). This finding was consistent with relative property values assigned by Troy's Assessment Department, which ascribed no difference between adjacency to these places of worship as compared with nonreligious assembly uses. *Id.* at 3, 26. Troy has not submitted evidence to rebut these findings, and the durability of residential property values that closely abut places of worship lacking setbacks or parking consistent with ZO § 6.21 shows that secondary impacts from places of

worship do not justify differential treatment. Similarly, if places of worship required more restrictive regulation, one would expect numerous complaints about places of worship with setbacks less than 50' or parking within such setbacks related to noise, light, or odors. ECF No. 45-14, PageID.1766. But Troy's record of complaints show that the "overwhelming majority" made no reference to such concerns. *Id.*

### 3. The Size and Number of Places of Worship In Troy Does Not Justify Their Unequal Treatment

Troy's argument that local considerations justify more stringent setback and parking standards for places of worship is based on (1) negative impacts observed at a few "mega-churches"[7] and (2) the fact that there are over 60 places of worship in Troy. ECF No. 46, PageID.2123-2124. Troy claims that these factors demonstrate that places of worship are not similarly situated to nonreligious comparators. But this misapplies the standard for determining equal treatment, which requires an "apples-to-apples comparison." *Tree of Life III*, 905 F.3d at 375; *see also Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1172 (9th Cir. 2011) ("[A]nalysis should focus on what 'equal' means in the context…. [A] ten-

---

[7] While Troy claims it has "experience and knowledge of significant historical negative impacts" associated with places of worship, ECF No. 46, PageID.2099, the deposition testimony cited in support makes clear that this experience is based on large places of worship, *see* ECF No. 45-2, Savidant Tr. at 56:10-61:12, 162:12-164:20 (referencing, *inter alia*, "massive places of worship" and "very large" churches). Troy also relies on the testimony of Mark Miller, who stated his knowledge was limited to places of worship located in residential districts. ECF No. 46-4, Miller Tr. at 122:14-123:3.

member book club is equal to a ten-member church for purposes of parking burdens on a street, but unequal to a 1000–member church.").

Troy cannot rely on supposed negative impacts observed at large places of worship, when nonreligious comparators in Troy could be as large as, or even larger than, these mega-churches under Troy's regulatory scheme. *See* ECF No. 45-2, PageID.1362-1364, Savidant Tr. 209:21-215:10; *Tree of Life II*, 823 F.3d at 371 n.5 ("[U]nequal treatment violates RLUIPA even if no practical comparator has arisen."). Troy has neutral, generally applicable mechanisms to limit building occupancy and ensure adequate parking. *See* ECF No. 45-2, PageID.1363, Savidant Tr. 210:6-17; ECF No. 45-3, PageID.1519, Carlisle Tr. 271:20-272:3 ("You could have a million people if it was big enough and had enough parking."). The size of the building and the amount of parking dictate the number of people who can use a building, not the incidence of prayer. These mechanisms prevent a building with an occupancy of less than 300 people, like 3635 Rochester Road, from becoming a mega-church even if a place of worship is established there.

Similarly, the number of existing places of worship in Troy does not justify greater restrictions on places of worship than on nonreligious comparators because it also is not an apples-to-apples comparison. Even though Troy may presently have more places of worship than other types of uses, a zoning ordinance is necessarily prospective; it provides rules for future development. ECF No. 45-3, PageID.1490,

1497, Carlisle Tr. 156:4-13, 185:12-19. If Troy's concern is the future development of assembly uses, that concern would apply equally to religious and nonreligious uses. Places of worship should not be penalized because there was a larger historical demand for them. "It would be irreconcilable with RLUIPA's language to permit a facial violation to stand, simply because of a recent lack of demand" for a comparable nonreligious use in a zoning district. *Hunt Valley*, 2020 WL 618662, at *13. Moreover, Troy's assertion that it is "easier" to regulate places of worship separately from comparable uses because Troy has more of them is not a legal basis that can justify unequal treatment. *See* ECF No. 46, PageID.2123.

## II.    There Are Genuine Issues of Material Fact as to Whether the Denial of Adam's Variance Violated RLUIPA's Equal Terms Provision

There is ample evidence from which a reasonable trier of fact could conclude that Troy subjected Adam to less than equal terms when it denied Adam's request for a variance. Troy's arguments to the contrary, ECF No. 46, PageID.2118-2119, ignore both the law and the facts.

### A. Troy's Denial of a Variance Is Not Insulated From a RLUIPA Claim Merely Because It Is Facially Neutral

Unlike the setback and parking standards discussed above, Troy's variance process is facially neutral. ECF No. 8, PageID.52, ¶ 32. Troy suggests that it is insulated from liability because the same variance criteria apply to religious and nonreligious institutions and because "[v]ariance requests are decided on a case by

case basis." ECF No. 46, PageID.2118. First, unequal treatment resulting from the application of a facially-neutral ordinance is the essence of an "as-applied" Equal Terms claim. *See, e.g.*, *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cty.*, 450 F.3d 1295, 1310 (11th Cir. 2006) ([An] Equal Terms violation [] arise[s] in the case of a *discriminatory application* of a facially neutral, generally applicable statute.") (emphasis in original); *see also Tree of Life III*, 905 F.3d at 366 (explaining that the ordinance at issue was facially neutral).[8] Second, the fact that variance requests are decided on a "case by case basis" does not preclude an Equal Terms challenge. As Troy acknowledged, "[the ZBA] should apply the [variance] criteria consistently to each applicant." ECF No. 45-9, PageID.1661, Evans Tr. 233:1-3. Here, there is sufficient evidence from which a reasonable trier of fact could conclude that Troy treated Adam's variance application less favorably than similarly situated comparators, which violates RLUIPA's Equal Terms provision.[9]

---

[8] The United States moved for summary judgment on its facial challenge only, not its as-applied challenge. *See* ECF No. 45, PageID.1268-1269, n.1.

[9] Without support, Troy argues that an appropriate remedy is a state court appeal, not a RLUIPA Equal Terms claim. *See* ECF No. 46, PageID.2119. To the extent Troy's argument is that Adam was first required to pursue a state court appeal, this Court has already rejected that argument and held that Adam's claim was ripe for judicial review. *See Adam Cmty. Ctr. v. City of Troy*, 381 F. Supp. 3d 887, 901 (E.D. Mich. 2019). And Troy cannot dispute that the terms of RLUIPA explicitly allow the United States to bring suit based on an alleged violation and do not impose any exhaustion requirement. *See* 42 U.S.C. § 2000cc–2(a), (f); *see also United States v. City of Walnut*, No. CV 10-6774, 2011 WL 12464619, at *3 (C.D. Cal. Jan. 13, 2011) (holding that even if a private plaintiff was required to exhaust administrative

**B. The United States Presented Unrebutted Evidence that Troy Has Treated Similarly Situated Nonreligious Applicants for Variances More Favorably than Adam**

Without any apparent factual or legal basis, Troy argues that the United States "has not depicted true comparators were treated differently" than Adam in the variance process. ECF No. 46, PageID.2119. On the contrary, Troy has not rebutted evidence that numerous similarly-situated nonreligious applicants received setback and parking variances when Adam did not. The United States' expert analyzed Troy's handling of setback and parking requests from 2005 to 2018. ECF No. 45-12, PageID.1743. He found that Troy granted 35 of 39 requests for a reduced setback, or allowance of parking within a setback, for nonreligious applicants in commercial zoning districts.[10] *Id.* His report details 13 specific examples where Troy granted substantial variances to comparable applicants. *Id.*, PageID.1740-1741. For example, Troy permitted a community center (the Boys and Girls Club) to include parking within 50' of residential property, and granted a restaurant's request for a 15' front setback, instead of the required 75'. *Id.*

Troy suggests that these applicants were not similarly situated to Adam due to the size of Adam's requested variance, *see* ECF No. 46, PageID.2119; however,

---

remedies under RLUIPA – which it was not – the United States would not be barred from its independent RLUIPA claims).

[10] Of the remaining four, Troy's ZBA denied two, and two requests were withdrawn. *Id.*

the variances that Adam sought are only "substantial" because of Troy's imposition of more restrictive setback and parking standards on places of worship, which facially violate RLUIPA, *see, e.g.*, ECF No. 45, PageID.1293. Troy's variance criteria focus on changes that could affect neighboring properties. ZO §15.04(E)(2)(e). Unlike other variance applicants, Adam was not seeking approval to change any physical aspect of the Property, which has been used as a commercial property for more than 30 years. ECF No. 45, PageID.1284, 1286-1287; ECF No. 45-2, Savidant Tr., 250:3-251:12. Most recently and during the pendency of this case, Troy permitted a large restaurant with a banquet room to operate from the Property without a variance. ECF No. 45, PageID.1284, 1290. Troy's expert (who has worked as a zoning consultant to Troy for the past eight years) explained that, in Adam's case, the impact on the surrounding neighborhood was not as significant as the fact that worship would take place inside: "[E]ven if it was a more intense use and going to a lesser intense use for a place of worship, the same applicable [setback and parking] standards of 6.21 still apply." ECF No. 45-3, PageID.1497-1498, Carlisle Tr. 185:23-186:1. Accordingly, Troy has admitted that it would allow a nonreligious use to operate at the Property without a variance if it did not change the exterior and no use-specific standards applied. ECF No. 45, PageID.1284. Troy has not rebutted any of these facts or the appropriateness of any specific comparators, and it is therefore not entitled to summary judgment on the United States' as-applied

Equal Terms claim.

### III. The United States Has Put Forth Evidence Demonstrating that Troy Imposed a Substantial Burden on Adam's Religious Exercise When It Denied Adam's Variance Application

Troy is not entitled to summary judgment on the United States' Substantial Burden claim because (1) Troy misstates the law and (2) under applicable law, the evidence establishes a prima facie claim of substantial burden based on Troy's denial of Adam's variance application to use the Property as a place of worship.

Notably, Troy's Motion does not address the elements of a Substantial Burden claim beyond the prima facie case. Once a plaintiff demonstrates a substantial burden, the burden shifts to the defendant to demonstrate that the burden is the least restrictive means of furthering a compelling governmental interest. *See* 42 U.S.C. § 2000cc(a)(1); *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 353 (2d Cir. 2007). Troy makes no argument in its brief that the denial of Adam's variance furthered a compelling governmental interest, and the United States has demonstrated that Troy can claim no such interest. ECF No. 45, PageID.1302-1306.

### A. Troy Applies an Incomplete and Inaccurate Legal Standard

First, Troy misstates the legal standard for a Substantial Burden claim. While purporting to rely on *Livingston Christian Schools v. Genoa Charter Township*, 858 F.3d 996 (6th Cir. 2017) ("*Livingston*"), Troy focuses on only two *Livingston* factors – whether the plaintiff has a feasible alternative location and whether the burden was

self-imposed. ECF No. 46, PageID.2110-2115. As this Court previously explained, *Livingston* enumerated "three primary factors" to consider when analyzing substantial burden, including "whether the religious institution will suffer substantial delay, uncertainty, and expense due to the imposition of the regulation." *Adam Cmty. Ctr. v. City of Troy*, 381 F. Supp. 3d 887, 902 (E.D. Mich. 2019). And evaluating a substantial burden is a "fact intensive inquiry" with no "uniform test." *Id.*

Troy also wrongly asserts that the United States must prove that the denial of Adam's variance request "coerced" members to "act contrary to their religious beliefs." ECF No. 46, PageID.2111, 2115. Troy cites a non-binding state court decision, *Great Lakes Society v. Georgetown Charter Twp.*, 281 Mich. App. 396 (2008), which incorrectly applies the standard for the "institutionalized persons" prong of RLUIPA in the land use context, a standard that *Livingston* rejected. *Livingston*, 858 F.3d at 1003-04 ("[L]and-use regulations do not typically compel plaintiffs to 'violate their beliefs' in the way that, for example, prison rules might require an inmate to engage in conduct that goes against his or her religious tenets."); *see also Bethel World Outreach Ministries v. Montgomery Cnty. Council*, 706 F.3d 548, 555 (4th Cir. 2013) ("[R]equiring a religious organization to prove that a land use regulation pressured it to violate its beliefs would be tantamount to eliminating RLUIPA's substantial burden protection in the land use context."). Instead, the application of land use regulations may impose a substantial burden under RLUIPA

when they "prohibit a plaintiff from engaging in desired religious behaviors" or "place[] significant pressure on an institutional plaintiff to modify its behavior." *Livingston*, 858 F.3d at 1004; *see also, e.g.*, *Thai Meditation Ass'n of Ala., Inc. v. City of Mobile*, 980 F.3d 821, 831 (11th Cir. 2020) ("[I]t isn't necessary for a plaintiff to prove . . . that the government required her to completely surrender her religious beliefs; modified behavior, if the result of government coercion or pressure, can be enough.").

### B. The United States Has Presented Facts Establishing a Substantial Burden on Adam's Religious Exercise

Viewed under the proper legal standard, Troy's variance denial, which prevented Adam from using the Property as a place of worship, imposed a substantial burden. The undisputed facts show that, *inter alia*, Adam currently has no location in Troy where members can hold major religious events like weddings or funerals, members who want to attend regular worship services at Adam cannot do so because of its current space limitations, and Adam cannot meet its community's demand for religious classes. *See* ECF No. 45, PageID.1289-1290. Due to the lack of worship space, members experience disunity and uncertainty that negatively impacts their religious exercise. *Id*. The United States has further established a substantial burden under the two *Livingston* factors highlighted by Troy. As discussed below, Troy's presentation of these factors misconstrues both the law and the facts.

### 1. Adam's Burden Was Not Self-Imposed

Courts have found a burden to be self-imposed where a plaintiff "obtained an interest in land without a reasonable expectation of being able to use that land for religious purposes." *Livingston*, 858 F.3d at 1004. Relying on *Andon, LLC v. City of Newport News*, 813 F.3d 510 (4th Cir. 2016), Troy wrongly claims that Adam's burden was self-imposed because it purchased the Property knowing that it did not meet the place of worship setback standards. ECF No. 46, PageID.2113-2114. The *Andon* court found that the plaintiff did not reasonably expect success where it was explicitly told, before filing a zoning application, that its application to locate a church in a building on a .32-acre lot that backed up to single-family homes on three sides, would not be approved. *Andon*, 813 F.3d at 512, 515. By contrast, Adam was never told that its application would be denied. Rather, the undisputed facts show that Adam had every reason to believe that a variance would be granted – the zoning district permitted places of worship by right, Adam was not changing the building's existing footprint or parking, and nearby commercial properties have similar setback and parking configurations. *See* ECF No. 45, PageID.1286. The mere fact that Adam knew it would need a variance does not mean that the burden was self-imposed. *See Bethel*, 706 F.3d at 558.

### 2. Adam Has No Feasible Alternative Location

Troy spends most of its substantial burden argument discussing supposed

alternative locations for Adam to establish a place of worship. However, the undisputed facts and applicable case law show that Adam has no feasible alternative.

In *Livingston*, the Sixth Circuit noted that other courts have not found substantial burdens where plaintiffs have had "access to other properties close to the property affected by the challenged land-use regulation," but it cited cases where the plaintiff *currently rented or owned* other property that was available for its use. 858 F.3d at 1005-06. Similarly, in *Marianist Province of United States v. City of Kirkwood*, 944 F.3d 996 (8th Cir. 2019), specifically relied on by Troy, the court held a religious school was not substantially burdened by not being permitted to install lights on its baseball stadium because it had alternative times and locations to use existing facilities to carry out its religious mission. *Id.* at 1001. Here, Troy's brief makes no claim that Adam currently has an existing property available for its religious use; in fact Troy does not even mention Adam's current meeting space at 4700 Rochester Road, which is undisputedly not a feasible alternative location. *See* ECF No. 45, PageID.1298-1299; *see generally* ECF No. 46.

Troy instead suggests several properties in the city as purported alternatives for Adam, ECF No. 46, PageID.2111-2112, but these properties are not feasible because they are unavailable, unsuitable, or would require additional zoning approval, *see infra* at 22-23. The proper inquiry is not whether some other potential properties exist somewhere in the city, but whether those other properties are

actually suitable and available. *See International Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1069 (9th Cir. 2011) ("[W]hether alternate sites are suited and for sale in the City must be considered in determining whether the City's denial of the necessary permits for the desired property constitutes a substantial burden.").

In *International Church*, a case cited with approval in *Livingston*, *see* 858 F.3d at 1006, the court found that the plaintiff had presented "significant evidence" that no other suitable properties existed where only one property suggested by the city was listed for sale and others were unsuitable based on size, configuration, safety issues, and current uses. 673 F.3d at 1068. The court also found significant the possibility that future zoning applications by the church might be unsuccessful for the same reason the application at issue was unsuccessful. *Id.* at 1070. Other courts have found that a property's lack of suitability for the religious group and the potential need for additional zoning relief are evidence of a substantial burden. *See, e.g.*, *Soc'y Of Am. Bosnians & Herzegovinians v. City of Des Plaines*, No. 13-CV-6594, 2017 WL 748528, at *6-7 (N.D. Ill. Feb. 26, 2017) (denying summary judgment for defendant where only one proposed available property would have permitted a place of worship without a zoning map amendment and it was too large to be a viable option); *Grace Church of N. Cnty. v. City of San Diego*, 555 F. Supp. 2d 1126, 1136, 1139 (S.D. Cal. 2008) (granting summary judgment for plaintiff

where there was substantial uncertainty whether future attempts to extend a conditional use permit would be successful).

Notably here, Troy does not assert that any of the properties it advances as alternatives are available today or were available at the time Adam acquired the Property. In fact, Troy concedes that the Coolidge Highway property was sold to another bidder,[11] and that the Square Lake Road property is "not suitable for a place of worship." ECF No. 46, PageID.2103-2104; ECF No. 46-4, Savidant Aff. ¶ 10 at App. 141. And Troy does not dispute that the other three properties required Adam to obtain special use or wetlands permits or were not suitable for the Adam community's needs.[12] ECF No. 45-19, PageID.1854, Syed Decl. ¶¶ 21-22.

Moreover, it is undisputed that Adam has been searching diligently for years for property in Troy to use as a place of worship and has made attempts to purchase multiple properties that were unsuccessful. ECF No. 46, PageID.2101-2105. Adam even sought assistance from Troy, given the difficulties it faced finding a property that complied with Troy's requirements for places of worship. *See* ECF No. 46-6,

---

[11] Troy misleadingly states that this property was sold "before Adam could complete the transaction," citing to Dr. Amin's deposition. ECF No. 46, PageID.2103-2104. The testimony clearly stated that Adam's offer was "rejected" in a closed bid process. ECF No. 45-17, PageID.1809, Amin Tr. 50:14-51:8.

[12] Again, Troy mischaracterizes Dr. Amin's testimony regarding a property on Long Lake Road. *See* ECF No. 46, PageID.2103. Price was not the only factor Adam considered; a full reading shows multiple references to Adam's concerns about the special use permit required to operate a place of worship from a residential property. ECF No. 45-17, PageID.1805-1806, Amin Tr. 35:3-39:20.

Emails at App. 277-78. While Troy asserts that places of worship are allowed in approximately 97% of the land in the city, ECF No. 46, PageID.2098, Troy is describing the percentage of the city that is composed of zoning districts that permit places of worship either as of right or as special use. But that statistic is meaningless if in fact there is no available property in those zones. And its expert confirmed that Troy is a "built-out community" where "almost 100 percent of [the land] is developed." ECF No. 45-3, PageID.1477, Carlisle Tr. 102:18-21. Further, the 97% number does not take into account properties where places of worship would need zoning approval because either they are only permitted by special use or the land does not meet Troy's setback and parking standards for places of worship. *Id.* at 103:24-106:24. Troy has acknowledged that "it would be more difficult to develop on a property…with a larger required setback." ECF No. 45-2, PageID.1353, Savidant Tr. 171:9-12. Thus, there is no evidence that there were any alternative properties available to Adam in Troy.

Nor can Adam modify the Property to comply with Troy's setback and parking standards for places of worship and still meet its needs. *See* ECF No. 46, PageID.2112. As an initial matter, Troy's suggestion that the existing building at the Property could adequately be replaced by a 6,400 square foot building improperly assumes the validity of Troy's facially-violative ZO. *See* Sec. I, *supra*. But in any event, it also fails to demonstrate that such a building would be feasible based on

Adam's needs and financial situation.

Troy's position entirely relies on a statement from its Planning Director, Mr. Savidant that, after Adam filed its suit, he prepared a "sketch" showing a 6,400 square foot building could be constructed on the Property without a variance. ECF No. 46-4, Savidant Aff. ¶ 11 at App. 141, 143. Troy has never produced this alleged sketch, however, so Savidant's assertion, standing alone, is not sufficient for a reasonable trier of fact to conclude that such a building and its occupancy, parking, and associated construction costs would have met Adam's needs.

This is especially true given the evidence that disproves Troy's unsupported assertion. When asked about Adam's needs in the abstract, Dr. Amin testified that Adam needed a minimum of 6,000-10,000 square feet. ECF No. 45-17, PageID.1801, Amin Tr. 20:24-21:5. However, when asked specifically about the Property, Dr. Amin testified that Adam could not demolish the building to construct one that complied with place of worship setback and parking standards because Adam would lose at least 60% of the existing space and it would be too expensive. *Id.*, PageID.1817, Amin Tr. 82:10-83:11; *see also* ECF No. 45-16, PageID.1794, Amin Decl. ¶ 8 (explaining that losing more than 60% of the space would be inadequate for Adam's needs and would cost around $3 million, which is cost-prohibitive). These facts belie Troy's assertion that "Adam did not even consider demolishing the existing building[.]" *See* ECF No. 46, PageID.2106.

Furthermore, the expense associated with various purported alternatives is an appropriate consideration. *See Westchester*, 504 F.3d at 352 (considering "whether there are quick, reliable, and financially feasible alternatives [plaintiff] may utilize to meet its religious needs"); *Irshad Learning Ctr. v. Cnty. of DuPage*, 937 F. Supp. 2d 910, 941 (N.D. Ill. 2013) (rejecting argument that plaintiff had not presented evidence of a problem locating property for religious use where it had made offers on four properties and purchased then sold a fifth property because it lacked funds to build a new structure on that property). In *Roman Catholic Diocese of Rockville Centre, N.Y. v. Inc. Vill. of Old Westbury*, 128 F. Supp. 3d 566 (E.D.N.Y. 2015), the court found that the plaintiff had made a prima facie claim of substantial burden by showing that restrictions placed on its approved zoning application reduced usable space to less than 44% and would cause it to incur "substantial ongoing costs." *Id.* at 585-86; *see also Grace Church*, 555 F. Supp. 2d at 1138-39 (finding substantial burden supported by the church's financial situation, which might have been significantly impacted if it could not amortize costs over the full time frame of the use permit it requested rather than the shorter period granted by the city). Thus, even if Troy were correct that Adam could hypothetically construct a 6,400 square foot building at the Property that complied with the facially discriminatory setback and parking standards, that does not mean such a building would meet its needs or that making such a modification would not be cost-prohibitive to Adam.

Troy also asserts that there are existing mosques outside of Troy, such as the Islamic Association of Greater Detroit (IAGD), where Adam members could worship, citing *Livingston*. ECF No. 46, PageID.2114-2115. Adam's situation is distinguishable from the religious school in *Livingston*, which sought to serve Livingston County as a whole, and already had an interest in an alternative property in the County. 858 F.3d at 1011. Here, Troy is going well beyond *Livingston*, improperly telling Adam not just to locate its own congregation elsewhere, but to join another congregation in another city. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) ("[F]reedom to adhere to such religious organization or form of worship as the individual may choose cannot be restricted by law.").

Adam seeks specifically to serve Muslims in Troy; Troy lacks an Islamic place of worship; and members have explained that IAGD is a separate community and that proximity to a mosque in Troy is critical for their religious practice, given Islamic requirements for five daily prayers. ECF No. 45, PageID.1283; ECF No. 45-18, PageID.1847, Ahmed Decl. ¶¶ 5-7; ECF No. 45-19, PageID.1850-1851, Syed Decl. ¶¶ 4-6. Thus, locations outside of Troy are not feasible alternatives for Adam.

Finally, even assuming *arguendo* that any of these alternatives might be available, Adam can still establish a substantial burden. For example, in *Lighthouse Community Church of God v. City of Southfield*, No. 05-CV-40220, 2007 WL 30280 (E.D. Mich. Jan. 3, 2007), another court in this district found that the plaintiff had

established a substantial burden where it was undisputed that it could not currently
use its building for worship without a variance, rejecting the city's argument that the
burden was not substantial because it had not excluded the plaintiff from exercising
religion anywhere else in the city. *Id.* at *8-9. The court explained:

> The Church could have searched around for other parcels of land
> (though a lot more effort would have been involved in such a search
> than, as the City would have it, calling up some real estate agents), or
> it could have continued filing applications with the City, but in either
> case there would have been delay, uncertainty, and expense. That the
> burden would not be insuperable would not make it insubstantial.

*Id.* at *8 (quoting *Saints Constantine & Helen Greek Orthodox Church v. City of
New Berlin*, 396 F.3d 895, 901 (7th Cir. 2005)); *see also Bethel*, 706 F.3d at 557-58
(government action impeding the building of a church may impose a substantial
burden "even though other suitable properties might be available, because the 'delay,
uncertainty, and expense' of selling the current property and finding a new one are
themselves burdensome" (quoting *New Berlin*, 396 F.3d at 901)).

Adam's inability to use the Property as a place of worship, and resulting lack
of worship space in Troy, continues to impose a substantial burden on its religious
exercise that is far more than an "inconvenience," *see* ECF No. 46, PageID.2115.[13]

---

[13] Troy asserts that if "any" inconvenience as a result of a land use regulation
constitutes a substantial burden under RLUIPA, then RLUIPA calls for
unconstitutional preferential treatment that violates the Establishment Clause. *Id.*
First, the United States is not arguing that "any" inconvenience constitutes a
substantial burden. Further, a statute does not favor religion simply because it
permits a religious accommodation that allows institutions to "better ... advance their

Troy's motion for summary judgment on this claim should be denied.

## **CONCLUSION**

For the reasons stated above, Defendant's Motion for Summary Judgment should be denied.

Respectfully submitted,

/s/ Shannon M. Ackenhausen
SHANNON M. ACKENHAUSEN
(P83190)
Assistant United States Attorney
United States Attorney's Office
Eastern District of Michigan

/s/ Katherine A. Raimondo
KATHERINE A. RAIMONDO
(DC 985157)
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
United States Department of Justice

Attorneys for the United States

Dated: January 19, 2021

---

[religious] purposes." *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 336 (1987); *see also Midrash*, 366 F.3d at 1241 (upholding RLUIPA's constitutionality, noting that "a relevant and meaningful distinction exists between statutes whose effect is to advance religion and statutes whose effect is to allow religious organizations to advance religion").

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on January 19, 2021, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record:

*/s/ Fatima Elzhenni*
Legal Assistant
United States Attorney's Office
for the Eastern District of Michigan
